

# IN THE DISTRICT COURT OF CLEVELAND COUNTY
## STATE OF OKLAHOMA

| | | |
|---|---|---|
| (1) | **PATRICIA THOMPSON, as Personal Representative of the Estate of MARCONIA LYNN KESSEE** | ) |
| | **Plaintiff,** | ) |
| vs. | | ) |
| (1) | **BOARD OF COUNTY COMMISSIONERS FOR CLEVELAND COUNTY, an Oklahoma Political Subdivision;** | ) |
| (2) | **CLEVELAND COUNTY SHERIFF'S OFFICE, a county law enforcement agency;** | ) |
| (3) | **TODD R. GIBSON, in his official and individual capacities;** | ) |
| (4) | **ZACKERY ANDREWS, an individual;** | ) |
| (5) | **BRIAN KNAPP, an individual;** | ) |
| (6) | **CODY BARR, an individual;** | ) |
| (7) | **STACY SHIFFLETT, an individual;** | ) |
| (8) | **STEPHEN SCOTT, an individual;** | ) |
| (9) | **CITY OF NORMAN, an Oklahoma Municipality;** | ) |
| (10) | **CITY OF NORMAN POLICE DEPARTMENT, a municipal law enforcement agency;** | ) |
| (11) | **KEITH HUMPHREY, in his official and individual capacities;** | ) |
| (12) | **KYLE CANAAN, an individual;** | ) |
| (13) | **DANIEL BROWN, an individual;** | ) |

STATE OF OKLAHOMA ) S.S.
CLEVELAND COUNTY )

FILED

JAN 1 8 2019

In the office of the
Court Clerk MARILYN WILLIAMS

Case No. CJ-2019-71

**EXHIBIT**
tabbies®
2

| | | |
|---|---|---|
| **(14)** | **TURN KEY HEALTH CLINICS, LLC,** | ) |
| | **an Oklahoma Limited Liability** | ) |
| | **Company;** | ) |
| | | ) |
| **(15)** | **CLAYTON RICKERT, an individual,** | ) |
| | | ) |
| **(16)** | **NORMAN REGIONAL HOSPITAL** | ) |
| | **AUTHORITY d/b/a NORMAN** | ) |
| | **REGIONAL HOSPITAL,** | ) |
| | **a public trust;** | ) |
| | | ) |
| **(17)** | **EMERGENCY SERVICES OF** | ) |
| | **OKLAHOMA, P.C., a Domestic** | ) |
| | **Professional Corporation;** | ) |
| | | ) |
| **(18)** | **STEVEN M. ROBERTS, D.O., an** | ) |
| | **individual;** | ) |
| | | ) |
| **(19)** | **JUSTIN L. HOLBROOK, A.P.R.N.** | ) |
| | **C.N.P., an individual;** | ) |
| | | ) |
| | **Defendants.** | ) |

## PETITION

COMES NOW Plaintiff, Patricia Thompson ("Thompson") as Personal Representative of the Estate of Marconia Lynn Kessee ("Kessee") for her cause-of-action against Defendants Board of County Commissioners for Cleveland County ("Board"); Cleveland County Sheriff's Office ("Sheriff's Office"); Todd R. Gibson ("Gibson"); Clayton Rickert ("Rickert"); Zackery Andrews ("Andrews"); Brian Knapp ("Knapp"); Cody Barr ("Barr"); Stacy Shifflett ("Shifflett"); Stephen Scott ("Scott"); City of Norman ("Norman"); City of Norman Police Department ("Norman PD"); Keith Humphrey ("Humphrey"); Kyle Canaan ("Canaan"); Daniel Brown ("Brown"); Turn Key Health Clinics, LLC ("Turn Key"); Clayton Rickert ("Rickert"); Norman Regional Hospital Authority d/b/a Norman Regional Hospital ("Norman Regional"); Emergency Services of Oklahoma, P.C. ("Emergency Services"); Steven Roberts, D.O. ("Roberts"); and Justin Holbrook, A.P.R.N. C.N.P. ("Holbrook"), states as follows.

2

## INTRODUCTION

Thompson brings this civil rights action for damages against Defendants under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, and 42 U.S.C. § 1983, and tort claims under Oklahoma state law.

Thompson's claims arise from Norman PD officers Canaan and Brown's negligent, reckless, improper and unlawful seizure of his person inflicted upon Kessee by Canaan and Brown, while in the scope and course of their employment for Norman PD and in violation of the law. Plaintiff's claims for damages are further based upon the deprivation of medical care suffered by Kessee at the hands of Cleveland County Detention Center employees Andrews, Knapp, Barr, Shifflett, and Scott, and Turn Key employee, Rickert, while in the scope and course of their employment and in violation of law, while detained in the Cleveland County Detention Center. Plaintiff further alleges liability on the part of Norman, Norman PD and Humprhey, as well as the Board, Sheriff' Office, and Gibson based upon their failure to train and supervise their respective officers, sheriff's deputies and jail employees, as well as promulgating, creating, and implementing policies, procedures, and customs that deprived Kessee of necessary medical care and resulted in his death, especially policies wherein the officers, deputies and jail employees are (1) instructed to arrest and detain individuals experiencing life-threatening degrees of intoxication, serious medical conditions, and/or mental health crises without timely medical or mental health assessment or access to medical or mental health professionals, and (2) inadequately trained in how to identify, respond to, and detain individuals exhibiting obvious and apparent symptoms of life-threatening degrees of intoxication, serious medical conditions, and/or mental health crises.

Plaintiff further alleges claims against Norman Regional, Emergency Services, Roberts and Holbrook for medical malpractice, as well as claims against Norman Regional for negligent credentialing and against Emergency Services for negligent hiring, supervision, retention and training.

3

**THE PARTIES**

1.  Plaintiff Kessee was a citizen and resident of Oklahoma County, Oklahoma at the time of the incident hereinafter described.

2.  Defendant Board is the entity charged with administration of county governmental services in Cleveland County.  Defendant Board may sue or be sued by name and has the authority to delegate to the Cleveland County Sheriff final authority to establish Defendant Board's policies with regards to training and the use of force by sheriff's deputies.

3.  Defendant Sheriff's Office is the entity charged by Defendant Board with providing law enforcement services in Cleveland County, including operation of the F. Dewayne Beggs Detention Center.

4.  Defendant Gibson was, at all times relevant hereto, Cleveland County Sheriff, employed by and working for Defendant Board and/or Defendant Sheriff's Office. Defendant Gibson engaged in conduct complained of under color of law and within the scope of his employment as agent and representative of Defendant Board and/or Defendant Sheriff's Office.  Defendant Board and/or Defendant Sheriff's Office delegates final decision-making authority to Defendant Gibson to establish policy with regards to operation of the F. Dewayne Beggs Detention Center, including the detention and medical care for physically ill, intoxicated and/or mentally ill detainees.  The policies, practices and customs, promulgated, created, implemented and/or utilized by Defendant Gibson represent the official policies and/or customs of Defendant Board and/or Defendant Sheriff's Office with regards to operation of the F. Dewayne Beggs Detention Center.

5.  Defendant Andrews was, at all times relevant hereto, a sworn Cleveland County sheriff's deputy, employed by and working for Defendant Board and/or Defendant Sheriff's Office.  Defendant Andrews engaged in the conduct complained of under color of law and within the scope of his employment as agent and representative of Defendant Board and/or Defendant Sheriff's Office.

4

6. Defendant Knapp was, at all times relevant hereto, a sworn Cleveland County sheriff's deputy, employed by and working for Defendant Board and/or Defendant Sheriff's Office. Defendant Knapp engaged in the conduct complained of under color of law and within the scope of his employment as agent and representative of Defendant Board and/or Defendant Sheriff's Office.

7. Defendant Barr was, at all times relevant hereto, a sworn Cleveland County sheriff's deputy, employed by and working for Defendant Board and/or Defendant Sheriff's Office. Defendant Barr engaged in the conduct complained of under color of law and within the scope of his employment as agent and representative of Defendant Board and/or Defendant Sheriff's Office.

8. Defendant Shifflett was, at all times relevant hereto, a sworn Cleveland County sheriff's deputy, employed by and working for Defendant Board and/or Defendant Sheriff's Office. Defendant Shifflett engaged in the conduct complained of under color of law and within the scope of his employment as agent and representative of Defendant Board and/or Defendant Sheriff's Office.

9. Defendant Scott was, at all times relevant hereto, a sworn Cleveland County sheriff's deputy, employed by and working for Defendant Board and/or Defendant Sheriff's Office. Defendant Scott engaged in the conduct complained of under color of law and within the scope of his employment as agent and representative of Defendant Board and/or Defendant Sheriff's Office.

10. Defendant Norman is a municipality and political subdivision located in Cleveland County, Oklahoma and is responsible for the operation of the Norman Police Department and its law enforcement officers. As such, the Norman may sue or be sued by name and has the authority to employ law enforcement officers, appoint a police chief, and delegate to the police chief final policy and decision-making authority regarding law enforcement matters for the City of Norman.

11. Defendant Norman PD is a municipality and political subdivision located in Cleveland County, Oklahoma and has been delegated responsibility for the operation of the Norman Police Department

and its law enforcement officers. As such, the Norman PD may sue or be sued by name and has the authority to employ law enforcement officers and set policies for officers regarding the arrest and detention of citizens of Norman, Oklahoma.

12. Defendant Humphrey was, at all relevant times, a sworn Norman Police Officer and Chief of Police, employed by and working for Defendant Norman and/or Norman PD. Defendant Humphrey engaged in the conduct complained of under color of law and in the scope of his employment as agent, representative, and final delegated decision maker of Defendant Norman PD. Defendant Humphrey was responsible for ensuring that all officers, including Defendants Canaan and Brown, were adequately trained in regards to exercising the necessary force to accomplish an arrest and identifying and interacting with intoxicated, physically ill and/or mentally ill/unstable members of the community.

13. Defendant Canaan was, at all relevant times, a sworn Norman Police Officer, employed by and working for Defendant Norman and/or Norman PD. Defendant Canaan engaged in the conduct complained of under color of law and in the scope of his employment as agent and representative of Defendant Norman and/or Norman PD.

14. Defendant Turn Key is an Oklahoma Limited Liability Company that provides medical services at the F. Dewayne Beggs Detention Center.

15. Defendant Rickert was, at all relevant times, a Licensed Practical Nurse, employed by and working for Defendant Turn Key. Defendant Rickert engaged in the conduct complained of under color of law and in the scope of his employment as agent and representative of Defendant Turn Key.

16. Defendant Norman Regional is a public trust operated under the authority of Defendant Norman. Defendant Norman Regional has the authority to set and create hospital policies and procedures,

employ staff, and to provide hospital privileges to medical professionals, including Defendant Roberts.

17. Defendant Emergency Services is an Oklahoma Professional Corporation that provides medical professional services to various hospitals including Defendant Norman Regional.

