IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PATRICIA THOMPSON, as Personal Representative of the Estate of MARCONIA LYNN KESSEE, <br><br> Plaintiff, <br><br> vs. <br><br> NORMAN REGIONAL HOSPITAL AUTHORITY d/b/a NORMAN REGIONAL HOSPITAL, a public trust, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) Case No.: CIV-19-113-SLP ) ) ) ) ) ) ) |

## PLAINTIFF'S MOTION TO STRIKE ERRATA SHEET OF WILLIAM COOPER

Dr. William Cooper – and really Defendant Turn Key Health Clinics, LLC ("Turn Key") – wants a "do-over" for sworn answers given during his deposition as the corporate representative of Turn Key. Dr. Cooper was deposed and then submitted an Errata Sheet and Jurat (the "Errata Sheet") with substantially and materially changed testimony. Plaintiff, Patricia Thompson, respectfully moves this Court to strike the material alterations in the Errata Sheet of Dr. William Cooper, which was provided to Plaintiff after Dr. Cooper's February 2021 deposition. In support of this Motion, Plaintiff shows the Court as follows:

### INTRODUCTION

Plaintiff deposed Dr. Cooper, as the designated corporate representative of Turn Key, in February 2021. Plaintiff received an errata sheet for that deposition. This Errata Sheet contains 8 attempted corrections which materially and impermissibly change and contradict Dr. Cooper's deposition testimony. **Ex. 1 - Errata Sheet and Ex. 2 – Cooper Dep. With Altered Portions**

**Highlighted.** As explained in greater detail below, the Errata Sheet changes sworn deposition testimony to add in whole paragraphs of new language and change the entire meaning of certain responses given at Dr. Cooper's deposition in hopes of avoiding clear admissions by Defendant at the summary judgment stage and to provide a false platform for Defendant's experts to base their opinions on. These material changes go beyond the bounds of Rule 30(e) of the Federal Rules of Civil Procedure and have the same effect as sham affidavits in light of the fact that Defendant is expected to file Motions for Summary Judgment which will pertain to the issues upon which Defendant seeks to change its testimony. These changes should not be allowed and should be stricken by the Court.

## ARGUMENT AND AUTHORITY

### I. A witness cannot materially change sworn deposition testimony by creating new testimony and attempting to eliminate factual issues in an errata sheet.

Rule 30 of the Federal Rules of Civil Procedure gives deponents a chance to review a deposition transcript and make certain changes:

> On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes **and the reasons for making them.**

Fed. R. Civ. P. 30(e) (emphasis added).

The Tenth Circuit has "adopted a restrictive view of the changes that can be made pursuant to Rule 30(e), and take[s] a dim view of substantive alteration of deposition testimony." *BancFrist ex re. Estate of M.J.H. v. Ford Motor Co.*, 422 Fed. Appx. 663, 666 (10th Cir. April 18, 2011)(unpublished) Material alterations to deposition testimony are not allowed. *Havens v. Johnson*,

2

783 F.3d 776, 780 n. 3(10th Cir. 2015) (holding a district court's consideration of a deposition amendment "would have been improper"); *Burns v. Bd. of Cnty. Comm'rs of Jackson Cty.,* 330 F.3d 1275, 1281 (10th Cir. 2003) (rejecting a deponent's attempt to rewrite portions of his deposition through an errata sheet). This is because depositions are not take home examinations:

> We do not condone counsel's allowing for material changes to deposition testimony and certainly do not approve of the use of such altered testimony that is controverted by the original testimony…The purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, i.e., he reported "yes" but I said "no," or a formal error, i.e., he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order. The Rule cannot be interpreted to allow one to alter what was said under oath. **If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.**

*Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n. 5 (10th Cir. 2002) (emphasis added) (quoting *Greenway v. Int'l Paper Co.,* 144 F.R.D. 322, 325 (W.D. La. 1992)); *accord Jackson v. Teamsters Loc. Union*, 922 F.R.D. 179, 185 (D.D.C. 2015) ("the clear majority approves of granting motions to strike contradictory or material errata sheets[ ] unless supported by convincing explanations.") (surveying case law from the First, Second, Third, Sixth, Seventh, Ninth, and Tenth Circuits); *BancFirst*, 422 Fed. Appx. at 666 (10th Cir. April 18, 2011)(unpublished); *Thorn v. Sundstrand Aerospace Corp.,* 207 F.3d 383, 389 (7th Cir. 2000) ("[A] change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'"); *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1281 (11th Cir. 2010) (holding that an errata sheet that made material changes to deposition testimony was improper); *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1225-

3

26 (9th Cir. 2005) ("We agree with our sister circuits' interpretation of FRCP 30(e) on this point and hold that Rule 30(e) is to be used for corrective, and not contradictory, changes.")

An attempt to change sworn testimony is more commonly seen with a sham affidavit which, unsurprisingly, typically appears at the summary judgment stage. *See generally*, 10B Fed. Prac. & Proc. Civ. § 2738 (3d ed.). If an affidavit contradicts the witness' prior sworn testimony to create a sham fact issue, the affidavit must be disregarded by the court. *Knitter v. Corvias Military Living, LLC,* 758 F.3d 1214, 1218 n.3 (10th Cir. 2014). Revising sworn testimony in an errata sheet has the same effect. *Burns*, 330 F.3d at 1281. In *Burns*, the Tenth Circuit rejected any distinction between a sham affidavit and a materially revised errata sheet. *Id.* Accordingly, the Tenth Circuit held in *Burns* that courts should apply the same factors to determine whether an errata sheet creates sham factual issues (or attempts to eliminate factual issues) as those used for sham affidavits. *Id.* at 1282. Generally, such changes in errata sheets should be disregarded if (1) the witness was cross-examined during the earlier testimony; (2) the witness had access to the pertinent evidence at the time of the prior testimony and the new testimony is not based on newly discovered evidence; and (3) the witness is not attempting to explain or correct some confusion reflected in the prior testimony. *Id.* (citing *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)).

## II. The Errata Sheet impermissibly alters Defendant Rickert's deposition testimony.

Defendant's Errata sheet materially changes deposition testimony in contravention of Rule 30 in an effort to rehabilitate the Defendant's testimony, provide desired testimony for expert witnesses, and eliminate factual issues as the case approaches the summary judgment stage

under the factors as set forth in *Burns* and *Franks*. As an initial matter, the alterations in the Errata Sheet are procedurally inadequate and should be stricken on that basis alone. The Federal Rules require a deponent who wishes to make changes to a deposition transcript to "sign a statement listing the changes **and the reasons for making them**." Fed. R. Civ. P. 30(e) (emphasis added). Here, the Errata Sheet offers only conclusory statements as the reasons for making the changes which are procedurally defective. *Jackson*, 310 F.R.D. at 185 ("To justify their revisions, Plaintiffs rely, almost exclusively, on the following one-word explanations: 'clarification,' 'correction,' 'completion,' 'mistake,' 'error,' and 'incomplete.'") The reason given by Dr. Cooper/Turn Key for the changes is essentially a one-word reasons: "for clarification." **Ex. 1 – Errata Sheet.** In *Jackson*, the D.C. Circuit found such simplistic reasons as those given here "do little but state the obvious; the Court presumes Plaintiff would not submit errata sheets but for *some type* of mistake or error…What is missing is any thoughtful or clear articulation of the basis for what constitute significant alterations." *Jackson*, 310 F.R.D. at 185 (emphasis in original). "[A]ll of the circuits to consider the issue would uphold the striking of [such revisions] where the explanations are so scant." *Senatore v. Lynch,* No. 13-CV-00856 (CRC), 2016 WL 1611578, at *1-2 (D.D.C. Apr. 22, 2016) (paraphrasing *Jackson*).

