**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| PATRICIA THOMPSON, as Personal Representative of the Estate of MARCONIA LYNN KESSEE, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-19-113-SLP |
| NORMAN REGIONAL HOSPITAL AUTHORITY d/b/a NORMAN REGIONAL HOSPITAL, a public trust, et al., | ) | |
| Defendants. | ) | |

**SWORN DECLARATION OF JACOB WHEELER**

Comes now Jacob Thomas Wheeler, and under penalty of perjury states as follows:

1. My name is Jacob Thomas Wheeler.

2. I am over the age of eighteen.

3. I have read and am familiar with the allegations raised in the above-captioned lawsuit.

4. On December 15, 2017, I began employment as the Chief of Detention at the Cleveland County Detention Center. This was approximately one month before the incident that serves as the basis of the allegations in the above-captioned lawsuit.

5. Upon the beginning of my employment as Chief of Detention in December 2017, I reviewed all of the written policies applicable to the Cleveland County Detention Center. Based on my knowledge and experience as a detention officer, I concluded that I did not observe any issues with the CCDC policies that I reviewed, which included, but was not limited to, Policy Nos. 3.01 (Admission of New Inmates); 3.02 (Initial Medical Screening); 3.03 (Booking Procedure); 3.15 (Critical Observation Inmates); and 4.15 (Sight Checks).

6. Similarly, upon the beginning of my employment as Chief of Detention in December 2017, I reviewed all personnel files for the detention officer staff, including, but not limited to, those for Zackery Andrews, Stacey Shifflett, Stephen Scott, and Bryan

Knapp. I did not observe any issues with these employees, including about their competence or ability to perform their assigned roles within the CCDC.

7. Immediately upon the beginning of my employment as Chief of Detention, I held weekly meetings with Sheriff Todd Gibson to discuss topics related to the CCDC, including officer training and the implementation of CCDC policies and procedures. Additionally, during my employment as Chief of Detention, Sheriff Gibson would make weekly visits to the CCDC to observe the officers on duty and ensure that policies and procedures were being properly implemented.

8. Upon the beginning of my employment as Chief of Detention in December 2017, I observed the training for detention officers that was provided by Lieutenant Kyle Keller. I observed Lieutenant Keller provided officers training on sight checks, including observing inmates for signs of life. Signs of life included movement, breathing, and other physical indicators. Additionally, I observed that officers were trained that the Processing Area was a high-risk area and it was important for officers to pay particular attention to inmates located in that portion of the CCDC.

9. During my employment as Chief of Detention, which including the time period of the subject incident at issue, the CCDC maintained a practice by which officers conducting sight checks by viewing inmates in their cells through the window in each cell door. This practice was consistent with CCDC written policy, and officers were trained on it as indicated in Paragraph 8.

10. At the time of the incident at issue, I had been employed continuously with Cleveland County Sheriff's Office since 2009 in a variety of positions, including detention officer, detention sergeant, operations deputy, investigator, operators lieutenant, operations captain, and finally, Chief of Detention. At no point from the beginning of my employment with the CCSO up to the January 2018 subject incident was I aware that there were any problems with CCDC practice or policy as it related to the intake and sight check of critical observation inmates.

11. As Chief of Detention, I was familiar with the personnel employed by Turn Key Health Clinics who were staffed at the CCDC to provide medical care and treatment to inmates, including Turn Key Nurse Clayton Rickert. As no point from the beginning of my employment with the CCSO up to the January 2018 subject incident was I aware of any issues with Turn Key policies or procedures, or any specific issues related to Nurse Rickert's training, skill, or competence.

[SPACE INTENTIONALLY LEFT BLANK]

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30 day of June, 2021.

Jacob Thomas Wheeler