EXPERT REPORT OF CAPTAIN TIM TIPTON

In The United States District Court
For The Western District Of Oklahoma

Thompson
v.
Norman Regional Hospital et al
Daniel Brown
Kyle Canaan

Case No.CIV-19-113-SLP

05-06-2021

TIM TIPTON, CONSULTANT
TTipton179@GMAIL.COM

**BACKGROUND**

My name is Timothy Elliott Tipton, DOB 11/28/66.  I am currently employed by the Oklahoma Highway Patrol as a Troop Commander.  I have been employed with the Oklahoma Highway Patrol since 1988.  My duties as a State Trooper have included accident investigation, criminal investigation, patrol duties and tactical team commander. For ten years I have been the lead "Use of Force" Instructor for the Highway Patrol, which includes firearms and defensive tactics.  I have had the pleasure of instructing professional law enforcement and military personnel around the world.  This has included Municipal, County, State and Federal agencies, as well as extended training programs in foreign countries.  I have included a copy of my professional resume with this report.

I have had the opportunity to render opinions in the area of law enforcement practices and police uses of force on numerous occasions.  State, Criminal and Civil Courts, as well as Federal Criminal and Civil Courts, have recognized me as a subject matter expert in police practices.  Upon reviewing all evidence that is relevant to a particular case my opinions are based on the following critical guidelines.

THE FEDERAL STANDARD
- FEDERAL LAW
- SUPREME COURT OPINIONS

STATE STANDARD
- STATE LAW
- CLEET

POLICY AND PROCEDURE
- DEPARTMENT POLICY
- RECOGNIZED POLICE PROCEDURES

PROFESSIONAL EXPERIENCE
- STATE TROOPER
- INTERNATIONALLY RECOGNIZED USE OF FORCE / POLICE PRACTICES INSTRUCTOR.

Although police procedures and guidelines are based upon Federal and State law, as a subject matter expert, I do not decide facts of law.  I do, however, make opinions based upon the guidelines that Federal and State Courts have determined.

As a subject matter expert, one of the most challenging areas of rendering an opinion is due to the fact that each individual's account of the events that have taken place are not always in agreement.  This can be expected in high stress events.  In these cases, I make an objective opinion based upon the totality of the circumstances and the evidence presented.

### EVIDENCE CONSIDERED

I have been retained to render an expert opinion in the following case:

## In The United States District Court
## For The Western District Of Oklahoma

## Patricia Thompson
## v.
## Norman Regional Hospital et al
## Daniel Brown
## Kyle Canaan

## Case No.CIV-19-113-SLP

Counsel for the defendants has provided the following list of research material that I have reviewed to formulate an opinion:

- Second Amended Complaint (CIV-19-113-SLP)
- Norman Police Department Policy Manual
- Norman Police Department Training Record (Daniel Brown)

- Norman Police Department Training Record (Kyle Canaan)
- CLEET record (Daniel Brown)
- BWC Video (Daniel Brown
- BWC Video (Kyle Canaan)
- Confidential Report Investigation (Daniel Brown)
- Confidential Report Investigation (Kyle Canaan)
- OSBI Investigation (OSBI2018-38/8)
- Expert Report (Robert Prevot)
- Depositions:
  - ➢ Daniel Brown
  - ➢ Kyle Canaan
  - ➢ Justin Holbrook
  - ➢ Jarrod Terry
  - ➢ Keith Humphrey
  - ➢ Donald Amason
  - ➢ Kerry Hartman

I have also utilized publications such as:

- Oklahoma State Statutes
- CLEET Defensive Tactics Instructor Manual
- IACP Model Policy
- Contemporary Criminal Procedure by Larry E. Holtz.
- The Federal Law Enforcement Informer
- Various Internet Sites

**Arrest and Control Procedures:**

Anytime law enforcement officials attempt to gain control of an individual, force is used.  The guidelines that dictate the proper use of force are found in the Fourth Amendment of the Constitution of the United States of America.  The courts have outlined the objectively reasonable standard that should be used to judge the actions of law enforcement when making an arrest.