18. Defendant Roberts is a Doctor of Osteopathic Medicine. At all times relevant hereto, Defendant Roberts was employed by and working for Defendant Emergency Services, and was granted privileges by Defendant Norman Regional to practice medicine as an ER physician at Norman Regional Hospital. Defendant Roberts engaged in the conduct complained of in the scope of his employment as agent and representative of Defendant Emergency Services.

19. Defendant Holbrook is an Advanced Practice Registered Nurse employed by and working for Defendant Emergency Services. Defendant Holbrook engaged in the conduct complained of in the scope of his employment as agent and representative of Defendant Emergency Services.

## JURISDICTION AND VENUE

Plaintiffs incorporate all previous allegations and statements and further allege as follows:

20. This action arises from an incident that occurred in Cleveland County, Oklahoma.

21. Plaintiff has complied with all requirements under the Oklahoma Governmental Tort Claim Act, 51 O.S. § 151 et. seq.

22. With regard to claims made under the Oklahoma Governmental Tort Claim Act arising out of the conduct of Defendants were acting under color of state law and within the scope of their employment and/or authority as employees, agents and/or servants.

23. In the alternative, the individual Defendants involved in this incident were acting outside the scope of their employment, such that the Oklahoma Governmental Tort Claims Act, 51 O.S. § 153(C) does not exempt them from personal liability for their tortious conduct.

24. This Court has jurisdiction over the parties hereto, jurisdiction over the subject-matter hereof, and venue is proper.

## FACTUAL BACKGROUND

Plaintiffs incorporate all previous allegations and statements and further allege as follows:

### *Kessee Presented to Norman Regional*

25. On or about January 16, 2018 at 5:36 pm, Kessee presented to Defendant Norman Regional, where he was a patient in the Emergency Department ("ER").

26. On or about January 16, 2018, at Defendant Norman Regional, Kessee was assessed, diagnosed and treated by Defendant Roberts, Defendant Holbrook, Tiffany Caride, E.D.R.N., and Kerry Gasaway, E.D.R.N. No other individuals at Defendant Norman Regional assessed, diagnosed or treated Kessee on January 16, 2018 until he returned to Defendant Norman Regional in cardiac arrest at or around 10:30 pm.

27. Kessee was discharged at or around 7:04 pm on January 16, 2018. Less than four (4) hours after being negligently and recklessly discharged from Norman Regional, Kessee died.

28. An employee of Defendant Norman Regional contacted Defendant Norman PD at 6:57 pm on January 16, 2018, to have Kessee removed from the property.

### *Norman PD Responded to a Call for Norman Regional*

29. On January 16, 2018 at or around 7:08 pm, Defendants Canaan and Brown were dispatched to Norman Regional Hospital, on a report that a black male was refusing to leave the hospital premises.

30. Defendant Canaan entered the Norman Regional ER entrance before Defendant Brown arrived.

31. When Defendant Canaan entered the ER entrance, Kessee was sitting on the floor in the ER waiting area. Security at Norman Regional advised Defendant Canaan that Kessee began having some issues after being discharged.

32. Defendant Canaan had observed and was aware of the obvious and readily apparent signs that Kessee was overdosing on drugs, physically ill and/or mentally ill/unstable, such that Kessee was unable to ambulate on his own, unable to put on his own glasses, unable to verbally communicate, and needed medical assistance. As a result of his observations, Defendant Canaan recognized the need to assist Kessee to a wheel chair and assist Kessee in putting on Kessee's glasses.

33. Despite this knowledge and awareness, Defendant Canaan did not seek medical attention for Kessee.

34. Defendant Brown arrived at the ER approximately one (1) minute after Defendant Canaan arrived at the ER. When Defendant Brown arrived, Kessee was seated in a wheel chair.

35. Prior to being wheeled out of the ER, Defendant Brown had observed and was aware of the obvious and readily apparent signs that Kessee was overdosing on drugs, physically ill and/or mentally ill/unstable, such that Kessee was unable to ambulate on his own, unable to put on his own glasses, unable to verbally communicate, and needed medical assistance.

36. Despite this knowledge and awareness, Defendant Brown did not seek medical attention for Kessee.

### *Defendants Canaan and Brown took Kessee Outside*

37. Instead of seeking medical attention for Kessee, Defendants Canaan and Brown escorted Kessee outside.

38. A security guard employed by and working for Defendant Norman Regional witnessed and assisted Defendants Canaan and Brown. Despite having witnessed Kessee suffering from clear and obvious signs of drug overdose, physical illness and/or mental illness, the security guard negligently failed to seek medical attention for Kessee.

39. Defendants Canaan and Brown possess or should have been trained to possess specialized knowledge as law enforcement officers of the symptoms and typical duration of drug overdose, mental illness/instability and/or physical illness that would require medical attention.

40. The temperature on January 16, 2018, at or around 7:08 pm, was approximately 15 degrees Fahrenheit.

41. Prior to wheeling Kessee outside in 15-degree weather, Defendant Canaan and Defendant Brown's only source of information regarding Kessee's medical condition came from a security guard. At no point, did Canaan or Brown speak to medical personnel.

42. Despite having only spoken to a security guard, neither Defendant Canaan nor Defendant Brown attempted to inquire about Kessee's medical condition or question the reasonableness of discharging Kessee in light of the obvious and readily apparent signs that Kessee was overdosing on drugs, physically ill and/or mentally ill/unstable, such that a reasonable officer under the circumstances should have appreciated Kessee's need for medical attention.

43. Once outside, the security guard advised Defendants Canaan and Brown that Kessee was having an "episode" and that Kessee took his "morning meds" but that the security guard did not know what "meds" Kessee had taken.

44. Neither Defendants Canaan nor Brown made any attempt to determine whether any medical professionals were aware that Kessee had taken "meds;" or that Kessee was having an "episode" or "issues."

45. Once outside, Defendants Canaan and Brown observed and were aware that Kessee was unable to communicate. Kessee's words were slurred, jumbled, and unintelligible, such that a reasonable officer under the circumstances would have been aware of the probability that Kessee was suffering from drug overdose, mental illness and/or physical illness that required immediate medical attention.

46. Once outside, Defendants Canaan and Brown observed and were aware that Kessee was unable to stand or walk. Defendants Canaan and Brown observed Kessee convulsing, shaking, and lacking in basic coordination, such that a reasonable officer under the circumstances would have been aware of

10

the probability that Kessee was suffering from drug overdose, mental illness and/or physical illness that required immediate medical attention.

47. Defendants Canaan and Brown observed Kessee suffering from drug overdose, mental illness and/or physical illness as he sat in the front of an ER in 15-degree weather – just feet away from medical attention.

***Defendants Canaan and Brown began Making Disparaging Comments to and about Kessee***

48. Instead of seeking medical attention, Defendants Canaan and Brown began making disparaging comments to and about Kessee, including but not limited to:

   a. "Are you just putting on a show….?"

   b. "Is this discharge induced…"

   c. "You can't just act like this to get back in the hospital. That's not how it works."

   d. "You can stop with the show." "It ain't fooling a single person, I can tell you that."

   e. "What you are doing right now is putting on a show."

   f. "I am too cold to stand here and watch you play this game. Can you just get your show on and walk away?"

   g. "Mr. Kessee, we're not playing with you…it's a bunch of B.S."

49. While Defendants Canaan and Brown verbally assaulted and insulted Kessee, Kessee attempted to comply with their orders but was physically and/or mentally unable to do so. In response to their orders, Kessee stated: "I'm not playing with you. There's something going on."

50. Citizens of Norman Oklahoma have a right to expect that City of Norman Police Officers will take seriously a citizen's attempt to obtain medical help, when that citizen expresses to officers that "there is something going on" with the citizen mentally and/or physically.

51. A reasonable officer under the circumstances would have sought medical attention for Kessee.

52. Defendant Canaan comprehended Kessee's statement that "something was going on" but negligently and recklessly disregarded it; instead continued his belittling comments, stating: "Yep, something is going on, get that shoe on, something is going on."

53. As Kessee struggled to put his shoe on and communicate to the Defendants that he needed medical attention, Defendants Canaan and Brown disregarded clear and obvious neurological and neuropsychiatric symptoms which required immediate medical attention, including confusion, convulsions, incoordination, spasms, tremors, and difficulty speaking; and instead further demeaned Kessee – with Defendant Brown stating "be an adult for a second; quit putting on a show."

54. As Kessee continued to struggle to put on his shoe, Defendants Canaan and Brown again exhibited awareness of the probability that Kessee was suffering from drug overdose, as they questioned Kessee about what drugs he had taken. This question shows Defendant Brown was aware of the likelihood that Kessee was overdosing on drugs, physically ill and/or mentally ill/unstable, such that a reasonable officer under the circumstances would have appreciated Kessee's need for medical attention.

55. Kessee remained on the concrete, outside in 15-degree weather, trembling, convulsing, having difficulties speaking, while suffering from the effects of drug overdose, physical illness and/or mental illness, which would ultimately lead to his death, during the time period when Defendants Canaan and Brown stood over him making further disparaging remarks, such as:

    h.  "Act like an adult"

    i.  "Just like you did when you were a little kid"

    j.  "Grip reality real quick, get a strong hold on it, and put your shoe on"

56. While Kessee struggled unsuccessfully to comply with Defendant Canaan and Brown's demands, Kessee again told Defendants Canaan and Brown that he needed to see a doctor, stating: "I need to talk to him…to a doctor."

57. Defendants Canaan and Brown negligently and recklessly disregarded Kessee's clear and obvious need for and verbal request for medical attention telling Kessee that he was "acting like a fool."

58. Defendant Canaan stated: "I'll take you to jail just the way you are. It doesn't matter to me." This statement shows Defendant Canaan's awareness and complete disregard of Kessee's safety and obvious medical needs.

59. Citizens of Norman, Oklahoma, including and especially those who suffer from mental health issues, have a right to expect the police officers entrusted to protect them and look out for their safety will seek medical attention for those citizens who exhibit confusion, convulsions, incoordination, spasms, tremors, and difficulty speaking and walking.

60. As Defendant Canaan and Brown continued to berate Kessee about putting on his shoe, Kessee makes a third (3rd) request for medical attention. In response, Defendant Canaan callously stated: "Nope…shoe." Defendant Brown stated: "You ain't seeing a doctor."

61. In response, Kessee again attempted to comply with the Defendants' orders, while the Defendant Brown likened Kessee to a dog, stating: "I could teach my dog to put a shoe quicker than this."

62. Defendants Canaan and Brown treatment of Kessee took place while Defendants were aware that children were watching.

63. Kessee told Defendants Canaan and Brown: "I'm sick."

64. As Kessee continued to convulse, hallucinate, exhibit slurred and unintelligible speech, Defendant Brown again asked Kessee what drugs he used. This is evidence that Defendant was aware of the

probability that Kessee was suffering the effects of drug overdose, such that he required immediate medical attention.

65. A reasonable officer who suspected a citizen was potentially suffering from drug overdose would have sought immediate medical attention for the safety and well-being of the citizen.

66. Instead, Defendant Canaan and Brown again negligently and recklessly disregarded the clear and obvious signs that Kessee needed medical attention, choosing to continue to berate and demean Kessee.