It is likely that Dr. Cooper/Turn Key only offer conclusory statements as the reasons for the changes because they cannot possibly offer valid ones. The material alterations and substantive changes in the Errata sheet go entirely against the Tenth Circuit's decisions in *Garcia*, *Knitter*, and *Burns*. *See also Jackson*, 310 F.R.D. at 185 ("all of the circuits to consider the issue would uphold the striking of the first category of revisions – those making contradictory, and often material, changes – particularly where the explanations are so scant"). Defendant defied the rules

5

for depositions and "return[ed] home and plan[ned] artful responses," obviously with the assistance of counsel. *Garcia*, 299 F.3d at 1242 n. 5. *Garcia* specifically admonished against this because "[d]epositions differ from interrogatories in that regard." *Id.* Moreover, the Tenth Circuit factors for determining whether changes are the equivalent of a sham affidavit lean in favor of striking the Defendant's changes: this Defendant was deposed at length, repeated his answers, and was cross-examined by his own counsel; he had access to all pertinent evidence at the time of his deposition; and Defendant's changes are not "attempts to explain or correct some confusion" reflected in the prior testimony, but are instead attempts to contradict and completely alter answers.

### IMPERMISSIBLE ALTERATIONS IN THE ERRATA SHEET:

Plaintiff will go through the changes in Defendant's Errata sheet below:

1. **Cooper Deposition, 57:6 (Ex. 2)**

| Deposition Context |
|---|
| Plaintiff's counsel was asking about how an LPN – if they are the only person on duty – would know to call an RN or physician on the phone for help. Plaintiff's counsel specifically asked: "Well, but if they don't understand it, they don't even know there is a medical condition because they can't assess it, how are they supposed to then reach out for somebody that is qualified?" |

| Deposition Testimony | Alteration |
|---|---|
| "I guess they probably wouldn't know they needed to." | "I guess they probably wouldn't know they needed to **because nurses have the training and education to recognize certain medical signs and symptoms, but there is always a possibility that signs, symptoms, or medical conditions can present such that they are beyond the nurse's scope of education and training.**" |

6

2. **Cooper Deposition, 66:4 (Ex. 2)**

| Deposition Context |
|---|
| Plaintiff's counsel was asking about Turn Key employee Clayton Rickert, LPN, stating he was not qualified to identify the signs and symptoms of drug overdose. Plaintiff's counsel asked: "Isn't it important for him to be qualified to know the signs and symptoms of drug overdose in his job?" |

| Deposition Testimony | Alteration |
|---|---|
| "Yes." | "Yes **and there is a difference between recognizing signs and symptoms of drug overdose, which LPNs are qualified to do, and making a diagnosis that the patient is having a drug overdose. My memory is that Nurse Rickert testified he was not qualified to do the latter.**" |

3. **Cooper Deposition, 82:23 (Ex. 2)**

| Deposition Context |
|---|
| Plaintiff's counsel was asking about how an LPN – if they are the only person on duty – would again know to call his uperior on the phone for help. Plaintiff's counsel specifically asked: "Well you see the problem here is if – if Clayton Rickert doesn't know somebody has signs of drug overdose because he doesn't know them, and he reads: 'Drug overdose or drug withdrawal,' on your sheet, but he doesn't know it's a drug overdose – because he doesn't know, it would be impossible for him to reach out to, say, you, and get help, true?" |

| Deposition Testimony | Alteration |
|---|---|
| "True." | "True**, however, there is a different between recognizing signs or symptoms, which LPNs are qualified to do, and making a diagnosis that the patient is having a drug overdose. To my knowledge, Nurse Rickert never testified that he was unable to recognize signs and symptoms. He correctly testified that he was not qualified to make a diagnosis.**" |