I have considered the following steps in rendering an opinion:

- **Subject Actions**

  - ➢ Compliant
  - ➢ Non-Compliant
  - ➢ Passive Resistance

- **Police Officer Response**

  - ➢ Verbalization
  - ➢ Escorts
  - ➢ Handcuffing

## PURPOSE OF REPORT

I have been asked to review evidence concerning the incident involving Marconia Kessee and Norman Oklahoma Police Officer Kyle Canaan and Officer Daniel Brown. I have been asked to render an opinion as to whether the Officer's actions were reasonable under the circumstances.

## BACKGROUND

1. On January 16, 2018, Marconia Kessee walked into the Norman Regional Hospital Emergency Department. Mr. Kessee was examined by hospital personnel and released.

2. After being released, Mr. Kessee was contacted in the Emergency Department lobby by Hospital Security Officer Jarrod Terry. Mr. Terry called Norman Police Dispatch, requesting an officer respond to the ER lobby and make contact with Mr. Kessee.

3. Norman Police Officer Daniel Brown was dispatched to the call. Officer Brown arrived at approximately 7:10 PM.

4.  A second call was placed at 7:07 PM to Norman Police Dispatch requesting an officer respond to the ER for a "Disturbance/Domestic".

5.  Norman Police Officer Kyle Canaan was dispatched along with Sgt. Hicks. Sgt. Hicks was later cancelled from the call and did not respond. Officer Canaan arrived at approximately 7:08PM.

6.  As Officer Canaan arrives in the lobby, contact is made with Security Officer Terry. Mr. Terry advises that Mr. Kessee has been discharged from care and had no place to go. Mr. Terry tells Officer Canaan that he was trying to get Mr. Kessee to the salvation army, but Mr. Kessee was having some issues.

7.  Mr. Kessee is asked to stand up and be seated on a wheel chair. Once on the wheel chair Officer Brown arrives in the ER lobby.

8.  Officer Canaan pushes the wheel chair outside. Once outside, Mr. Terry tells the officers that Mr. Kessee has been discharged and gives Officer Canaan the discharge paperwork.

9.  Mr. Kessee stands up from the wheel chair, stumbles and falls to the ground where he sits with his back against the wall.

10. The next 12 minutes Officer Canaan and Officer Brown attempt to verbally compel Mr. Kessee to put his shoe back on and voluntarily leave the hospital property.

11. Eventually Officer Canaan grabs Mr. Kessee by the left arm and Officer Brown on the right arm. While lifting Mr. Kessee's torso, the officers drag him toward the parking lot.

12. Officers stop and again attempt to get Mr. Kessee to comply with orders to leave the property.

13. Officer Canaan grabs Mr. Kessee's jacket and pulls him a short distance, until Officer Brown advises that Mr. Kessee's bare skin may be in contact with the ground.

14. Officer Canaan and Officer Brown then determine that Mr. Kessee will be charged with trespass and taken to the Cleveland County Jail.

15. Officer Brown transports Mr. Kessee to the jail and turns custody over to detention staff.

**OPINION**

In reviewing the case at hand, I have relied on the following primary professional law enforcement standards.

**Constitutional Guidelines**

Professionally trained law enforcement officers have a clear understanding of their special authorities and restrictions concerning appropriate police conduct during legitimate police activities. Regardless of the agency or jurisdiction, law enforcement officers understand the Constitutional guidelines that direct them during detention, arrest and use of force events.

I am not an expert in constitutional law, but it should be noted that police training and standards are based on case law and constitutional principles. Theses cases and principals are utilized nationally to educate and evaluate police actions. A core element in the evaluation process is to recognize the totality of facts and information know to the officer at the time. The use of 20/20 vision in hindsight is extremely dangerous and will lead to an unrealistic expectation of officers actions.

**The issues in this case are:**

1. Did Officer Canaan and Officer Brown apply appropriate police practices during the interaction with Mr. Kessee?
2. Was the attempt to move Mr. Kessee off hospital property an excessive use of force?