67. At no time during the Defendants' encounter with Kessee did Kessee make any actions which threatened the safety of Defendants Canaan or Brown, or any other individuals.

68. Without provocation or justification, Defendant Brown threatened physical harm to Kessee, stating: "Here, in about 15 seconds, I am going to drag your ass to the curb..."

69. Kessee told Defendant's Canaan and Brown that there was "medicine in me..." Defendant Canaan and Brown negligently and recklessly disregarded Kessee's attempt to communicate that he was overdosing on prescription medications, with Defendant Brown interrupting Kessee by stating "time's ticking."

70. As Kessee continued to struggle to put on his shoe and communicate to Defendants Canaan and Brown his need for medical attention, Defendants told Kessee to pick up his shoe and walk off the property.

71. Defendant Brown observed that Kessee was sweating, despite the temperature being approximately 15 degrees Fahrenheit. A reasonable officer under the circumstances, especially in light of the other symptoms exhibited by Kessee, would have recognized sweating as a sign that Kessee was suffering from the effects of a drug overdose, was physically ill and/or mentally ill/unstable

72. Defendant Brown recognized the probability that Kessee was suffering from drug overdose, and asked Kessee, again, "what drugs did you take?". Despite this knowledge and awareness, Defendants Canaan and Brown did not seek medical attention for Kessee.

73. As Kessee continued to convulse, Defendants Canaan and Brown threatened him with jail, stating: "Listen, I'm not falling for your bullshit." Defendant Brown continued, stating: "You're putting on a show right now." Kessee told Defendants: "I'm not trying to. I'm not trying to."

74. During his encounter with Defendants Canaan and Brown, Kessee was suffering from a real medical and/or psychological problem, which required medical attention.

75. Kessee's words and actions show that Kessee was consciously aware that he was suffering from a real medical and/or psychological problem, which required medical attention, and that Kessee was distressed by the Defendants' callous disregard to his pleas for help, and fearful that their refusal to get Kessee medical attention would result in serious harm or death to Kessee.

76. As Kessee continued to convulse, unable to clearly speak, Defendant Canaan told Kessee: "You're here for a headache. Get over yourself."

### *Defendants Canaan and Brown Dragged Kessee across the Pavement*

77. Defendant Canaan, without provocation or justification, forcefully grabbed Kessee by the collar, and began to drag him across the pavement. Defendant Brown assisted Defendant Canaan drag Kessee across the pavement.

78. At no point prior to or during Defendants Canaan and Brown's use of force against Kessee did Kessee pose any physical threat to Defendants or any other persons. During this time, Kessee was unable to even stand or put on his shoe, much less pose a threat to two (2) trained police offers.

79. No weapons were found on Kessee's person.

80. While dragging Kessee across the pavement, Defendant Canaan stated: "I'm not above dragging you off this property."

81. While forcefully dragging Kessee across the pavement, without provocation or justification, Defendant Canaan stated: "We're just dragging him off the property, like a small-child that doesn't want to listen."

82. Defendants momentarily stopped dragging Kessee across the pavement. During this time, Defendant Brown told him to "Stand up." Kessee again told Defendants that he needed a doctor, stating "Please, I need to see a doctor." Defendants negligently and recklessly disregarded Kessee's obvious need for medical attention, and verbal request for a doctor, with Defendant Canaan stating: "You better get to goin'."

83. As Kessee laid on the pavement, pleading for his life, Defendant Canaan responded: "Bye…you better go." Defendant Brown told Kessee: "Quit playing games and go…"

84. After a brief period, Defendant Canaan exclaimed: "I got more energy." After which, Defendant Canaan grabbed Kessee by the collar and began dragging him on the pavement again.

85. While Defendant Canaan dragged Kessee across the pavement, Defendant Brown joked that "I think his butt is dragging now, his bare butt." This was in reference to Kessee's pants coming down and his backside rubbing directly on the concrete.

86. Defendants dragged Kessee a total of approximately seventy-five (75) feet a across pavement.

87. As Kessee laid in the parking lot consciously aware that he was suffering from severe and life-threatening drug overdose, physical illness and/or mental illness and after having been dragged by Defendants Canaan and Brown, Defendant Canaan taunted Kessee, stating: "I guess we are going to go to jail for trespassing. How does that sound?" Defendant Brown stated: "Sound good?"

88. Dragging a citizen on pavement under the circumstances presented to Defendants was cruel and malicious. Such actions do not conform to proper police procedure, and violate the rights and expectations of citizens, including Kessee.

89. No reasonably competent law enforcement officer, with knowledge of the totality of the circumstances as Defendants Canaan and Brown reasonably understood them to be, could have reasonably believed Kessee had committed any offense, which required or authorized the use of such excessive force.

90. No reasonably competent law enforcement officer, with knowledge of the totality of the circumstances as Defendants Canaan and Brown reasonably understood them to be, could have reasonably believed that the amount of force utilized was necessary or warranted in the situation.

91. No reasonably competent law enforcement officer, with knowledge of the totality of the circumstances as Defendants Canaan and Brown reasonably understood them to be, could have reasonably believed Kessee needed to be dragged across pavement.

92. The actions of Defendants were negligent, intentional, reckless, willful, and deliberate and showed gross and reckless disregard for Kessee's rights.

93. Defendants Canaan and Brown handcuffed Kessee. As they were placing Kessee in handcuffs, Kessee exclaimed: "I'm sick."

94. After dragging Kessee across the pavement and placing him in handcuffs, Defendants continued to berate and insult Kessee, including Defendant Canaan stating: "Well, you're not the smartest, but you get results."

95. Defendant Canaan pulled a bag of Kessee's prescription medications out of Kessee's jacket pocket, immediately before placing Kesee in Defendant Brown's vehicle, but did not inspect them any further.

96. Defendant Brown then walked back towards the ER entrance (where Defendants were before they dragged Kessee across the pavement) to get his vehicle, in order to transport Kessee to the jail.

97. Defendants had no justifiable reason to drag Kessee across the pavement, especially when the vehicle they were going to use to transport him was parked back where Kessee was before they dragged him.

98. Defendants' choice to deny Kessee medical attention under these circumstances was made with malice and cruel intent.

99. Defendants' choice to drag Kessee under these circumstances was unreasonable and in reckless disregard to Kessee's rights.

### *Defendants Canaan and Brown Arrested Kessee for Misdemeanor Tresspassing*

100. Kessee was arrested for a misdemeanor trespassing charge.

101. No force or much less force could have been used to gain control of the situation, rather than the unnecessary use of a force to arrest a citizen for a simple trespassing charge.

102. Defendant Canaan left Kessee with Defendant Brown with knowledge that he would transported to jail without having ever sought medical treatment for Kessee, despite clear and obvious signs that would alert a reasonable officer that Kessee required medical attention.

103. After placing Kessee in Defendant Brown's vehicle, Kessee continued to show signs that he was suffering from a drug overdose, physical illness and/or mental illness, including yelling out in a manner that would indicate to a reasonable officer under the circumstances that Kessee was in pain, stating something about his "mind" being messed up.

104. Defendant Brown disregarded the clear and obvious signs that Kessee needed medical attention, telling Kessee to "knock it off."

18

105.    While being transported by Defendant Brown, Kessee continued to yell and convulse in a manner

that would indicate to a reasonable officer under the circumstances that Kessee was suffering from

severe and life-threatening drug overdose, physical pain and/or a mental breakdown.

106.    While being transported by Defendant Brown, Kessee again stated that he needed to see a doctor.

At one point Kessee stated, "I'm going to die in your car."

107.    As a result of Kessee's actions and/or verbal requests while being transported to jail, Kessee

should have been transported to a hospital and/or mental health facility.

108.    Defendant Brown disregarded the clear and obvious signs that Kessee was in physical and/or

emotional distress and needed medical attention, and transported Kessee to the F. Dewayne Beggs

Detention Center.

### Kessee Arrived at the F. Dewayne Beggs Detention Center

109.    As Defendant Brown attempted to get Kessee out of his vehicle, Kessee was convulsing in the

back seat and showing clear and obvious signs that he needed medical attention. Defendant Brown

negligently and recklessly disregarded Kessee's rights to appropriate medical attention, telling

Kessee: "Come on. You're fine."

110.    Kessee was unable to get out of the vehicle on his own. Kessee had to be carried into the jail by

Defendant Brown and Defendants Barr and Shifflett, who were employed by and working for

Defendant Board and/or Defendant Sheriff's Office.

111.    Kessee continued to exhibit signs and symptoms that would indicate to a reasonable officer that

he needed medical attention, including but not limited to convulsions, incoordination, slurred speech,

glassy eyes, sweating, shortness of breath, and an inability to walk or stand.

112.    Defendants Brown, Barr and Shifflett sat Kessee in chair in the intake area, telling him to "sit

your ass right there, don't move."

113.   Defendant Brown told Defendants Barr, Shifflett and Rickert that Kessee went to the hospital for a headache. Kessee immediately responded "No," and attempted to tell the officers that he had serious medical symptoms, and needed immediate medical attention.

114.   Defendant Brown told Defendants Barr, Shifflett and Rickert that Kessee had "like eight (8) medication bottles" on Kessee's person when he was arrested. Despite this knowledge, neither Defendants Barr, Shifflett nor Rickert inspected the medications further.

115.   Defendant Brown told Defendants Barr, Shifflett and Rickert that Kessee had episodes while at the hospital that were similar, in Brown's mind, to seizures.

116.   Defendant Rickert stated that "[o]n arrival into intake inmate was able to stand with out [sic] assist and able to follow instructions, when asked to sit on the bench." This statement was false.

117.   While Kessee was sitting on the bench in the intake area, he began violently convulsing, causing Kessee to hit his head on the wall.

118.   As Kessee convulsed and yelled in pain and agony, Defendant Rickert administered an ammonia inhalant, while one of the Defendants in the room told Kessee to "quit acting like an idiot."

119.   Defendants Barr and Shifflett claimed Kessee was "faking" a seizure.

120.   An ammonia inhalant creates an irritative effect on nasal and pharyngeal mucus membranes and produces a sudden, violent avoidance response in a normal individual, as well as an individual who is "faking" a condition.

121.   According to Defendant Shifflett, Kessee "did not react to the ammonia inhalant right away." A reasonable officer/nurse should have recognized Kessee's delayed and blunted reaction to the ammonia inhalant as a sign that Kessee required medical attention.

122.   Defendant Rickert, a Licensed Practical Nurse, possessed or should have possessed training to recognize that Kessee was suffering from the effects of drug overdose, physical illness and/or mental illness, such that he required medical attention.

123.   Defendant Knapp observed and was aware that Kessee was twitching and not verbally responding to verbal commands.

124.   Defendants Brown, Shifflett, Barr Knapp and Rickert negligently and recklessly disregarded the clear and obvious signs that Kessee required immediate medical attention, with one of the Defendants stating "fuck his ass."

125.   Instead of seeking necessary medical attention, Defendants Brown, Shifflett, Barr and Rickert removed Kessee's pants, and lifted Kessee to his feet in order to take him to a cell.