7

### 4. Cooper Deposition, 97:9-12 (Ex. 2)

| Deposition Context |
|---|
| Plaintiff's counsel was asking about a note Clayton Rickert wrote about the intake of Marconia Kessee and the fact it never mentioned taking Kessee's blood pressure or doing an intake of Kessee. Plaintiff's counsel asked: "Now, you've read his deposition. You're aware that Brandi Garner, a detention officer, has stated, in an official report, that Clayton Rickert told her he had taken a blood pressure and done an intake on Marconia Kessee. Were you aware of that? |

| Deposition Testimony | Alteration |
|---|---|
| "I remember that being in the deposition." | "I remember that being in the deposition**, but I believe you are mistaken because to my memory Garner's report does not say that Nurse Rickert took Mr. Kessee's blood pressure. It says that the only notable issue was slightly high blood pressure.**" |

| Plaintiff's counsel followed up: "Okay. And there's nothing to indicate that that is – that actually occurred; true?" |
|---|

| Deposition Testimony | Alteration |
|---|---|
| "True." | "True**, I do not recall seeing anything to indicate that a blood pressure reading was taken, but my understanding is that Nurse Rickert opted to postpone the intake because he believed that Mr. Kessee was being uncooperative, and he could have deduced Mr. Kessee's high blood pressure from the fact that he was arrested with a prescription of Amlodopine – a medication that treats high blood pressure.**" |

8

5. **Cooper Deposition, 100:13-25 (Ex. 2)**

| Deposition Context |
|---|
| Plaintiff's counsel was asking about detention officer Brandi Garner's report that Rickert told her he performed his intake on Kessee and noted high blood pressure. Plaintiff's counsel asked: "Okay. Anything that you've reviewed at the time, or anytime since, shown that an intake was actually done and that Marconia had high blood pressure?" |

| Deposition Testimony | Alteration |
|---|---|
| "No." | "No**, I do not recall seeing anything to indicate that a blood pressure reading was taken, but my understanding is that Nurse Rickert opted to postpone the intake because he believed that Mr. Kessee was being uncooperative, and he could have deduced Mr. Kessee's high blood pressure from the fact that he was arrested with a prescription of Amlodopine – a medication that treats high blood pressure.**" |
| Plaintiff's counsel followed up about Kessee's other symptoms – sweating, breathing heavily, and talking incoherently – which Dr. Cooper agreed to. Plaintiff's counsel then asked: "If he did have high blood pressure, would that also cause concerns, all four of those situations put together?" | |

| Deposition Testimony | Alteration |
|---|---|
| "Yes." | "Yes**, but those concerns can be eased when a fit slip shows that a physician at the hospital has determined that the inmate is healthy enough for incarceration. In such a situation, as far as the nurse knows, this determination would be made with the patient presenting with identical symptoms.**" |

9

6.  **Cooper Deposition, 102:4 (Ex. 2)**

| Deposition Context |
| --- |
| Plaintiff's counsel was asking about Kessee's symptoms and whether those symptoms indicate anything based on the policies, procedures, and training of Turn Key. Cooper responded yes; Plaintiff's counsel followed up: "What is it? What could it be?" |

| Deposition Testimony | Alteration |
| --- | --- |
| "That there's a medical problem." | "**It could be** that there's a medical problem **and if the inmate has come from the hospital , the one of the things a nurse should do is to look to see if there is a fit slip.**" |

The changes in this case are not merely clerical, but materially alter the liability of certain parties in this case and should not be allowed. For example, the failure of Clayton Rickert to perform a medical intake or to contact a superior based on the symptoms – which Dr. Cooper agreed indicated a medical problem (Ex. 2 – 102:4) – of Marconia Kessee broadens the liability of Defendant Turn Key. The changes made to Cooper's deposition are a blatant attempt to alter testimony in order to attempt to limit or eliminate liability of Defendant Rickert and Defendant Turn Key. Dr. Cooper was testifying as the corporate representative of Turn Key, had notice of the topics he would be asked about, Ex. 3 – Deposition Notice, and testified that he had prepared for the deposition by reviewing Rickert's deposition and watched the video "of the officers at the hospital and then in booking and in the cell." Ex. 2 – Cooper Dep., 14:1-3.

Dr. Cooper testified that he remembered that detention officer Brandi Garner had reported that Rickert told her he had done an intake on Kessee and checked Kessee's blood pressure. After the deposition, Dr. Cooper, who was presumably prepared for the deposition as corporate representative and had read Clayton Rickert's deposition, now seeks to completely

change his story. The evidence he is attempting to rely on – Brandi Garner's report (attached as Ex. 4) – was available to him prior to his deposition. It is not new evidence. Yet, Turn Key's counsel is attempting to revise the testimony to put words in Cooper's mouth that contradict his original testimony under oath.