DETAILS CONCERNING ISSUE #1

1. On January 16, 2018 as Officer Canaan arrives at the hospital, he is met in the lobby by uniformed hospital security. Officer Canaan initially sees the security officer standing next to Mr. Kessee, who is sitting on the floor with paperwork and a pair of glasses scattered on the floor. The security officer provides details to Officer Canaan

regarding the situation with Mr. Kessee. These details included: Mr. Kessee has been released from medical care, they are trying to get Mr. Kessee to go to the salvation army, Mr. Kessee is having some issues.

Officer Canaan quickly recommends that Mr. Kessee be moved outside. Officer Canaan and Security Officer Terry assist Mr. Kessee to a nearby wheel chair. As Officer Canaan is pushing Mr. Kessee outside, Officer Brown arrives. Officer Canaan begins briefing Officer Brown on the facts known to him.

Once outside, Mr. Terry gives the discharge paperwork to Officer Canaan. Mr. Terry then explains to Officer Canaan and Officer Brown that Mr. Kessee has been discharged, does not have an ID and has had an episode inside the hospital.

Officer Canaan explains to Mr. Kessee that the Doctor has cleared him and that he needs to walk across the street to the salvation army. Officer Brown tells Mr. Kessee that he has been released from the hospital. Mr. Kessee responds by standing up, staggering forward, then moves back to the wheelchair, grips the arm rest and shakes the wheelchair. Eventually Mr. Kessee falls to the ground and sits while leaning against the wall.

Over the next 12 minutes Officer Canaan and Officer Brown communicate with Mr. Kessee in an attempt to compel him to voluntarily leave the hospital property. During the attempted interaction with Mr. Kessee, Officer Canaan confirms with Mr. Terry that they wish to trespass Mr. Kessee. Mr. Kessee does not comply with the directions of the Officers to leave the property.

*OPINION  CONCERNING ISSUE #1*

1. *The initial call for service placed by Norman Reginal Hospital indicated that a subject needs to be contacted, and needs to go to the salvation army. A second call placed a*

*few minutes later indicated a disturbance was occurring inside the ER lobby. Hospital Security was with an individual that is"wigged"out.*

2. *As Officer Canaan arrives, he sees a security officer standing near an individual that is sitting on the floor with papers, glasses and other items scattered on the floor around him. The security officer tells Officer Canaan that the individual has been discharged, and he is trying to get him to go to the salvation army. The security officer further states that the individual is "kind of having some issues right now"*

3. *It is my opinion that Officer Canaan, upon seeing the initial position of Mr. Kessee and hearing the security officer detail the situation, reasonable believed that law enforcement involvement was necessary.*

4. *Officer Canaan makes the decision to move Mr. Kessee outside and further investigate the situation. It is my opinion that this decision was proper and was conducted in a professional manner.*

5. *The initial contact and interaction between Officer Canaan and Mr. Kessee would lead a reasonable officer to believe that Mr. Kessee was coherent, compliant and could stand with very minimal assistance.*

6. *Once outside, Officer Canaan and Officer Brown are told by hospital security that Mr. Kessee has been discharged, he does not have an ID, he has kind of had some episodes and has taken his meds. Hospital security also provided the hospital discharge paperwork to Officer Canaan.*

7. *It is my opinion that the details provided to Officer Canaan and Officer Brown would lead a reasonable officer to believe that a potential crime has been articulated.*

8. *Officer Canaan begins explaining to Mr. Kessee that the doctor has medically released him, that he needs to leave the hospital and that he can go to the salvation army.*

9. *Officer Canaan and Officer Brown watch as Mr. Kessee stands up from the wheelchair, staggers, grips the wheelchair arm rest and shakes, then falls to the ground and sits against the wall. The Officers are then told by hospital security, that Mr. Kessee was not displaying this type of behavior before he was released from the hospital.*

10. *It is my opinion that Officer Canaan and Officer Brown reasonably believed, based on the totality of the information, that Mr. Kessee was fully cleared by a doctor and was*