126.   At this point, Defendant Brown witnessed Kessee exhibit signs of drug overdose, physical illness and/or mental illness, including difficulties with speech, incoordination, convulsions, trembling, sweating, shortness of breath, appearance of pain and grimacing, and an inability to stand or walk. Kessee had been exhibiting such symptoms continuously for more than forty-five (45) minutes.

127.   Kessee was taken out of the intake area room into the jail facility. Defendant Brown exited the facility without having ever sought medical treatment for Kessee, despite clear and obvious signs that would alert a reasonable officer that Kessee required medical attention.

128.   No citizen should have to endure the treatment and conduct exhibited by Defendants Canaan and Brown against Kessee.

129.   Defendants Canaan and Brown inflicted unreasonable, unnecessary, excessive and negligent force upon Kessee and failed to exercise the care of a reasonably prudent and qualified officer while engaged in an activity undertaken for the safety of the public.

130.   As a result of Defendants Canaan and Brown's deliberate, indifferent, callous, outrageous, unreasonable, and negligent actions, Kessee suffered physical and mental pain and anguish, and a tragic, preventable death.

131.   Defendants Canaan and Brown's deliberate, indifferent, callous, outrageous, unreasonable, and negligent actions denied Kessee of access to medical care. Kessee died approximately two (2) hours later as a direct and foreseeable result of Defendants' reckless disregard to Kessee's need for medical care.

132.   The actions of Defendants Canaan and Brown establish that they were not properly trained regarding the use of force or, in the alternative, that they failed to follow such training and that the other named Defendants failed to properly enforce such policies.

133.   Upon information received, Plaintiff has reason to believe that City of Norman Police Department's inadequate training and supervision on both the policies of use of force and identification and interaction with mentally unstable citizens has resulted in the widespread use of excessive force on citizens who have not committed a criminal activity, are not armed, and/or are not attempting to flee in situations where less force would be effective.

134.   The actions of Defendants Canaan and Brown establish that they were not properly trained regarding the identification and subsequent interactions with citizens that are intoxicated, physically and/or mentally ill/unstable or, in the alternative, that they failed to follow such training and that the other named Defendants failed to properly enforce such polices.

135.   The above-described wrongful acts are proof of a policy in which Defendants deny citizens the rights, privileges, and immunity guaranteed to them by the United States Constitution, the laws of the United States, and the laws of Oklahoma.

136.   This policy has no justification or excuse under the law but instead is improper, illegal, deliberately indifferent, and negligent and is unrelated to any activity in which law enforcement officers properly and legally carry out their sworn duty to enforce laws, protect persons and property, and ensure civil order.

137.   Defendant Humphrey, as Chief of Police for Norman was aware or reasonably should have been aware of this policy and did not act to correct it, constituting negligent supervision and training.

138.   Defendant Norman, Norman PD and Defendant Humphrey were negligent in the selection, appointment, training, supervision, and retention of their agents and employees, in that these Defendants knew or should have known their agents and employees were carrying out these policies. Defendant Norman, Norman PD and Defendant Humphrey directly or indirectly allowed an attitude that encouraged law enforcement officers to wrongfully detain and seize citizens and to use tactics and procedures violating citizens' right to life, liberty, and property in a manner that is reckless, irresponsible, dangerous, and negligent to the community at large and to Kessee and, in fact, had a policy of using unwarranted excessive force against citizens and denying citizens of necessary medical attention.

139.   Despite Defendant Norman, Norman PD and Defendant Humphrey's knowing (or reasonably should have known) that this policy was being carried out, Defendants failed to remove the individual Defendants from their positions, to take any disciplinary action, or provide redress for citizens, such as Kessee, who have been injured by such officers, and most importantly, put an end to the use of unwarranted excessive force and denial of medical care against the community.

140.   The actions of Defendants were negligent, intentional, reckless, willful, and deliberate and showed gross and reckless disregard for Kesee's rights.

141.   Defendants' acts and omissions were a direct and proximate cause of the harm to Kessee and his injuries.

142.   The actions of Defendants Canaan, Brown and Humphrey were done willfully, maliciously, unlawfully, and with callous and reckless indifference in total disregard of Kessee's safety and continued health.   Therefore, Plaintiff is entitled to compensatory and punitive damages along with her attorney's fees.

### *Kessee was Detained at the F. Dewayne Beggs Detention Center*

143.   During all material times hereto, Kessee was a pretrial detainee.

144.   During all material times hereto, Kessee had not been convicted of a crime or incarcerated for a crime.

145.   During all material times hereto, Kessee was not being held in custody for trial or sentencing.

146.   During all material times hereto, Kessee was not on probation or parole.

147.   While performing the book-in process, Defendants chose not to conduct the required initial health screening or determine whether medical treatment was necessary for Kessee's alleged severe intoxication, physical illness and/or severe mental health crisis, contrary to state law and Cleveland County policies.

148.   Defendant Rickert claims he ordered Kessee be placed under "critical observation."

149.   Defendants Andrews and Shifflett claim Defendant Rickert wanted Kessee placed under "medical observation;" not "critical observation."

150.   Defendants Shifflett, Barr, Andrews, and Rickert claim Kessee "refused" to walk to his cell.

151.   Defendants Shifflett, Barr, Andrews, and Rickert recklessly disregarded the clear and obvious signs that Kessee was unable to walk to his cell as a result of the serious effects of drug overdose, physical illness and/or mental illness, which required immediate medical attention.

152.   After book-in, at or around 8:00 pm, Defendant Board/Sheriff's Office employees placed Kessee in a padded holding cell, identified as B-130.

153.   Defendants claim they removed Kessee's clothes and provided Kessee with a smock "suicide" blanket.

154.   After more than one (1) hour elapsed, Kessee's obvious and readily apparent and life-threatening symptoms of drug overdose, physical illness and/or mental illness had not abated. Defendants chose to continue detaining Kessee in custody without completion of a medical assessment or medical attention.

155.   Board/Sheriff's Office employees, including Defendants Barr, Knapp, Andrews, Scott, and Turn Key employee, Rickert, claim to have checked on Kessee at fifteen (15) minute intervals.

156.   The Defendant Jailers and Rickert negligently and recklessly disregarded actual knowledge and awareness that Kessee was suffering from serious and life-threatening effects of drug overdose, physical illness and/or mental illness, and did not perform an appropriate medical assessment on Kessee; nor seek necessary medical attention.

157.   The Defendant Jailers or Rickert did not actually perform checks on Kessee at fifteen (15) minute intervals.

158.   To the extent the Defendant Jailers and Rickert performed checks, said checks were so grossly inadequate and ineffective that they constitute a denial of medical care in violation of Kessee's rights.

159.   No jailer actually entered Kessee's cell during a check to determine his condition.

160.   No jailer actually attempted to speak to or seek a response from Kessee during a check to determine his condition.

161.   The checks, if performed at all, constituted opening the door flap to observe Kessee's basic presence in the cell.

a. Defendant Barr claimed that at or around 7:59 pm, Kessee was lying face down just as they left him.

b. Defendant Shifflett claimed to have performed a check at or around 8:16 pm. Defendant Shifflett claimed Kessee was "laying on his stomach…Inmate Kesee's head was facing away from me." Defendant Shifflett observed no movement. Without knowledge of whether Kessee was asleep, in severe distress, or was dead, Defendant Shifflett did not investigate further and continued her normal duties.

c. Defendant Knapp claimed on one (1) check, he saw "what looked like inmate Kessee [sic] right leg moving." Without knowledge of whether Kessee *actually* moved, was in severe distress, or was even alive, Defendant Knapp did not investigate further and continued his normal duties.

d. Defendant Scott claimed he opened the door flap to see at or around 9:04 pm, approximately one (1) hour after Kessee was placed in the cell. According to Defendant Scott, "When I opened the door flap I saw inmate Kessee [still] laying in the center of the cell *face down* underneath his smock. *I thought I might* have seen his left arm or some part of the left side of his body move while conducting the sight check." Without knowledge of whether Kessee *actually* moved, was in severe distress, or was even alive, Defendant Scott did not investigate further and continued his normal duties.

e. Defendant Andrews claims to have performed four (4) checks. He observed Kessee laying, in what appeared to him to be sleeping. He did not note any movement by Kessee. Without knowledge of whether Kessee was sleeping, was in severe distress, or was dead, Defendant Andrews did not investigate further and continued his normal duties.

162.    A reasonable officer under the circumstances, especially in light of the other symptoms exhibited by Kessee, would have confirmed that Kessee was alive and not in distress before continuing his/her normal duties.

163.    A reasonable officer under the circumstances, especially in light of the other symptoms exhibited by Kessee, would have recognized that Kessee was suffering from the effects of a drug overdose, was physically ill and/or mentally ill/unstable, such that he required immediate medical attention.

164.    The above-mentioned Defendant Board/Sheriff's Office employees and Rickert recklessly disregarded clear and obvious signs that Kessee needed immediate medical attention.

165.    Defendant Rickert claimed that he performed a check on Kessee at or around 9:53 pm. Defendant Rickert claimed he "tapped on the window twice with no response."

166.    Rickert entered Kessee's cell. When Rickert's entered Kessee's cell, Kessee was not responsive to verbal, physical or painful stimuli. Kessee was not breathing. Kessee's heart was not beating. Kessee was dead.

167.    Kessee was dead less than two (2) hours after Rickert and other Defendant Board/Sheriff's Office employess claimed Kessee was "faking" his symptoms, including a seizure.

168.    Kessee had been dead for some period of time prior to 9:53 pm. However, due to Defendants' reckless disregard to Kessee's need for medical attention, and grossly inadequate "sight checks" on Kessee, Kessee's condition went unnoticed until 9:53 pm.

169.    After finding Kessee unresponsive, numerous Board/Sherriff's Office employees and Rickert attempted Cardiopulmonary Resuscitation ("CPR"), chest compressions, and use of an Automated External Defibrillator ("AED").

170.    AED's advise a shock only for ventricular fibrillation or pulseless ventricular tachycardia. According to Defendants, the AED did not advise a shock.

27

171.   EMSTAT was called at or around 9:55pm on January 16, 2018, and Kessee was transported back to Defendant Norman Regional.

172.   Kessee was pronounced dead at 10:37 pm on January 16, 2018.

173.   On January 17, 2016, an employee of Defendant Board/Sheriff's Office examined the contents of the prescription medication bottles that were in Kessee's possession when he presented to Norman Regional and remained in Kessee's possession until he was booked into jail. The medications were as follows:

    a.   Lorazepam 1MG Tab – 34 out of 60 tablets found in the bottle with instructions to "take one tablet twice daily";

    b.   Amlodipine Besylate 5MG Tab – 23 out of 30 tablets found in the bottle with instructions to "take one tablet by mouth at bedtime";

    c.   Atomoxetine 100MG Cap – 12 out of 30 capsules found in the bottle within instructions to "take one capsule by mouth daily";

    d.   Melatonin 10MG Capsule – 23 out of 30 capsules found in the bottle with instructions to "take one capsule by mouth at bedtime";

    e.   Bupropion 100MG Tab – 52 out of 90 tablets found in the bottle with instructions to "take one tablet by mouth three times daily".