In yet another spot, Turn Key's counsel now seeks to put words into Cooper's mouth regarding the deposition testimony of Clayton Rickert – which Dr. Cooper testified he had read to prepare for the deposition – regarding Rickert's ability to recognize signs and symptoms of drug overdose. Rickert testified:

> Rickert, Clayton, (Pages 70:25 to 72:2)
> 
> 70
> 25  Q  (By Mr. Hammons) Well, then, would there body
> 
> 71
> 1  be ele- -- could it be due to something else, like --
> 2  A  It could be --
> 3  Q  -- drug overdose?
> 4  A  It could be two --
> 5     MS. THOMPSON:  Object to the form.
> 6  Q  (By Mr. Hammons) Drug overdose?
> 7  A  Multiple things.
> 8  Q  Yeah, is drug overdose one of those?
> 9  A  I -- I'm not a doctor.  I couldn't -- I
> 10 couldn't diagnose --
> 11 Q  You --
> 12 A  -- something like that.
> 13 Q  Oh, wait a minute.  You can't -- you don't --
> 14 you're not -- you're not trained on seeing the signs and
> 15 symptoms of somebody that is intoxicated?

```
16      A   No.
17      Q   You're not -- and you're not trained on seeing
18   the signs and symptoms of somebody that might be needing
19   detox?
20      A   I've seen that before.
21      Q   Well, no, are you trained on it?
22      A   I have not specifically been trained on it,
23   but I've seen it.
24      Q   And you're not trained on the signs and
25   symptoms of drug overdose?
                        72
1       A   I'm -- I've seen cases, but I haven't had
2    specific training on drug overdose.
```

When asked about Rickert's stated inability to identify the signs and symptoms of drug overdose, Cooper agreed that it was important for Rickert to know those signs and symptoms. (Ex. 2 – Cooper Depo. 66:4 ("Yes.")) But now, Turn Key's counsel seeks to place words in Cooper's mouth in an odd, gymnastic attempt to both rehabilitate Cooper's testimony and Turn Key employee Rickert's testimony on this topic as well. This is not a scenario where Dr. Cooper was unprepared for these questions, or new evidence has come to light. These are specific things he was on notice he would be testifying about and a deposition he testified he read.

The revisions written by Turn Key's counsel attempt to materially change sworn testimony to reduce the liability exposure of Turn Key. This is just one example of the types of material changes Defendant has sought to make. Such blatant attempts to rewrite sworn testimony to engineer an escape from liability should not be allowed.

## **CONCLUSION**

As the Court can see from the changes identified herein and contained in Defendant's Errata Sheet, Ex. 1, Defendant seeks to materially alter the testimony by changing the entire meaning of answers and adding in whole paragraphs of new testimony. Such changes are wholly impermissible. Plaintiff requests that the Court strike Dr. Cooper's Errata Sheet in its entirety and award Plaintiff the costs and fees associated with the filing of this Motion.

WHEREFORE, Plaintiff requests this Court strike the Errata Sheet to the deposition of Dr. William Cooper, for the reasons set out herein, and to award Plaintiff the costs and fees associated with the filing of this Motion.

Respectfully submitted,

s/Jonathan R. Ortwein
Chris Hammons, OBA #20233
Jason Hicks, OBA # 22176
Jonathan R. Ortwein, OBA #32092
LAIRD HAMMONS LAIRD, PLLC
1332 SW 89th Street
Oklahoma City, OK 73159
Telephone:   (405) 703-4567
Facsimile:    (405) 703-4061
E-mail: chris@lhllaw.com
         jason@lhllaw.com
         jonathan@lhllaw.com
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2021, I filed the attached document with the Clerk of Court. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

                                                *s/Jonathan R. Ortwein*
                                                Attorney for Plaintiff