*not having any medical issues and had just began displaying this behavior after he was told to leave the hospital.*

11. *It is my opinion that Officer Canaan and Officer Brown reasonably believed that Mr. Kessee was intentionally violating Norman municipal code[1] and Oklahoma Statute[2] by refusing to leave hospital property.*

12. *Officer Canaan and Officer Brown spend the next 7 minutes attempting to gain verbal compliance from Mr. Kessee.*

DETAILS CONCERNING ISSUE #2

2. After numerous attempts to verbally compel Mr. Kessee to leave the property, and confirmation that Norman Reginal Hospital requested to have Mr. Kessee removed from the property, Officer Brown makes physical contact with Mr. Kessee in an attempt to get Mr. Kessee to stand. Mr. Kessee resists the attempted escort by Officer Brown.

Contact is then made by Officer Canaan grasping Mr. Kessee's left arm and attempting to pull him up as he drags Mr. Kessee.

Officer Brown then grasps Mr. Kessee by the right arm and further attempts to lift Mr. Kessee to a standing position as both Officers drag him.

The initial lifting and dragging is conducted for approximately 20 seconds, the Officers stop and attempt to gain verbal compliance. The Officer then continue the lifting and dragging for approximately 10 more seconds.

The Officers stop and attempt to gain verbal compliance again by ordering Mr. Kessee to leave the property. Mr. Kessee again refuses to comply with the officers commands.

---

[1] Sec. 15-605
[2] Title 21-1835

Officer Canaan grips the jacket of Mr. Kessee and continues pulling Mr. Kessee for approximately 10 seconds.  Officer Brown notices that the position of Mr. Kessee is potentially causing his bare skin to be in contact with the ground.

Officer Brown tells Officer Canaan about the skin contact. Officer Canaan immediately stops pulling Mr. Kessee. Officer Brown and Officer Canaan then decide that Mr. Kessee will be placed under arrest and taken to jail.

Mr. Kessee is secured with handcuffs and placed in the back seat of Officer Brown's patrol unit. Officer Brown transports Mr. Kessee to the Cleveland County Jail.

Once at the jail, Officer Brown assists Cleveland County Detention Staff with moving Mr. Kessee into the facility.

*OPINION CONCERNING ISSUE #2*

1. *Based on the facts of this case, it is clear that the Norman Regional Hospital wanted the Norman Police Department to remove Mr. Kessee from their property.*
2. *Officer Canaan and Officer Brown recognized that they were duty bound to ensure Mr. Kessee leave the property due to the lawful request by the hospital.*
3. *It is my opinion based on the facts of this case that after numerous attempts to gain verbal compliance from Mr. Kessee, Officer Brown initiates an empty hand escort to try to get Mr. Kessee to stand up. Mr. Kessee resists the effort and does not stand.*
4. *It is my opinion based on CLEET[3] training and nationally accepted police practices that Officer Canaan and Officer Brown recognized that verbal commands were not effective, necessitating an escalation in force.*
5. *It is my opinion that Officer Canaan attempted to use an empty hand escort, that became a drag. As Officer Brown moved to assist, they assumed a 2 man carry position.*

---

[3] CLEET Basic, use of force training

11

6. *After stopping and attempting to gain verbal compliance again, Officer Canaan drags Mr. Kessee an additional 10 seconds. Officer Brown recognizes the potential for Mr. Kessee's skin to be injured and immediately tells Officer Canaan. Officer Canaan instantly stops dragging Mr. Kessee.*

7. *After an extended effort by Officers to verbally compel Mr. Kessee to leave the property and the use of empty hand techniques to move Mr. Kessee off the property failed, officers reluctantly placed Mr. Kessee under arrest.*

8. *Mr. Kessee was handcuffed, placed in a patrol unit and transported to the Cleveland County Jail in accordance with accepted police practices.*


**CONCLUSION AND ADDITIONAL OPINIONS**

As a result of reviewing all the listed evidence, in addition to the opinions outlined above, I have developed the following observations and opinions about the incident :