174.   All five (5) prescriptions were valid prescriptions for Kessee and were filled on January 10, 2018.

175.   No Defendant or employee of a named Defendant reviewed, counted or examined Kessee's prescription medications on January 16, 2018.

176.   According to the Medical Examiner's Report, Kessee died of "Acute Bupropion, Methamphetamine, and Atomoxetine Toxicity."

177.   No citizen should have to endure the treatment and conduct exhibited by Defendants Andrews, Knapp, Barr, Shifflett, Scott and Rickert against Kessee.

178.   Defendants Andrews, Knapp, Barr, Shifflett, Scott and Rickert' deliberate, indifferent, callous, outrageous, unreasonable, and negligent actions denied Kessee of access to medical care.

179.   As a result of Defendants Andrews, Knapp, Barr, Shifflett, Scott and Rickert' deliberate, indifferent, callous, outrageous, unreasonable, and negligent actions, Kessee suffered physical and mental pain and anguish, and a tragic, preventable death.

180.   The actions of Defendants Andrews, Knapp, Barr, Shifflett, Scott and Rickert establish that they were not properly trained to adequately identify, respond to, and detain individuals exhibiting obvious and apparent symptoms of severe physical illness, mental health crisis, and/or dangerously severe degrees of intoxication; or, in the alternative, that they failed to follow such training and that the other named Defendants failed to properly enforce such policies.

181.   The above-described wrongful acts are proof of a policy in which Defendants deny citizens the rights, privileges, and immunity guaranteed to them by the United States Constitution, the laws of the United States, and the laws of Oklahoma.

182.   This policy has no justification or excuse under the law but instead is improper, illegal, deliberately indifferent, and negligent and is unrelated to any activity in which law enforcement officers properly and legally carry out their sworn duty to enforce laws, protect persons and property, and ensure civil order.

183.   Defendant Gibson, as Cleveland County Sheriff, was aware or reasonably should have been aware of this policy and did not act to correct it, constituting negligent supervision and training.

184.   Defendant Board, Sheriff's Office and Gibson were negligent in the selection, appointment, training, supervision, and retention of their agents and employees, in that these Defendants knew or

should have known their agents and employees were carrying out these policies. Defendant Board, Sheriff's Office and Gibson directly or indirectly allowed an attitude that encouraged law enforcement officers to wrongfully detain and seize citizens and to use tactics and procedures violating citizens' right to life, liberty, and property in a manner that is reckless, irresponsible, dangerous, and negligent to the community at large and to Kessee and, in fact, had a policy of denying citizens of necessary medical attention.

185.    Despite Defendant Board, Sheriff's Office and Gibson's knowing (or reasonably should have known) that this policy was being carried out, Defendants failed to remove the individual Defendants from their positions, to take any disciplinary action, or provide redress for citizens, such as Kessee, who have been injured by such deputies, and most importantly, put an end to the denial of medical care against the community.

186.    The actions of Defendants were negligent, intentional, reckless, willful, and deliberate and showed gross and reckless disregard for Kesee's rights.

187.    Defendants' acts and omissions were a direct and proximate cause of the harm to Kessee and his injuries.

188.    The actions of Defendants Andrews, Knapp, Barr, Shifflett, Scott and Rickert were done willfully, maliciously, unlawfully, and with callous and reckless indifference in total disregard of Kessee's safety and continued health. Therefore, Plaintiff is entitled to compensatory and punitive damages along with her attorney's fees.

## COUNT I
## NEGLIGENCE

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

189.   Defendant Roberts was negligent and reckless in the medical assessment, diagnosis and treatment administered to Kessee. Defendant's conduct fell below the acceptable standards of medical care and treatment.

190.   At all material times mentioned herein, Defendant Roberts was acting within the scope of his employment and/or authority as employee, agent and/or servant for Defendant Emergency Services.

191.   Defendant Holbrook was negligent and reckless in the medical assessment, diagnosis and treatment administered to Kessee. Defendant's conduct fell below the acceptable standards of medical care and treatment.

192.   At all material times mentioned herein, Defendant Holbrook was acting within the scope of his employment and/or authority as employee, agent and/or servant for Defendant Emergency Services.

193.   In the alternative, Defendants Roberts and/or Holbrook were acting within the scope of their employment and/or authority as employees, agents and/or servants for Defendant Norman Regional.

194.   Defendant Rickert was negligent and reckless in the medical assessment, diagnosis and treatment administered to Kessee. Defendant's conduct fell below the acceptable standards of medical care and treatment.

195.   At all material times mentioned herein, Defendant Rickert was acting within the scope of his employment and/or authority as employee, agent and/or servant for Defendant Turn Key.

196.   The injuries and damages sustained by Kessee, more particularly described below, were produced in a natural and continuous sequence from and as a foreseeable result of the Defendants' violation of the above described independent duties of ordinary care for the safety of the Kessee.

31

## COUNT II
## NEGLIGENT HIRING, RETENTION, TRAINING, SUPERVISION

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

197.    Defendant Emergency Services was negligent in failing to hire and employ competent medical personnel, including Defendants Roberts and Holbrook.

198.    Defendant Emergency Services knew or should have known of their employees' careless, recklessness and incompetence.

199.    Defendant Emergency Services negligently failed to train and supervise their employees on how to assess, diagnose and treat patients like Kessee.

200.    Defendant Turn Key was negligent in failing to hire and employ competent medical personnel, including Defendant Rickert.

201.    Defendant Turn Key knew or should have known of their employee's careless, recklessness and incompetence.

202.    Defendant Turn Key negligently failed to train and supervise their employee on how to assess, diagnose and treat patients like Kessee.

203.    The injuries and damages sustained by Kessee, more particularly described below, were produced in a natural and continuous sequence from and as a foreseeable result of the Defendants' violation of the above described independent duties of ordinary care for the safety of the Kessee.

## COUNT III
## CORPORATE LIABILITY: NEGLIGENT CREDENTIALING

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

204.    Defendant Norman Regional had a duty to use ordinary care to take reasonable measures to avoid granting hospital privileges to a careless, reckless or incompetent doctor.

205.   Defendant Norman Regional knew or should have known in the exercise of ordinary care that Dr. Steven M. Roberts was careless, reckless and incompetent.

206.   Defendant Norman Regional failed in its duty to take steps to monitor, discipline and/or revoke hospital privileges to Dr. Steven M. Roberts.

207.   The injuries and damages sustained by Kessee, more particularly described below, were produced in a natural and continuous sequence from and as a foreseeable result of the Defendant's violation of the above described independent duties of ordinary care for the safety of the Kessee.

**COUNT IV**
**USE OF EXCESSIVE FORCE**
**IN VIOLATION OF 42 U.S.C. § 1983**

Plaintiffs incorporate all previous allegations and statements and further allege as follows:

208.   Under the Fourth Amendment of the United States, every person in the United States of America has the right to be secure against unreasonable seizures of their person, and 42 U.S.C. § 1983 prevents individuals from acting in a government capacity or under color of law from unlawful deprivation of those rights.

209.   Defendants Canaan and Brown's conduct on January 16, 2018, specifically, dragging an drug overdosing, physically ill and/or mentally ill person across a parking lot, in an attempt to affect an misdemeanor trespassing arrest, where the individual was not dangerous and posed no threat of physical harm to Defendants Canaan or Brown, or others, constitutes excessive force and is a deprivation of Kessee's rights secured under the U.S. Constitution.

210.   A reasonable law enforcement officer would know that the use of excessive force under these circumstances is a violation of constitutionally guaranteed rights and that a citizen's rights not to be subjected to such excessive force was clearly secured and established at the time. See *Graham v.*

*Connor,* 490 U.S. 386, 397 (1989); *Buck v. City of Albuquerque,* 549 F.3d 1269, 1290 (10th Cir. 2008).

211.   At the time of the actions and/or omissions of Defendants Canaan and Brown, 22 O.S. § 34.1 defined "excessive force" as "force which exceeds the degree of physical force permitted by law or the policies and guidelines of the law enforcement entity."

212.   It is not reasonable to drag an individual across pavement and push him face down into the pavement, when that individual does not pose an immediate threat to an officer or others. See *Buck v. City of Albuquerque, 549 F.3d 1269, 1290 (10th Cir. 2008).*

213.   Defendants Canaan and Brown had a duty to refrain from violating Kessee's constitutional rights.

214.   Any reasonable law enforcement officer would have been aware that the conduct of Defendants Canaan and Brown, as described herein, would violate Kessee's constitutional rights.

215.   The force that Defendants Canaan and Brown used was excessive and unnecessary under the totality of the circumstances.

216.   The excessive force used by Defendants Canaan and Brown upon Kessee was not justified or privileged under clearly established law.

217.   No legitimate law enforcement objective was accomplished by the degree of such force utilized by Defendants Canaan and Brown.

218.   Defendants Canaan and Brown's use of force was objectively unreasonable, as well as intentional, willful, wanton, and in gross and reckless and negligent disregard of Kessee's rights under the Fourth Amendment of the United States Constitution.

219.   The use of force by Defendants Canaan and Brown against Kessee posed a substantial risk of causing death or serious bodily harm that was known to Defendants Canaan and Brown at the time and did in fact cause great bodily harm.

220.    The above-described conduct of Defendants Canaan and Brown was a direct and proximate cause

of the deprivation of Kessee's clearly established Fourth Amendment rights, as well as the resulting

injuries, and damages described below.

221.    Defendants Canaan and Brown, under color of law, unjustifiably used excessive force, and thus

violated Kessee's constitutional rights and is therefore, "liable...in an action at law, suit in equity, or

other proper proceeding for redress...," as per 42. U.S.C. § 1983.

**COUNT V**
**DELIBERATELY INDIFFIRENT POLICIES, PRACTICES AND CUSTOMS, AND**
**DELIBERATELY INDIFFERENT TRAINING AND SUPERVISION**
**IN VIOLATION OF 42 U.S.C. § 1983**

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

222.    Defendant Norman, Norman PD, and Humphrey were aware that pursuant to 22 O.S. § 34.1

"[e]ach law enforcement entity which employs any peace officer shall adopt policies and guidelines

concerning the use of force by peace officers which shall be complied with by peace officers in

carrying out the duties of such officers within the jurisdiction of the law enforcement entity."

223.    The above-described conduct reflects an established policy, practice, custom, or decision,

officially adopted or informally accepted, ratified or condoned by Norman, Norman PD, and

Humphrey, and its officials and employees, that consists of dispatching officers to situations

involving individuals with serious, life-threatening drug overdose, physical illness and/or mental

health crisis without proper training and supervision as to how encounter and communicate with

those citizens and avoid unnecessary and unreasonable use of force.

224.    During all times relevant hereto, there were no guidelines, or wholly inadequate guidelines, in

place as to the standard of care specific to detainee/arrestee's physical and mental health.  It is

common knowledge that drug overdose, physical illness and/or mental illness is prevalent in citizens

35

who encounter police and it is vital that police departments have policies in place establishing a constitutionally permissible standard of care for officers to follow in order to address this crisis.