*Although this case unfortunately ends in a tragic loss of life, the evaluation of Officer Canaan and Officer Brown that I have done is based on nationally accepted police practices and modern research in the area of police performance and standards.*

*As Officer Canaan arrives at the hospital, he is presented with numerous inputs, these included visual, verbal and written information. Current professional law enforcement research refers to these inputs as "primers"[4]. When evaluating a law enforcement action, the Graham Standard[5] guides us in the proper way to conduct this review. A key concept of this standard is that we must look at the totality of the circumstances from the view of the officer on the scene. The use of 20/20 vison of hindsight would be an unreasonable evaluation. Understanding the priming elements known by the officer at the time of the event will assist in a fair and reasonable evaluation.*

*The following is a list of primers that Officers possessed during the interaction with Mr. Kessee:*

---

[4] Study: Dispatch Priming, Paul Taylor 2019
[5] SCOTUS: Graham v Connor 1989

- *Dispatched to a disturbance that was happening in the hospital lobby with a subject who was "wigged out".*
- *Officer sees hospital security is with a subject sitting on the floor in the lobby area.*
- *Papers, glasses and other items are scattered on the floor.*
- *Officer is told Mr. Kessee has been released from medical care.*
- *Mr. Kessee is having issues and will not leave.*
- *Officer speaks with Mr. Kessee who appears to respond and understand initially.*
- *Officer witnesses Mr. Kessee quickly move from a seated to a standing position with little assistance.*
- *Officers are told a second time that Mr. Kessee has been medically evaluated and cleared.*
- *Officer is shown medical clearance papers that document (headache and drug seeking).*
- *When officers witness unsteady movements and falling, they are told Mr. Kessee was not acting like this before he was released.*

*As Officers are interacting with Mr. Kessee, they fully believe that medical professionals have found Mr. Kessee to be free of any medical risk. Mr. Kessee's only reason for being at the hospital was due to a headache and attempting to get narcotics. The Officers also fully believe, based on first person account, that Mr. Kessee was fully functioning prior to their arrival. It is a well-documented occurrence that police officers routinely encounter subjects that feign being sick or injured.*

*The plaintiff's expert in this case dismisses all the primers and facts known by the officers and applies a 20/20 hindsight evaluation of the actions of Officer Canaan and Officer Brown.*

*Once the officers and Mr. Kessee are outside, the officers spend a significant amount of time attempting to encourage Mr. Kessee to leave the property. Evaluating the officers communication and resolution attempts from the perspective as discussed, reveals a great deal of patience and desire to not place Mr. Kessee under arrest.*

*Security Officer Jarrod Terry testifies that in his opinion officers should have had Mr. Kessee re-evaluated by medical staff, yet on two occasions Mr. Terry tells officers that*

13

*Mr. Kessee can not stay on the hospital property. It is my opinion that Mr. Terry had numerous opportunity to request additional medical evaluation for Mr. Kessee if he felt it was necessary. Ultimately it was Mr. Terry that directed officers to arrest Mr. Kessee and completed the arrest docket.*

*Once it becomes clear to the officers that Mr. Kessee is not going to comply, the physical use of force occurs. When evaluating the use of force, the Graham Standard once again provides guidance. This evaluation is done by balancing the crime committed with the type of force used. Force is ranked based on the technique that is being applied and its "propensity for injury".*

*In this case, at the time force is used, Mr. Kessee was actively committing the crime of trespass and would be classified as a passive resistor. The physical force used by the officers would be classified as an empty hand technique. The propensity for injury from the technique used is extremely low. Lifting, pulling and dragging without the use of any strikes, tools or weapons, would be considered one of the lowest levels of physical force.*

*The plaintiffs expert in this case does not evaluate the technique based on the propensity for injury. When evaluated properly it is clear that the technique used was an extremely safe technique.*

*An additional area of evaluation is the fact that once Officer Canaan was informed of the potential that an abrasion injury was possible, he immediately stopped the use of force.*

*It is my opinion, based on nationally accepted police standards that Officer Canaan and Officer Brown followed acceptable police practices while responding to the call for service with Mr. Kessee. It is further my opinion that the use of force applied by these officers was reasonable and proportional based on their knowledge at the time of application.*

This report is a summary of my expert opinions in this matter. It sets forth my views in general subject areas involved in this case. I anticipate that in answering questions of me in deposition or court appearance, I will provide a more detailed explanation of my specific opinion and the reasons for them.