225.    It is clearly established law that Defendant Norman, Norman PD, and Humphrey must train and supervise sheriff's deputies and other law enforcement personnel about proper procedures for arrests and the reasonable use of force, including, but not limited to, excessive force, to reduce the pervasive and unreasonable risk of grave constitutional injury.

226.    Defendant Norman, Norman PD, and Humphrey has an affirmative duty to take action to properly train and supervise its employees or agents and prevent their unlawful actions.

227.    Defendant Norman, Norman PD, and Humphrey failed to properly train and supervise its employees or agents in a manner and to an extent that amounts to deliberate indifference. Defendants Canaan and Brown engaged in the above-described conduct pursuant to this policy, practice, custom, or decision.

228.    Defendant Humphrey was the official policymaker and final decision-maker for Defendant Norman and Norman PD in the area of law enforcement.

229.    Under information and belief, Defendant Norman, Norman PD, and Humphrey had a policy, custom, and procedure of not ensuring that officers like Defendants Brown and Canaan were appropriately and adequately trained as to when and under what circumstances to effectuate an arrest and under what circumstances to use force.

230.    Under information and belief, Defendant Norman, Norman PD, and Humphrey had a policy, custom, and procedure of not ensuring that officers like Defendants Brown and Canaan were appropriately and adequately trained as to when and under what circumstances to obtain medical care for citizens who Defendants would foreseeably encounter.

231.   Upon information and belief, Defendant Norman, Norman PD, and Humphrey, acting through its subordinate law enforcement officers, had a persistent, widespread practice of depriving citizens of their constitutional rights, that it was sufficiently common and well established as to constitute municipal policy or custom.

232.   Upon information and belief, these customs or policies of unconstitutional conduct, as shown by the acts and omissions of other subordinate law enforcement officers, permitted or condoned actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of such conduct.

233.   Defendant Norman, Norman PD, and Humphrey understood that police officers, such as Defendants Canaan and Brown:

   a.   could and would exceed constitutional limitations on the use of force;

   b.   that the use of force may arise under circumstances that constitute a usual and recurring situation with which officers such as Defendants Canaan and Brown must manage;

   c.   that providing inadequate training or failing to enforce existing policies under such circumstances demonstrates deliberate indifference on the part of the Defendants toward persons with whom Defendants Cannaan and Brown would come into contact;

   d.   and that failing to provide such training or to enforce policies and procedures to ensure that Defendants Canaan and Brown followed such training would be a direct causal link between the constitutional deprivation to which citizens, such as Kessee, would be exposed—in other words, when Defendants sent Canaan and Brown out in the public domain, it was obvious that failing to adequately train them or enforce policies and procedures would equate deliberate indifference to the rights of the public with whom they came into contact.

234.    The above-described policies and customs of Defendant Norman, Norman PD, and Humphrey permitted or condoned the violation of Kessee's rights, demonstrated deliberate indifference to the constitutional rights of the persons within the City and were the cause of the injuries and damages suffered by Kessee.

235.    Defendants also knew that absent the adoption of specific and/or adequate policies, procedures, and tactics governing law enforcement encounters with citizens like Kessee, and absent training of law enforcement officers in such policies, procedures, and tactics, it was highly predictable that such failure to train would lead to law enforcement officers' violation of the Fourth Amendment rights of citizens, and could likely result in the otherwise avoidable injury of such citizens.

236.    Inadequate training and supervision of Defendants Brown and Canaan about the proper procedures to be used in making an arrest, the use of force, including, but not limited to, excessive force, was so likely to result in grave constitutional injury to citizens that the failure to provide adequate training and supervision to Defendants Brown and Canaan in these areas constituted a deliberate indifference to and acquiescence in such injury to Kessee.

237.    Defendants Canaan and Brown received no form of discipline or reprimand from Defendant Norman, Norman PD, and Humphrey for their above-described use of excessive force against Kessee.

238.    Defendants ratified the conduct of Defendant Canaan and Brown in concluding that the conduct was consistent with the policies, procedures, and training of the Defendant Norman, Norman PD, and/or Humphrey.

239.    Defendants Canaan and Brown's actions and/or inactions stem from the execution of a government policy, custom, or official decision of indifference as to the protection of citizens' constitutional rights and his actions can fairly be said to represent such a policy and custom.

38

240.    Defendant Humphrey's failure to ensure and accomplish or enforce such proper training caused Defendants Canaan and Brown to effectuate an inappropriate/unlawful arrest and to use excessive force in violation of the U.S. Constitution, proximately and directly causing serious injury to Kessee.

## COUNT VI
## NEGLIGENCE

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

241.    Defendants Canaan and Brown had a duty to act reasonably when encountering citizens, in an effort to prevent harm to Kessee and others.

242.    On January 16, 2018, Defendants Canaan and Brown acted unreasonably and negligently when he encountered Kessee.

243.    As a result of Defendants Canaan and Brown's choices and actions on January 16, 2018, Kessee suffered physical and mental injuries and damages.

244.    Defendants Canaan and Brown were acting within the scope of their employment at all relevant times, such that Defendants Norman and/or Norman PD is liable for the damages caused to Kessee under the Oklahoma Governmental Tort Claims Act.

245.    In the alternative, Defendants Canaan and Brown were acting outside the scope of their employment at all relevant times, such that Defendants Canaan and Brown are personally liable for the damages caused to Kessee.

246.    The injuries and damages sustained by Kessee, more particularly described below, were produced in a natural and continuous sequence from and as a foreseeable result of the Defendant's violation of the above described independent duties of ordinary care for the safety of the Kessee.

## COUNT VII
## ASSAULT AND BATTERY

Plaintiffs incorporate all previous allegations and statements and further allege as follows:

39

247.    Defendants Canaan and Brown without the consent of Kessee, acted either with the intent of

making a harmful/offensive contact with the person of Kessee, or with the intent of putting Kessee

in apprehension of such a contact.

248.    Defendants Canaan and Brown's act resulted in a harmful/offensive contact with Kessee.

249.    Defendants Canaan and Brown were acting in the scope of their employment, such that

Defendants Norman and/or Norman PD are liable under the Oklahoma Governmental Tort Claims

Act.

250.    In the alternative, Defendants Canaan and Brown were acting outside the scope of their

employment, such that Defendants Canaan and Brown are personally liable.

251.    The injuries and damages sustained by Kessee, more particularly described below, were

produced in a natural and continuous sequence from and as a foreseeable result of the Defendant's

violation of the above described independent duties of ordinary care for the safety of the Kessee.

### COUNT VIII – DELIBERATE DISREGARD OF SERIOUS MEDICAL NEEDS IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS – 42 U.S.C. § 1983

Plaintiffs incorporate all previous allegations and statements and further allege as follows:

252.    Under the Eighth Amendment of the United States Constitution, inmates held in American

prisons have a fundamental right to prison conditions that do not constitute "cruel and unusual

punishment."

253.    An arrestee and pretrial detainee, such as Kessee, who has not been convicted of a crime is at

least "entitled to the degree of protection against denial of medical attention which applies to

convicted inmates" under the Eighth Amendment. *Martinez v. Begg*, 563 F.3d 1082, 1088 (10th Cir.

2009) (quoting *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985); *Howard v.

Dickerson*, 34 F.3d 978, 981 (10th Cir. 1994)).

254.     The Tenth Circuit Court of Appeals applies the Eighth Amendment's "deliberate indifference"
standard to determine whether a pretrial detainee has been deprived of medical attention to such a
degree that his or her constitutional rights are violated.  See *Id.*

255.     The total failure of Defendants Canaan, Brown, Andrews, Knapp, Shifflett, Scott and Rickert to
provide to Kessee with medical assistance given Defendants clear and admitted awareness of the
severity of his symptoms during his arrest and detention violated his fundamental rights guaranteed
under the U.S. Constitution to be free from deprivation of medical care constituting cruel and unusual
punishment.

256.     It was apparent to all Defendants who came into contact with Kessee from the period of his arrest
until his death that he was either *very* severely intoxicated, or suffering an extremely severe physical
and/or mental health crisis.

257.     The severity of Kessee's symptoms of drug overdose, physical illness and/or mental health crisis
at the time he was first encountered by police, to when he was booked into F. Dewayne Beggs
Detention Center and up to the point he was found unresponsive, and likely dead, were so great in
magnitude that no reasonable person would not have recognized the fact that he required treatment
by a medical professional or at the very least additional screening to determine whether such medical
assistance might be necessary.

258.     Defendants Canaan, Brown, Andrews, Knapp, Shifflett, Scott and Rickert, and other jail
employees were all personally present during Kessee's arrest and/or book-in process and failed to
intervene to prevent or remedy Defendants' failure to provide a proper health evaluation, proper
classification of Kesee's severe drug overdose, physical illness and/or mental health crisis, and
adequate or timely medical attention.

41

259.    Despite Defendant Canaan, Brown, Andrews, Knapp, Shifflett, Scott and Rickert' knowledge and awareness as a law enforcement officers, jailers and/or medical professionals with typical signs, symptoms and duration of drug overdose, physical illness and/or mental health crisis associated with the substances that Kessee was alleged to have consumed, Defendants denied repeated requests by Kessee for medical attention.

260.    Defendants Canaan, Brown, Andrews, Knapp, Shifflett, Scott and Rickert knew with substantial certainty that Kessee was experiencing acute drug overdose, physical illness and/or mental health crisis because of Kessee's own statements or because of their personal observations and knowledge of the numerous symptoms that he exhibited.

261.    Despite their awareness of Kesse's heightened risk of injury, suffering, and death, Defendants Canaan, Brown, Andrews, Knapp, Shifflett, Scott and Rickert chose to arrest and detain Kessee without access to medical care and instead of obvious and less burdensome alternatives including (1) walking twenty (20) feet back into Norman Regional to seek medical assistance or (2) taking Kessee to a Mental Health Center for assessment and treatment.

262.    The aforementioned acts and/or omissions of Defendants Canaan, Brown, Andrews, Knapp, Shifflett, Scott and Rickert, in light of their awareness and knowledge of Kessee's condition and serious medical needs, display deliberate indifference to the substantial likelihood that depriving Kessee of medical care would result in his injury and/or death.

263.    The aforementioned acts and/or omissions of Defendants Canaan, Brown, Andrews, Knapp, Shifflett, Scott and Rickert, were a direct and proximate cause of Kessee's avoidable and unnecessary physical pain, severe emotional distress, mental anguish, loss of life, and all other damages alleged herein.

264.     The aforementioned acts and/or omissions of Defendants Canaan, Brown, Andrews, Knapp,

Shifflett, Scott and Rickert, were the direct and proximate cause of damages suffered by Kessee's

heirs, including, but not limited to, pecuniary loss (including lost wages), grief, loss of

companionship, pain and suffering.