This report is based upon the evidence provided to me as of the date below; I reserve the right to revise this report following any additional discovery.

Tim Tipton, Consultant
4832 October Dr
Edmond OK. 73034
405-833-4912
Date:  05-06-2021

**Tim Tipton Consulting**

**EXPERT WITNESS FEE SCHEDULE**

**CASE PREPARATION FEE** $ 200.00 PER HOUR

This hourly fee is charged to all activities associated with case preparation including but not limited to: document review, research, interviews, meetings and report writing. A fifteen hour minimum preparation fee ($3000.00) will be due upon case initiation.

**HEARINGS OR COURT APPEARANCES** $ 250.00 PER HOUR

This hourly fee will be charged for any court appearances and charges will be billed at a minimum of 4 hours per daily appearance.

**DEPOSITION FEE** $ 250.00 PER HOUR

This hourly fee will be charged on any deposition appearances and charges will be billed at a minimum of 4 hours per daily appearance. The responsible party giving notice of a scheduled deposition shall submit the minimum fee prior to the deposition.

**TRAVEL FEE** (AT COST)

All pre-approved travel will be billed at cost including airline, automobile, lodging and food. Travel time will be billed at a reduced hourly rate.

**BILLING**

No fee will be charged for an initial consultation. Hourly case preparation fee will be due prior to delivery of written report. Travel fees will be billed accordingly and are due within (30) days.

# CAPTAIN TIM TIPTON



WWW.Policeexpertwitness.com

(405) 833-4912 • Tim@policeexpertwitness.com

## Professional Summary

Seasoned Tactical Team Commander, Scenario-Based Training Instructor & Adjunct Professor with over 25 years of experience in the design, development, and implementation of law enforcement use of force training programs, in escalating positions across the Oklahoma Highway Patrol, and a long term position within the Education industry. Extensive experience in developing and teaching instructor-level tactics courses across the United States and internationally, and providing an objective unbiased opinion to the Court in relation to matters within expertise. Continually exceeds expectations by creating valuable partnerships and works well with people at all levels of the organization, including stakeholders, customers, and team members.

## Skills

- Providing Independent Assistance to the Court
- Confining Evidence to Technical Matters
- Breaking Down Information in Simple Terms
- Impartial & Reliable Testimony
- Teaching During Case Preparation
- Cross-Examination Prowess
- Awareness of Demeanor & Non-Verbal Cues
- Quick-Thinking & Maintaining Composure

- Articulating Responses in a Calm Manner
- Stating Facts & Opinion-Based Assumptions
- Writing Persuasive Reports & Case Files
- Making Sure to Never Omit Material Facts
- Establishing Credibility, Understanding & Skills
- Collaboratively Outlining & Strategizing Cases
- Time Management & Organizational Skills
- Excellent Verbal & Written Communication