## COUNT IX – DELIBERATELY INDIFFIRENT POLICIES, PRACTICES AND CUSTOMS, AND DELIBERATELY INDIFFERENT TRAINING AND SUPERVISION IN VIOLATION OF 42 U.S.C. § 1983

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

265.     During all times relevant hereto, there were no guidelines, or wholly inadequate guidelines, in

place as to the standard of care specific to detainees/arrestees' physical and mental health.  It is

common knowledge that drug overdose, physical illness and/or mental illness is prevalent in citizens

who encounter police officers and it is vital that police departments have policies in place establishing

a constitutionally permissible standard of care for officers to follow in order to address this crisis.

266.     Defendant Norman and/or Norman PD delegates final authority to establish municipal policy

regarding detainee health and safety to Defendant Humphrey.

267.     Defendant Humphrey, acting on behalf of Defendant Norman and/or Norman PD, as

decisionmaker with final authority to establish municipal policy regarding arrestee/detainee's health

and safety, deprived Kessee of rights and freedoms secured by the Fourteenth and Eighth

Amendments of the U.S. Constitution—specifically freedom from deprivation of medical care

constituting cruel and unusual punishment.

268.     The policies, practices and customs, promulgated, created, implemented and/or utilized by

Defendant Humphrey represent the official policies and/or customs of Defendant Norman and/or

Norman PD with regards to detainee/arrestee health and safety.

269.     Such policies, practices, and/or customs include, but are not limited to:

43

a. The failure to promulgate, implement, or enforce adequate policies responsive to the serious medical needs of arrestees/detainees like Kessee;

b. Inadequate medical triage screening that fails to identify arrestees/detainees with serious medical or mental health needs;

c. Severe limitation or failure to utilize off-site medical, mental health, and diagnostic service providers, even in emergent situations;

d. Untimely medical and mental health examinations and treatment;

e. Untimely response to emergent medical or mental health crises;

f. Detention of severely intoxicated, physically ill or mentally unstable arrestees/detainees without medical attention.

270. The aforementioned policies, practices and/or customs promulgated, created and/or utilized by Defendant Humphrey, and thereby the official policies, practices and/or customs of Defendant Norman and/or Norman PD, were the direct and proximate cause of Kessee's deprivation of medical care which resulted in his death.

271. The aforementioned policies, practices and/or customs promulgated, created and/or utilized by Defendant Humphrey, and thereby the official policies, practices and/or customs of Defendant Norman and/or Norman PD, were the direct and proximate cause of Kessee's avoidable and unnecessary physical pain, severe emotional distress, mental anguish, loss of his life, and all other damages alleged herein.

272. The aforementioned policies, practices and/or customs promulgated, created and/or utilized by Defendant Humphrey, and thereby the official policies, practices and/or customs of Defendant Norman and/or Norman PD, were the direct and proximate cause of damages suffered by Kessee's

heirs, including, but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

273.    Defendants Norman, Norman PD and/or Humphrey also failed to adequately train and/or supervise subordinates, including Defendants Canaan and Brown, in relation to tasks they must perform pursuant to those policies, practices and/or customs outlined above.

274.    As noted previously, Norman and/or Norman PD delegated policy-making authority to Defendant Humphrey and therefore the training and supervision policies and/or customs adopted by Defendant Humphrey are the official municipal policies and/or customs of Defendant Norman and/or Norman PD.

275.    Defendant Humphrey knew or should have known that Norman PD, including Defendants Canaan and Brown, frequently encounters, arrests and/or detains individuals experiencing severe intoxication, physical illness and/or mental health crises requiring emergency medical assistance.

276.    Defendant Humphrey knew or should have known that Norman PD, including Defendants Canaan and Brown, frequently encounters, arrests and/or detains individuals at heightened risk of injury or death.

277.    Defendant Humphrey knew or should have known that police officers, under his exercise of control including Defendants Canaan and Brown, require training and supervision in order to adequately identify, respond to, and detain individuals exhibiting obvious and apparent symptoms of severe physical and/or mental health crisis, and/or dangerously severe degrees of intoxication.

278.    Defendant Humphrey knew or should have known that his failure to adequately train and/or supervise police officers under his exercise of control, including Defendants Canaan and Brown, posed a substantial and excessive risk to the health and safety of Kessee and would inevitably result in unconstitutional deprivation of medical care of the type that Kessee suffered.

279.   Defendant Humphrey failed to adequately train and/or supervise police officers, including Defendants Canaan and Brown in how to identify, respond to, and detain individuals exhibiting obvious and apparent symptoms of severe physical illness and/or mental health crisis, and/or dangerously severe degrees of intoxication.

280.   Defendant Humphrey's failure to train and/or supervise police officers, including Defendants Canaan and Brown, exhibited deliberate disregard for the known and obvious excessive risk such policy and/or posed to Kessee's health and safety.

281.   Defendants Humprey's failure to train and/or supervise police officers, including Defendants Canaan and Brown, in reckless disregard to inevitable constitutional violations that would likely result constitutes the official policy and/or custom of Defendant Norman and/or Norman PD.

282.   Defendants Humprey's failure to train and/or supervise subordinate police officers, and thereby the official policies and/or custom of Defendant Norman and/or Norman PD, was the direct and proximate cause of Kessee's deprivation of medical care which resulted in his death.

283.   Defendants Humprey's failure to train and/or supervise subordinate police officers, and thereby the official policies and/or custom of Defendant Norman and/or Norman PD, was the direct and proximate cause of Kessee's avoidable and unnecessary physical pain, severe emotional distress, mental anguish, loss of his life, and all other damages alleged herein.

284.   Defendants Humprey's failure to train and/or supervise subordinate police officers, and thereby the official policies and/or custom of Defendant Norman and/or Norman PD, was the direct and proximate cause of damages suffered by Kesee's heirs, including, but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

## COUNT X – DELIBERATELY INDIFFIRENT POLICIES, PRACTICES AND CUSTOMS, AND DELIBERATELY INDIFFERENT TRAINING AND SUPERVISION IN VIOLATION OF 42 U.S.C. § 1983

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

285.    During all times relevant hereto, there were no guidelines, or wholly inadequate guidelines, in place as to the standard of care specific to detainees/arrestees' physical and mental health. It is common knowledge that drug overdose, physical illness and/or mental illness is prevalent in citizens who encounter jailers and it is vital that jails have policies in place establishing a constitutionally permissible standard of care for jailers and staff to follow in order to address this crisis.

286.    Defendant Board and/or Sheriff's Office delegates final authority to establish municipal policy regarding detainee health and safety to Defendant Gibson.

287.    Defendant Gibson, acting on behalf of Defendant Board and/or Sheriff's Office, as decisionmaker with final authority to establish municipal policy regarding arrestee/detainee's health and safety, deprived Kessee of rights and freedoms secured by the Fourteenth and Eighth Amendments of the U.S. Constitution—specifically freedom from deprivation of medical care constituting cruel and unusual punishment.

288.    The policies, practices and customs, promulgated, created, implemented and/or utilized by Defendant Gibson represent the official policies and/or customs of Defendant Board and/or Sheriff's Office with regards to detainee/arrestee health and safety.

289.    Such policies, practices, and/or customs include, but are not limited to:

   a.   The failure to promulgate, implement, or enforce adequate policies responsive to the serious medical needs of arrestees/detainees like Kessee;

   b.   Inadequate medical triage screening that fails to identify arrestees/detainees with serious medical or mental health needs;

47

   c. Severe limitation or failure to utilize off-site medical, mental health, and diagnostic service providers, even in emergent situations;

   d. Untimely medical and mental health examinations and treatment;

   e. Untimely response to emergent medical or mental health crises;

   f. Detention of severely intoxicated, physically ill or mentally unstable arrestees/detainees without medical attention.

290. The aforementioned policies, practices and/or customs promulgated, created and/or utilized by Defendant Gibson, and thereby the official policies, practices and/or customs of Defendant Board and/or Sheriff's Office, were the direct and proximate cause of Kessee's deprivation of medical care which resulted in his death.

291. The aforementioned policies, practices and/or customs promulgated, created and/or utilized by Defendant Gibson, and thereby the official policies, practices and/or customs of Defendant Board and/or Sheriff's Office, were the direct and proximate cause of Kessee's avoidable and unnecessary physical pain, severe emotional distress, mental anguish, loss of his life, and all other damages alleged herein.

292. The aforementioned policies, practices and/or customs promulgated, created and/or utilized by Defendant Gibson, and thereby the official policies, practices and/or customs of Defendant Board and/or Sheriff's Office, were the direct and proximate cause of damages suffered by Kessee's heirs, including, but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

293. Defendants Board, Sheriff's Office and/or Gibson also failed to adequately train and/or supervise subordinates, including Defendants Andrews, Knapp, Barr, Shifflett, Scott and/or Rickert, in relation to tasks they must perform pursuant to those policies, practices and/or customs outlined above.

294. As noted previously, Board and/or Sheriff's Office delegated policy-making authority to Defendant Gibson and therefore the training and supervision policies and/or customs adopted by Defendant Gibson are the official municipal policies and/or customs of Defendant Board and/or Sheriff's Office.

295. Defendant Gibson knew or should have known that jailers, including Defendants Andrews, Knapp, Barr, Shifflett, Scott and/or Rickert, frequently encounters, arrests and/or detains individuals experiencing severe intoxication, physical illness and/or mental health crises requiring emergency medical assistance.

296. Defendant Gibson knew or should have known that jailers, including Defendants Andrews, Knapp, Barr, Shifflett, Scott and/or Rickert, frequently encounters, arrests and/or detains individuals at heightened risk of injury or death.

297. Defendant Gibson knew or should have known that jailers, under his exercise of control including Defendants Andrews, Knapp, Barr, Shifflett, Scott and/or Rickert, require training and supervision in order to adequately identify, respond to, and detain individuals exhibiting obvious and apparent symptoms of severe physical and/or mental health crisis, and/or dangerously severe degrees of intoxication.

298. Defendant Gibson knew or should have known that his failure to adequately train and/or supervise jailers under his exercise of control, including Defendants Andrews, Knapp, Barr, Shifflett, Scott and/or Rickert, posed a substantial and excessive risk to the health and safety of Kessee and would inevitably result in unconstitutional deprivation of medical care of the type that Kessee suffered.

299. Defendant Gibson failed to adequately train and/or supervise jailers, including Defendants Andrews, Knapp, Barr, Shifflett, Scott and/or Rickert, in how to identify, respond to, and detain

49

individuals exhibiting obvious and apparent symptoms of severe physical illness and/or mental health crisis, and/or dangerously severe degrees of intoxication.

300.     Defendant Gibson's failure to train and/or supervise jailers, including Defendants Defendants Andrews, Knapp, Barr, Shifflett, Scott and/or Rickert, exhibited deliberate disregard for the known and obvious excessive risk such policy and/or posed to Kessee's health and safety.

301.     Defendants Gibson's failure to train and/or supervise jailers, including Defendants Defendants Andrews, Knapp, Barr, Shifflett, Scott and/or Rickert, in reckless disregard to inevitable constitutional violations that would likely result constitutes the official policy and/or custom of Defendant Board and/or Sheriff's Office.