# Work History

**Oklahoma Highway Patrol,** 1988 to Present

**Commander**

- of the Emergency Services Unit (ESU), Starting out initially as a Trooper, handling traffic patrol, accident and criminal investigations, disaster response, manhunts, and civil disturbances, as well as providing executive protection on the detail for the Governor.
- Acting as a Certified Police Use of Force and Police Practices Expert Witness for the past 21 years, providing the Court with factually accurate and independent opinions, while knowing own report inside and out in order to be able to give clear, succinct answers to questions regarding the report.
- Ensuring that all comments or advice given to the court is within own personal knowledge and expertise, as well as advising the Court when requests or questions are beyond expertise.
- Overseeing and commanding the OHP Tactical Team, the Emergency Response Team, and the Emergency Medical Services Unit as the Commander of the ESU.
- Supervision of Troopers who are assigned to a Federal Law Enforcement task force with the FBI JTTF, USMS, USSS and Fusion.
- Serving high-risk warrants as the Tactical Team Commander and conducting manhunts, negotiating with barricaded suspects, and performing hostage rescues.
- Over 10 years developing and implementing Use of Force training as the Lead Firearms and Defensive Tactics Instructor, as well as writing lesson plans along with student manuals for courses, which are currently being used by various State, Federal, and foreign law enforcement agencies.
- Consulting with the Legal division concerning Use of Force issues, while also developing and implementing the departmental policies concerning Use of Force, and ensuring adherence.
- Providing classroom instruction and live fire range training as the Firearms and Defensive Tactics Instructor, as well as ensuring all students understand the best methods for less lethal tactics, self-defense, executive protection, building entry, traffic stops, and managing civil disturbances.
- Commanded Troop K as a Field Captain for the OHP, which included 5 counties in North Central Oklahoma, overseeing the daily operations and supervising the activities of Troop Lieutenants, as well as reported to the Chief of Patrol as a member of the general staff.
- Supervised Troopers' day-to-day activities in the Troop A metro and rural areas as a Lieutenant with the OHP for 9 years.

- While assigned to Troop Z, the investigation division, managed and supervised the investigations and documentation of numerous Trooper involved shootings, use of force, threat assessments, and criminal investigations.

**Instructor** , 2005 to Current

**Department of Homeland Security, Center for Domestic Preparedness**

- Providing training as a Department of Homeland Security Certified Instructor, the Responder 8 Instructor, the TERT Instructor, and the Incident Command Trainer.
- Providing courses including the Managing Civil Actions in Threats Incidents, Law Enforcement Protective Measures, and Law Enforcement Response Actions, and training municipal, State, Federal law enforcement agencies.
- Participating as part of the training cadre for numerous large scale events of national significance including the Republican National Convention, the Democrat National Convention, the G8 Summit, the NFL Super Bowl, and the World Equine Games.

**Adjunct Professor**, 1998 to Current

**Oklahoma State University OKC**

- Teaching assigned classes in accordance with the University schedule and organizing each course into an effective instrument of learning according to the divisional course objectives.
- Developing a course syllabus for new courses, adhering to standards, as well as reviewing, refining, or modifying existing course syllabi as necessary to include instructor-specific information and to realize revised course and weekly outcomes, following Program Chair guidance.
- Planning each unit or lesson method to make each class minute meaningful, while developing content that supports and enhances required readings for the course, including perspectives on key points.
- Participating actively in classroom discussions, sharing experiences and perspectives, probing students with questions that require critical thinking skills, highlighting key learning points, and answering student questions.
- Providing relevant and timely feedback on submitted student work, including participation, and discussing student issues with staff members as applicable, as well as compiling and reporting grade-related information to students and the Administration.

# Certifications

- Certified Police Use Of Force/Police Practices Expert Witness – State & Federal Court - Since 1998
- Force Science Advanced Specialist Certification

- Advanced Law Enforcement Certification (CLEET)
- Certified Law Enforcement Trainer (CLEET)
- Certified Defensive Tactics Instructor & Gracie Jiu-Jitsu Grapple Instructor - Weapon Retention, Handcuffing, OC Spray,  Manadnock Baton, Cas Baton, Neck Restraint, PPCT, Taser International,  Manadnock MDTS Certified, NLTC Certified, Spontaneous Knife Defense, Active Countermeasures
- CDP Less Lethal/RCA instructor: Pepperball, 40mm, 37mm, LL Shotgun
- Certified Law Enforcement Trainer (CLEET) Certified Firearms Instructor - Revolver, Semi-Auto Pistol, Shotgun, Patrol Rifle, Long Range Rifle, Thunder Ranch Urban Rifle, FBI Sub Machine Gun Instructor, Center Axis Relock Instructor, FBI Counter Sniper Certified
- Factory Certified Armorer - Sig Sauer, Glock, Smith & Wesson, Remington, Colt, H&K, Berretta
- FBI LEEDA Leadership Certification
- Force Science Certification
- International Association of Chiefs of Police : Leadership in Police Organizations (LPO) certified