302.     Defendants Gibson's failure to train and/or supervise subordinate jailers, and thereby the official policies and/or custom of Defendant Board and/or Sheriff's Office, was the direct and proximate cause of Kessee's deprivation of medical care which resulted in his death.

303.     Defendants Gibson's failure to train and/or supervise subordinate jailers, and thereby the official policies and/or custom of Defendant Board and/or Sheriff's Office, was the direct and proximate cause of Kessee's avoidable and unnecessary physical pain, severe emotional distress, mental anguish, loss of his life, and all other damages alleged herein.

304.     Defendants Gibson's failure to train and/or supervise subordinate jailers, and thereby the official policies and/or custom of Defendant Board and/or Sheriff's Office, was the direct and proximate cause of damages suffered by Kesee's heirs, including, but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

## COUNT XI – DELIBERATELY INDIFFIRENT POLICIES, PRACTICES AND CUSTOMS, AND DELIBERATELY INDIFFERENT TRAINING AND SUPERVISION IN VIOLATION OF 42 U.S.C. § 1983

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

305.    During all times relevant hereto, there were no guidelines, or wholly inadequate guidelines, in

place as to the standard of care specific to detainees/arrestees' physical and mental health.   It is

common knowledge that drug overdose, physical illness and/or mental illness is prevalent in citizens

who encounter jail medical personnel and it is vital that jail medical providers have policies in place

establishing a constitutionally permissible standard of care for jail medical personnel to follow in

order to address this crisis.

306.    Defendant Board, Sheriff's Office and/or Gibson delegates final authority to establish municipal

policy regarding detainee health and safety to Defendant Turn Key.

307.    Defendant Turn Key, acting on behalf of Defendant Board, Sheriff's Office and/or Gibson, as

decisionmaker with final authority to establish municipal policy regarding arrestee/detainee's health

and safety, deprived Kessee of rights and freedoms secured by the Fourteenth and Eighth

Amendments of the U.S. Constitution—specifically freedom from deprivation of medical care

constituting cruel and unusual punishment.

308.    The policies, practices and customs, promulgated, created, implemented and/or utilized by

Defendant Turn Key represent the official policies and/or customs of Defendant Board, Gibson

and/or Sheriff's Office with regards to detainee/arrestee health and safety.

309.    Such policies, practices, and/or customs include, but are not limited to:

    a.    The failure to promulgate, implement, or enforce adequate policies responsive to the serious

    medical needs of arrestees/detainees like Kessee;

    b.    Inadequate medical triage screening that fails to identify arrestees/detainees with serious

    medical or mental health needs;

    c.  Severe limitation or failure to utilize off-site medical, mental health, and diagnostic service providers, even in emergent situations;

    d.  Untimely medical and mental health examinations and treatment;

    e.  Untimely response to emergent medical or mental health crises;

    f.  Detention of severely intoxicated, physically ill or mentally unstable arrestees/detainees without medical attention.

310.    The aforementioned policies, practices and/or customs promulgated, created and/or utilized by Defendant Turn Key, and thereby the official policies, practices and/or customs of Defendant Board, Gibson, and/or Sheriff's Office, were the direct and proximate cause of Kessee's deprivation of medical care which resulted in his death.

311.    The aforementioned policies, practices and/or customs promulgated, created and/or utilized by Defendant Turn Key, and thereby the official policies, practices and/or customs of Defendant Board, Gibson, and/or Sheriff's Office, were the direct and proximate cause of Kessee's avoidable and unnecessary physical pain, severe emotional distress, mental anguish, loss of his life, and all other damages alleged herein.

312.    The aforementioned policies, practices and/or customs promulgated, created and/or utilized by Defendant Turn Key, and thereby the official policies, practices and/or customs of Defendant Board, Gibson, and/or Sheriff's Office, were the direct and proximate cause of damages suffered by Kessee's heirs, including, but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

313.    Defendants Turn Key also failed to adequately train and/or supervise subordinates, including Defendant Andrews, Knapp, Barr, Shifflett, Scott and/or Rickert, in relation to tasks they must perform pursuant to those policies, practices and/or customs outlined above.

314.    As noted previously, Board, Gibson and/or Sheriff's Office delegated policy-making authority to Defendant Turn Key and therefore the training and supervision policies and/or customs adopted by Defendant Turn Key are the official municipal policies and/or customs of Defendant Board, Gibson, and/or Sheriff's Office.

315.    Defendant Turn Key knew or should have known that jailers and medical personnel, including Defendants frequently encounters, arrests and/or detains individuals experiencing severe intoxication, physical illness and/or mental health crises requiring emergency medical assistance.

316.    Defendant Turn Key knew or should have known that jailers and medical personnel, including Defendants Andrews, Knapp, Barr, Shifflett, Scott and/or Rickert, frequently encounter, arrest and/or detain individuals at heightened risk of injury or death.

317.    Defendant Turn Key knew or should have known that jailers and medical personnel, under its exercise of control including Defendants Andrews, Knapp, Barr, Shifflett, Scott and/or Rickert, require training and supervision in order to adequately identify, respond to, and detain individuals exhibiting obvious and apparent symptoms of severe physical and/or mental health crisis, and/or dangerously severe degrees of intoxication.

318.    Defendant Turn Key knew or should have known that his failure to adequately train and/or supervise jailers and medical personnel under its exercise of control, including Defendants Andrews, Knapp, Barr, Shifflett, Scott and/or Rickert, posed a substantial and excessive risk to the health and safety of Kessee and would inevitably result in unconstitutional deprivation of medical care of the type that Kessee suffered.

319.    Defendant Turn Key failed to adequately train and/or supervise jailers and medical personnel, including Defendants Andrews, Knapp, Barr, Shifflett, Scott and/or Rickert, in how to identify,

respond to, and detain individuals exhibiting obvious and apparent symptoms of severe physical illness and/or mental health crisis, and/or dangerously severe degrees of intoxication.

320. Defendant Turn Key's failure to train and/or supervise jailers and medical personnel, including Defendants Defendants Andrews, Knapp, Barr, Shifflett, Scott and/or Rickert, exhibited deliberate disregard for the known and obvious excessive risk such policy and/or posed to Kessee's health and safety.

321. Defendants Turn Key's failure to train and/or supervise jailers and medical personnel, including Defendants Defendants Andrews, Knapp, Barr, Shifflett, Scott and/or Rickert, in reckless disregard to inevitable constitutional violations that would likely result constitutes the official policy and/or custom of Defendant Board, Gibson and/or Sheriff's Office.

322. Defendants Turn Key's failure to train and/or supervise subordinate jailers and medical personnel, and thereby the official policies and/or custom of Defendant Board, Gibson and/or Sheriff's Office, was the direct and proximate cause of Kessee's deprivation of medical care which resulted in his death.

323. Defendants Turn Key's failure to train and/or supervise subordinate jailers and medical personnel, and thereby the official policies and/or custom of Defendant Board, Gibson and/or Sheriff's Office, was the direct and proximate cause of Kessee's avoidable and unnecessary physical pain, severe emotional distress, mental anguish, loss of his life, and all other damages alleged herein.

324. Defendants Turn Key's failure to train and/or supervise subordinate jailers and medical personnel, and thereby the official policies and/or custom of Defendant Board, Gibson and/or Sheriff's Office, was the direct and proximate cause of damages suffered by Kesee's heirs, including, but not limited to, pecuniary loss (including lost wages), grief, loss of companionship, pain and suffering.

## CAUSATION OF INJURIES AND DAMAGES

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

325. The injuries and damages sustained by Kessee, were produced in a natural and continuous sequence from Defendants' violation of one or more of the above described independent constitutional duties.

326. The injuries and damages sustained by Kessee were a probable consequence from Defendants' violation of one or more of the above described independent duties.

327. Defendants should have foreseen and anticipated that a violation of one or more of the above-described independent duties would constitute an appreciable risk of harm to others, including Kessee.

328. If Defendants had not violated one or more of the above-described independent duties, then Kessee's injuries, death, and other damages would not have occurred.

## COMPENSATORY DAMAGES SUSTAINED BY PLAINTIFF

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

329. The injuries and damages sustained by Kessee as a result of Defendants' violations include but are not limited to the following:

    a. Kessee's physical pain and suffering, past and future;

    b. Kessee's mental pain and suffering, past and future;

    c. Kessee's age;

    d. Kessee' physical condition immediately before and after the accident;

    e. The nature and extent of Kessee's injuries;

    f. Whether the injuries are permanent;

    g. The physical impairment;

    h. The disfigurement;

       i.   Loss of [earnings/time];

       j.   Impairment of earning capacity;

       k.   The reasonable expenses of the necessary medical care, treatment, and services, past and

          future.

330. The Plaintiff's injuries and damages include all wrongful death damages pursuant to 12 O.S. § 1053,

    including but not limited to: (1) medical and burial expenses, (2) loss of consortium and grief, (3)

    mental pain and anguish of the decedent, (4) pecuniary loss to survivors, and (5) grief and loss of

    companionship to children and parents of the decedent.

## AMOUNT OF DAMAGES

331. The Plaintiff's injuries and damages are in excess of the amount required for diversity jurisdiction

    under 28 U.S.C. 1332 (currently $75,000.00), plus attorney fees, interest, costs and all such other and

    further relief for which should be awarded as judgment against Defendants in an amount to fully and

    fairly compensate Plaintiff for each and every element of damages that has been suffered.

## PUNITIVE DAMAGES

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

332. Plaintiff is entitled to punitive damages on claims brought against individual Defendants pursuant

    to 42 U.S.C. § 1983 as Defendants' conduct, acts, and omissions alleged herein constitute reckless

    or callous indifference to Kessee's federally protected rights.

333. Plaintiff is entitled to punitive damages on claims brought against individual Defendants on state

    law claims where said individual Defendants were acting outside the scope of their employment, as

    Defendants' conduct, acts, and omissions alleged herein constitute reckless or callous indifference to

    Kessee's protected rights.

334. Plaintiff is entitled to punitive damages on all other claims pursuant to 12 O.S. § 1053.

## DEMAND FOR JURY TRIAL

335. The Plaintiff demands a jury trial for all issues of fact presented by this action.

## RESERVATION OF ADDITIONAL CLAIMS

336. The Plaintiff reserves the right to plead further upon completion of discovery to state additional

claims and to name additional parties to this action.

WHEREFORE, Plaintiff, Patrica Thompson, as Personal Representative of the Estate of

Marconia Lynn Kessee, prays for judgment against Defendants in a sum excess of the amount required

for diversity jurisdiction under 28 U.S.C. § 1332 (currently $75,000.00) plus interest, attorneys fee, costs,

and all such other relief as to which Plaintiff may be entitled.

Respectfully submitted,

LAIRD, HAMMONS, LAIRD, PLLC

Chris Hammons, OBA # 20233
Jason M. Hicks, OBA# 22176
1332 S.W. 89th Street
Oklahoma City, OK 73159
Telephone:    (405) 703-4567
Facsimile:    (405) 703-4061
E-mail: chris@lhllaw.com
          jason@lhllaw.com
ATTORNEYS FOR PLAINTIFF

**ATTORNEY LIEN CLAIMED**

57