# Professional Law Enforcement Agencies Trained

I have had the pleasure of instructing numerous professional law enforcement agencies over the past 25 years, some of these agencies include: FBI, DEA, USMS, USSS, ATF, US Probation and Parole,  Tennessee Highway Patrol, Arizona Highway Patrol, Texas DPS, Georgia State Patrol, Colorado Highway Patrol, California Highway Patrol, New York State Police, Boston Police, NYPD, Pittsburgh Police, Las Vegas Metro, Lexington Police, Charlotte Police, Minneapolis Police, Denver Police, Dallas Police, Arlington TX Police, Tampa Police, Azerbaijan National Police and Military, Turkish National Police, United States Marine Corp, Oklahoma National Guard, New York State National Guard, Oklahoma Council on Law Enforcement Education and Training (CLEET). Oklahoma State University COPS degree program and numerous Oklahoma law enforcement agencies.

# Publications

- Recurring articles titled *Tactically Thinking,* in The State Troopers Association Publication
- 1st and 3rd Quarter Issues – 2009
- 1st and 3rd Quarter Issues - 2008

# Education / Affiliations

**Oklahoma State University** - **Associates of Science** in Police Science – May 2005

**High School**, Moore, OK - May 1985

**Board of Directors** – Oklahoma Special Operations Association

**National Tactical Officers Association** – Member

**Oklahoma State Troopers Association** – Member

**International Association of Chiefs of Police**- Member

**Tim Tipton**
**Consultant**

**Deposition and Trial Testimony 2001 - 2021**

Deposition Testimony:

Justin Thomas v State of Oklahoma, DPS, Lateka Anderson
CJ- 2005-3683 Oklahoma County, Oklahoma

Brian Dewell v State of Oklahoma, DPS, Gary Hightower, Jeff Hemphill,
Ian Rosier, Col. Gary Adams
CJ-2004-10138 Oklahoma County, Oklahoma

Russell Landreth v State of Oklahoma, DPS, Cory Minor
CJ-2003-268 McClain County Oklahoma

Allen L. Eng, et al. v. City of Edmond, et al.
CIV-06-782-R, USDC, Western District of Oklahoma

Fredrick, Deborah and Taylor Bentjen v. Okmulgee County Sheriff and
Stephen Raines
CIV-15-85-JHP, USDC, Eastern District of Oklahoma

George Isam Adams v. Garvin County Board of County Commissioners
CIV-14-1337-L, USDC Western District of Oklahoma

Hayes v. Rogers County Jail
17-CV-566-JED-JFJ, USDC Northern District of Oklahoma

Randolph v. Carter County Jail
18-CAV-319-RAW, USDC Easter District of Oklahoma

Chrisman v. Oklahoma County Detention Center
Case No. CIV-17-1309-D, USDC Western District of Oklahoma

Willis v. Oklahoma County Detention Center
Case No. CIV-18-323-D, USDC Western District of Oklahoma

Graham v. City of Lone Grove
Case No. CIV-19-298-JHF, USDC Eastern District of Oklahoma

Trial Testimony:

  State of Oklahoma v James Randel Brand
    CS-2001-506 Pottawatomie County, Oklahoma

  United States of America v John Parks
    04-CR-171-K USDC, Northern District of Oklahoma

  John Vondrak v The City of Las Cruces, Cindy McCants, Nathan Krause
    CIV05-0172 USDC, District of New Mexico

  State of Texas v Juan Barron and Jamai Nicole Dabney
    10-29-18 Scurry County Texas, Snyder TX.

  Osterhout v LeFlore County et al.,
    CIV-17-99-RAW USDC Eastern District of Oklahoma

  State of Oklahoma v James David Glenn
    CM-2018-470 District Court Adair County Oklahoma