# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

PATRICIA THOMPSON, as Personal )
Representative of the Estate of )
MARCONIA LYNN KESSEE, )
                           )
         Plaintiff, )
                           )
v. )         Case No. CIV-19-113-SLP
                           )
NORMAN REGIONAL HOSPITAL )
AUTHORITY d/b/a NORMAN REGIONAL )
HOSPITAL, a public trust, et al. )
                           )
         Defendants. )

---

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. ROUSSEAU

---

Robert S. Lafferrandre, OBA No. 11897
Randall J. Wood, OBA No. 10531
Jessica L. Dark, OBA No. 31236
PIERCE COUCH HENDRICKSON
  BAYSINGER & GREEN, L.L.P.
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Email: jdark@piercecouch.com
*Attorneys for Defendants,*
*Amason, Gibson, Andrews, Knapp,*
*Barr, Shifflett, and Scott*

Ambre c. Gooch, OBA No. 15586
COLLINS, ZORN, & WAGNER, P.C.
429 N.E. 50th Street, 2nd Floor
Oklahoma City, OK 73105-1815
Telephone: (405) 524-2070
Email: acg@czwlaw.com
*Attorney for Defendants Kyle Canaan*
*and Daniel Brown*

Rickey J. Knighton, OBA No. 17257
City Attorney's Office, City of Norman
P.O. Box 370
Norman, OK 73070
Telephone: (405) 217-7700
Email: rick.knighton@ci.norman.ok.us
*Attorneys for Defendants City of Norman*
*and Keith Humphrey*

July 22, 2021

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ...................................................................... ii

**INDEX TO EXHIBITS** ........................................................................... iv

**I. INTRODUCTION** ............................................................................... 1

**II. ARGUMENT AND AUTHORITY** ..................................................... 3

    **A. DR. ROUSSEAU IS A QUALIFIED EXPERT** .................................. 3

    **B. DR. ROUSSEAU'S OPINIONS ARE RELIABLE** ........................... 6

    **1.  Dr. Rousseau's opinions regarding Mr. Kessee's psychiatric diagnoses** ..... 6

    **2.  Dr. Rousseau's opinion regarding causation** ................................ 11

    **3.  Dr. Rousseau's opinion regarding Mr. Kessee's decreased life expectancy** ... 12

    **4.  Dr. Rousseau's Opinions in the Cox v. Glanz case** ....................... 13

    **5.  Plaintiff cannot, and has not, shown that Dr. Rousseau's testimony is unreliable under Rule 702.**

**III. DR. ROUSSEAU'S OPINIONS ARE RELEVANT AND WILL BE HELPFUL TO THE JURY** ................................................. 17

**IV. DEFENDANTS AND DR. ROUSSEAU REQUEST AN EVIDENTIARY HEARING ON PLAINTIFF'S DAUBERT MOTION** ......................... 20

## TABLE OF AUTHORITIES

Page(s)

Cases

*Berry v. City of Detroit*,
  25 F.3d 1342 (6th Cir. 1994) ........................................................................ 10
*Blanchard v. Eli Lilly & Co.*,
  207 F.Supp.2d 308 (D.Vt. 2002) ................................................................... 13
*Cloud v. Pfizer Inc.*,
  198 F. Supp. 2d 1118 (D.Ariz. 2001) ............................................................ 13
*Cox v. Glanz*,
  2014 WL 940459 (N.D. Okla. March 11, 2014) ............................... 18, 19, 20
*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579, 113 S.Ct. 2786 (1993) ........................................ 11, 12, 24, 25
*Dodge v. Cotter Corp.*,
  328 F.3d 1212 (10th Cir. 2003) ................................................... 11, 20, 21
*Gardner v. Gen. Motors Corp.*,
  507 F.2d 525 (10th Cir. 1974) ........................................................................ 9
*General Electric Co. v. Joiner*,
  522 U.S. 136 (1997) ..................................................................................... 11
*Graves v. Mazda Motor Corp.*,
  675 F.Supp.2d 1082 (W.D. Okla. 2009) .................................................... 9, 10
*Greig v. Botros*,
  2012 WL 718914 (D.Kan. March 5, 2012) .................................................. 17
*Herrin v. Treon*,
  459 F.Supp.2d 525 (N.D. Tex. 2006) ........................................................... 13
*Jager v. Andrade-Barraza*,
  2019 WL 6896643 (D.N.M. Dec. 18, 2019) ................................................ 17
*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) ................................. 10, 11, 24
*Land Holdings, LLC v. BMR II, LLC*,
  2020 WL 1236307 (W.D. Okla. March 13, 2020) ........................................... 9
*Miller v. Pfizer, Inc.*,
  1999 WL 1063046 (D.Kan. Nov. 10, 1999) .................................................. 13
*Norris v. Baxter Healthcare Corp.*,
  397 F.3d 878 (10th Cir. 2005) ................................................................ 11, 12
*Qeisi v. Patel*,
  2007 WL 527445 (E.D.Pa. Feb. 9, 2007) ..................................................... 21
*Schad v. Schriro*,
  454 F.Supp.2d 897 (D.Ariz. 2006) ............................................................... 13
*Thompson v. Doane Pet Care Co.*,
  470 F.3d 1201 (6th Cir. 2006) ...................................................................... 18

*United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*,
    80 F.3d 1074 (5th Cir. 1996) ..........................................................................................24
*Yanco v. United States*,
    45 Fed. Cl. 782 (Fed. Cl. 2000) .....................................................................................13

Statutes

42 U.S.C. Sec. 1983.......................................................................................................6, 7

Other Authorities

5 Handbook of Fed. Evid. § 702.1 ......................................................................................18

## <u>INDEX TO EXHIBITS</u>

Exh. 1 - Report of Rousseau

Exh. 2 - Depo of Rousseau

Exh. 3 - Ethics Guidelines for Forensic Psychiatry

Exh. 4 - American Psychiatric Association Publishing Textbook of Forensic Psychiatry

Exhs. 5-16 - Dr. Rousseau Literature

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| PATRICIA THOMPSON, as Personal | ) | |
| Representative of the Estate of | ) | |
| MARCONIA LYNN KESSEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-19-113-SLP |
| | ) | |
| NORMAN REGIONAL HOSPITAL, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO**
**EXCLUDE EXPERT TESTIMONY OF DR. ROUSSEAU**

Defendants Amason, in his official capacity as Sheriff of Cleveland County, and Gibson, Andrews, Barr, and Shifflett, Brown, Canaan, Humphrey, who are all sued individually, and the City of Norman ("Defendants"), hereby submit this Response and Objection to Plaintiff's Motion to Exclude Expert Testimony of Dr. Arthur Rousseau (Doc. 257). Defendants  respectfully request this Court enter an Order denying same and, in support hereof, show the Court the following:

## I.   INTRODUCTION

This is a 42 U.S.C. Sec. 1983 case against Defendants for alleged denial of medical care related to Marconia Kessee's arrest by Norman Police Officers Brown and Canaan and his incarceration at the Cleveland County Detention Center in January 2018. Specifically, Officers Brown and Canaan were called to the Norman Regional Hospital that evening and asked by security staff to remove Kessee from the property. They were advised that he had been seen for a headache and drug-seeking behavior and that he had been

1

cleared and discharged. After repeated attempts to coax Mr. Kessee from the property, the security officer agreed that he was, in fact, trespassing at that time so Kessee was placed under arrest. While Officer Brown transported Kessee to the Cleveland County Detention Center, Officer Canaan requested and received a signed "Fit for Incarceration" slip from a medical provider. This slip advised the officers and jail staff that Kessee was not in any medical distress and that he was fit to be held in the jail in his condition.

At the jail, Mr. Kessee was in the presence of the nurse on duty during the intake process. The nurse, after having seen an act of self-harm by Kessee, and with the knowledge that he had already been cleared by a medical professional, ordered that he be placed in a padded cell for observation. Kessee was physically checked on by detention staff every 15 minutes and appeared to be asleep and in no medical distress. At about 9:51 that night, Kessee was found to be unresponsive and later pronounced dead at the hospital. The Medical Examiner found that Kessee died of an acute overdose of methamphetamine and two medications.

Plaintiff has filed this lawsuit, alleging that the various Defendants are liable for Kessee's untimely demise. Specifically, she alleges claims under Sec. 1983 against these Defendants for an alleged failure to provide medical care. Mr. Kessee's medical history demonstrates years-long use and abuse of illegal and prescription drugs and a complicated psychiatric history including *many* different diagnoses. Kessee's medical and psychiatric condition prior to the incarceration is wholly relevant to his cause of death and to the Plaintiff's alleged damages. Thus, Defendants have endorsed an expert witness, Dr. Arthur Rousseau, who is a qualified expert in the field of psychiatry. Dr. Rousseau has conducted

a "post-mortem psychiatric assessment" of Kessee and his expert opinion thereof will be undoubtedly helpful to the jury at trial in this matter. Specifically, Dr. Rousseau outlines six main opinions, which include: (1) Mr. Kessee's psychiatric diagnoses; (2) Mr. Kessee's seizure diagnosis and the secondary cause of the same; (3) Mr. Kessee's difficulty in maintaining social and interpersonal relationships; (4) Mr. Kessee's baseline intellectual functioning; (5) Mr. Kessee's overall prognosis had he not died in January 2018; and (6) Mr. Kessee's cause of death. (Exh. 1 - Report of Rousseau, pp. 20-22).

Plaintiff has filed a *Daubert* motion, which focuses on three of Dr. Rousseau's six opinions and alleges that these opinions are unreliable and irrelevant. (See Doc. 257). While Plaintiff sets forth the applicable standards for the admissibility of expert testimony, then concludes Dr. Rousseau's testimony should be concluded, it is void of any meaningful argument or authority to support her contention. Contrary to Plaintiff's arguments, Dr. Rousseau did indeed follow reliable principles and methods for reaching the conclusions set forth in the expert report and his deposition testimony. Further, Kessee's psychiatric history is relevant and probative of the claims to be tried and the Plaintiff's request for damages. As such, Plaintiff's Motion at Doc. 257 is without merit and should be denied.

## II.  ARGUMENT AND AUTHORITY

### A.  DR. ROUSSEAU IS A QUALIFIED EXPERT

Plaintiff does not argue in her Motion that Dr. Rousseau is not a qualified expert in the field of psychiatry nor does she dispute his qualifications. (Doc. 257). As demonstrated by his CV, Dr. Rousseau has demonstrated extensive experience in the field. (Exh. 1 - Report of Rousseau, p. 23-33). Dr. Rousseau was first licensed in Oregon in 1979 and in

Oklahoma in 1982. (Id.) He has been board certified by the National Board of Medical Examiners since July 1979 and continuously board certified by the American Board of Psychiatry and Neurology since November 1985. Dr. Rousseau is a psychiatrist with more than forty years' worth of education, training, and experience. (Id; Exh. 2 - Depo of Rousseau, p. 11, lines 10-13; p. 140, lines 3-15). Dr. Rousseau has held privileges at multiple hospitals, held numerous teaching positions, and served on a number of professional organizations and committees throughout his career. (Exh. 1 - Report of Rousseau, p. 22-33). He has authored articles and given dozens of presentations on mental health diagnoses and issues. *Id*, pp. 5-10. Without question, Dr. Rousseau is qualified in the general, quantitative sense.

"It is well settled that a proposed expert 'should not be required to satisfy an overly narrow test of his own qualifications.'" *Okla. Land Holdings, LLC v. BMR II, LLC*, 2020 WL 1236307, *4 (W.D. Okla. March 13, 2020), *quoting Gardner v. Gen. Motors Corp.*, 507 F.2d 525, 528 (10th Cir. 1974). "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Graves v. Mazda Motor Corp.*, 675 F.Supp.2d 1082, 1092 (W.D. Okla. 2009), *aff'd*, 405 F.Appx. 296 (10th Cir. 2010). This requires an expert to be both "(i) adequate in a general, qualitative sense (i.e., 'knowledge, skill, experience, training, or education' as required by Rule 792); and (ii) specific to the matters he proposes to address as an expert." *Okla. Land Holdings*, 2020 WL 1236307 at *4, *quoting Graves*, 675 F.Supp.2d at 1092; *see also Gardner*, 507 F.2d at 528. This requires that the expert have "sufficient specialized knowledge to assist the jurors in deciding the particular issues" in the case. *Okla.*

4

*Land Holdings*, 2020 WL 1236307 at *5, *citing Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156, 148, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

Likewise, Dr. Rousseau also possesses 'sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case.'" *Graves*, 675 F.Supp.2d at 1092, *quoting Kumho*, 526 U.S. at 157. "Otherwise stated: '[t]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Graves*, 675 F.Supp.2d at 1092-1093, *quoting Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994), *cert. denied*, 513 U.S. 1111, 115 S.Ct. 902, 130 L.Ed.2d 786 (1995).

As it relates to these Defendants, the jury will be tasked with determining whether they improperly denied Kessee medical care. This will require Plaintiff to show that each individual subjectively recognized that Kessee was experiencing an objectively serious health issue, that he refused to provide Kessee medical care, and that his acts or omissions caused Kessee's damages. In order to weigh the evidence and determine these issues, the jurors must be able to understand Kessee's medical conditions, including any psychiatric diagnoses, including substance abuse and suicide attempts, prescribed medications, their side effects when not taken as directed, the impact of psychiatric and mental health disorders and diagnoses on a patient's life expectancy. This knowledge is crucial to the jurors determining the issues against these Defendants and because it is not with the realm of common knowledge, expert testimony is required.

As shown, Dr. Rousseau has had a lengthy career in psychiatry spanning more than forty years. (Exh. 1 - Report of Rousseau, pp. 23-33). He undisputedly has tremendous

training, education and expertise in all aspects of psychiatry, and in particular, he has specialized knowledge about psychiatric disorders and diseases, including substance abuse and overdoses, medications used to treat psychiatric conditions, side effects of psychiatric medications when not taken as prescribed, the impact of mental health and psychiatric disorders on a patient's personal and social life, intellectual functioning, and ultimate lifespan. This specialized knowledge will certainly help the jury decide particular issues in this case, and therefore, Dr. Rousseau's qualifications are not only adequate in the general, qualitative sense, but are also specific the matters he proposes to address.  The Court should, therefore, deny Plaintiff's Motion.

### B. DR. ROUSSEAU'S OPINIONS ARE RELIABLE

**1. Dr. Rousseau's opinions regarding Mr. Kessee's psychiatric diagnoses.**

Once the Court determines that an expert is qualified, the Court must then assess whether the expert's opinions are reliable and relevant. *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 883-884 (10th Cir. 2005), *quoting Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 113 S.Ct. 2786 (1993); *see also General Electric Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Kumho*, 526 U.S. 137 (1999); *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003).  "This obligation involves a two-part inquiry." *Norris*, 397 F.3d at 883-884.  First, the district court must "determine if the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" *Norris*, 397 F.3d at 883-884, *quoting Daubert*, 509 U.S. at 592, 113 S.Ct. 2786.  "In making this determination, the district court must decide 'whether the reasoning or methodology underlying the testimony is scientifically valid . . . '" *Norris*, 397 F.3d at 884, *quoting*

*Daubert*, 509 U.S. at 592-593, 113 S.Ct. 2786.  "Second, the district court must further inquire into whether proposed testimony is sufficiently 'relevant to the task at hand.'" *Norris*, 397 F.3d at 884, *quoting Daubert*, 509 U.S. at 597, 113 S.Ct. 2786. Relevance depends upon "whether [that] reasoning or methodology properly can be applied to the facts in issue." *Daubert, 509 U.S.* at 593, 113 S.Ct. 2786.

As Dr. Rousseau is undoubtedly qualified to provide his opinions, the Court next must determine the admissibility of Dr. Rousseau's opinions and "post-mortem psychiatric assessment" of Kessee. This assessment is critical to Defendants' case and will be used to assist the Court and jury by providing "a better understanding of Mr. Kessee's mental and behavioral functioning" prior to his death, which includes an analysis of Kesssee's prognosis should he have not tragically overdosed. (Exh. 1 - Report of Rousseau, p. 1).

Dr. Rousseau did not reach his conclusions lightly. To form his opinions, Dr. Rousseau conducted a significant review of Kessee's medical records and analyzed Kessee's various issues in conjunction with Dr. Rousseau's extensive education and experience and available scientific materials and statistics. (Exh. 2 - Depo of Rousseau, p. 100, line 16 through p. 101, line 3; p. 101, lines 15-20; p. 112, line 21 through p. 113, line 12; p. 114, lines 4-14; p. 123, lines 9-21). The medical records contain objective third party observations of Kessee and descriptions of statements made by Kessee. Such information could be analogized to party admissions, which courts all over the country recognize as extremely reliable sources of information. A person's past history is important in determining his psychiatric diagnosis. (Exh. 2 - Depo of Rousseau, p. 69, lines 1-2). It is undisputed that Kessee had a long history of psychiatric disorders and presented to the

7

Defendants on January 16, 2018 with schizoaffective disorder, polysubstance abuse, anxiety disorders, and attention deficit disorder with hyperactivity ADHD. (Exh. 2 - Depo of Rousseau, p. 74, lines 7-11).

Dr. Rousseau also reviewed various videos, records and other items produced in discovery and depositions taken in the case, including those of Kessee's closest family members. (Exh. 1 - Report of Rousseau, p. 1-2). As Kessee has passed away, Dr. Rousseau was unable to interview or personally assess his condition. The depositions of Kessee's family members, thus, provided a window in to his life, issues, and ultimate death. Thus, there is no question that Dr. Rousseau's testimony is based upon sufficient facts and data.

Plaintiff's argument that the assessment is unreliable because Dr. Rousseau did not personally meet with or examine Kessee while he was alive holds no water. The post-mortem psychiatric assessment conducted by Dr. Rousseau is similar to a "psychological autopsy" and a number of courts have held that a psychological autopsy is a generally accepted methodology for determining the mental state of a deceased or otherwise unavailable person. *See Blanchard v. Eli Lilly & Co.,* 207 F.Supp.2d 308, 313 & n.2 (D.Vt. 2002) (citing *Miller v. Pfizer, Inc.,* No. 99-2326, 1999 WL 1063046 (D.Kan. Nov. 10, 1999)); *Cloud v. Pfizer Inc.,* 198 F. Supp. 2d 1118, 1135 (D.Ariz. 2001); *see Herrin v. Treon,* 459 F.Supp.2d 525, 545 (N.D. Tex. 2006); *Yanco v. United States,* 45 Fed. Cl. 782, 787 (Fed. Cl. 2000); *Schad v. Schriro,* 454 F.Supp.2d 897, 948 (D.Ariz. 2006).

Further, we look to the ethics rules and guidelines of leading psychiatry organizations. For example, The American Academy of Psychiatry and the Law has also adopted Ethics Guidelines for the Practice of Forensic Psychiatry. (Exh. 2 - Depo of

Rousseau, p. 140, lines 16-24; p. 143, lines 14-21; (Exh. 3 - *Ethics Guidelines for Forensic Psychiatry*).  While it is true that a clinical evaluation may be necessary in some cases, this is not without exception.

> Honesty, objectivity, and the adequacy of the clinical evaluation may be called into question when an expert opinion is offered without personal examination.  **For certain evaluations (such as record reviews for malpractice cases), a personal examination is not required. In all other forensic evaluations, if, after appropriate effort, it is not feasible to conduct a personal examination, an opinion may nonetheless be rendered on the basis of other information.**  Under these circumstances, it is the responsibility of psychiatrists to make earnest efforts to ensure that their statements, opinions and any reports or testimony based on those opinions, clearly state that there was not personal examination and not any resulting limitations to their opinions.

(Exh. 3 - *Ethics Guidelines for Forensic Psychiatry*, p. 3 (emphasis added)).

The American Psychiatric Association Publishing Textbook of Forensic Psychiatry adopted the American Academy of Psychiatry and the Law with regard to assessments without a personal interview:

> Certain situations require that evaluators conduct assessments without an interview (e.g., suicide malpractice cases, psychological autopsies, and testamentary capacity cases in which the evaluee is deceased).  At times, in criminal cases, evaluators are retained by the prosecution but are declined access to the evaluee and are limited to a record review.  The AAPL ethics guidelines state that appropriate efforts should be made to conduct a personal examination, but if not possible, evaluators may nevertheless come to certain conclusions.   In these cases, evaluators should state that no personal examination took place and note limitations, if any, to the opinions rendered.

(Exh. 4 - *American Psychiatric Association Publishing Textbook of Forensic Psychiatry*, p. 43).

This is exactly the case presented here. It was impossible for Dr. Rousseau to conduct a clinical assessment of Mr. Kessee because he died.  As such, it was appropriate

under both case law and the Ethical Guidelines for Dr. Rousseau to complete his assessment and render an opinion about Mr. Kessee's psychiatric presentation based upon previous medical records and information from Mr. Kessee's family members. Dr. Rousseau's report is in accord with the above ethics guidelines, as he specifically notes in his expert report that a personal interview/examination was not completed as a result of Mr. Kessee's passing. Because Dr. Rousseau's methodology (*i.e.*, his reliance on medical records and not a personal examination) is appropriate and generally accepted in the psychiatry profession, Plaintiff's attempts to exclude this opinion must fail.

Second, it is not improper for Dr. Rousseau to review and consider Mr. Kessee's psychiatric history and personal history when completing a post-mortem assessment. (Exh. 4 - *American Psychiatric Association Publishing Textbook of Forensic Psychiatry*, p. 44-45). The American Psychiatry Association specifically states that "[e]liciting information about previous episodes of psychiatric illness is also helpful. This information can be checked against previous records gathered as collateral information." (Id. at p. 44). "By examining psychiatric history, psychiatrists may be able to formulate the effect of the specific event in question on the course of an illness as well as an evaluee's response to treatment and levels of impairment caused by illness at various times." (Id. at p. 45). Likewise, a patient's personal history is helpful in assessing the longitudinal course of an individual's development. (Id. at p. 45). Notably, an "[e]liciting social, interpersonal, and relationship histories is also helpful in assessing the individual's ability to maintain intimate and other relationships. (Id. at p. 45).

Third, Dr. Rousseau's diagnoses were based on the Diagnostic and Statistical

Manual, Fifth Edition ("DSM-5), which is published by the American Psychiatric Association.  This is the primary diagnostic manual of not only psychiatrists, but all mental health professionals.  It is also accepted by the American Medical Association and the American Psychological Association.  The diagnoses at issue are based upon the DSM-5, and as already addressed, the methodology supporting these opinions is peer reviewed and generally accepted. (Exh. 3 - *Ethics Guidelines for Forensic Psychiatry;* Exh. 4 - *American Psychiatric Association Publishing Textbook of Forensic Psychiatry*).

Given the clear guidelines of the American Psychiatric Academy and the American Academy of Psychiatry and the Law's Ethics Guidelines for the Practice of Forensic Psychiatry, it is clear that Dr. Rousseau relied upon an accepted methodology in formulating and opining about Mr. Kessee's psychiatric diagnoses.  While Plaintiff is free to disagree with the analysis of Dr. Rousseau, this does not make his opinions inadmissible. Therefore, this opinion is reliable, and Plaintiff's *Motion* should be denied.

**2.  Dr. Rousseau's opinion regarding causation.**

Plaintiff also argues that Dr. Rousseau cannot opine about the cause of Mr. Kessee's death. Plaintiff asserts this is because he is not a toxicologist. However, Dr. Rousseau clearly testified that he is capable of opining about Mr. Kessee's psychiatric medications and their impact, particularly if he overdosed on the same. (Exh. 2 - Depo of Rousseau, p. 16, line 23 through p. 17, line 2.

Further, despite Plaintiff's assertions to the contrary, Dr. Rousseau did *not* opine that Mr. Kessee "simply" died of a drug overdose.  Likewise, Dr. Rousseau's opinion was not based upon the general notion that that people who use drugs tend to die sooner.

Instead, based upon a complete examination of the relevant materials and in conjunction with his education, experience, and expertise, Dr. Rousseau concluded Mr. Kessee died of a toxic overdose of prescription medications and amphetamines. Ultimately, the medical examiner came to the same conclusion.  Therefore, since Dr. Rousseau's opinion as to the cause of Mr. Kessee's death is reliable, the Court should deny Plaintiff's attempts to exclude this opinion.

**3.  Dr. Rousseau's opinion regarding Mr. Kessee's decreased life expectancy.**

Dr. Rousseau also opined that Mr. Kessee's psychiatric conditions, including his drug use, decreased his life expectancy. In her Motion, Plaintiff also contends that this opinion is baseless and unsupported by any literature or accepted medical guidance.  This Court should reject Plaintiff's argument.

Dr. Rousseau testified that Mr. Kessee's life expectancy would have decreased based upon his psychiatric diagnoses and conditions, specifically including his drug use. (Exh. 2 - Depo of Rousseau, p. 109, lines 11 through p. 119, lines 18.  Dr. Rousseau testified that the statistics show a wide range of possible decreases in life expectancy, and Dr. Rousseau provided the medical literature to support his opinion.

To the extent that Plaintiff asserts that Dr. Rousseau's opinion is not based on any accepted probability, this contention also fails. The law is clear that an expert's testimony does not require "magic words," only that it be stated with certainty and probability. *Greig v. Botros*, 2012 WL 718914 (D.Kan. March 5, 2012). "In the absence of an alternative [] convention pertinent to the case, it may be assumed that [expert witnesses] base their calculations and opinion on the normal general standards of their profession[.]" *Jager v.*

*Andrade-Barraza*, 2019 WL 6896643 (D.N.M. Dec. 18, 2019), *quoting Thompson v. Doane Pet Care Co*., 470 F.3d 1201, 1203 (6th Cir. 2006)(declining to strike an expert's report "because he did not expressly use the magic words "based on generally accepted accounting principles.") Whether an expert's testimony is expressed in terms of a reasonable probability does not depend upon the semantics of the expert or his use of any particular term or phrase. Thus, opinions expressed in terms such as "could," "most probably," or "is similar to" are properly received. 5 HANDBOOK OF FED. EVID. § 702.1, *Testimony by expert witnesses: an overview* (9th Ed.).

In the case at bar, opinions are based on reasonable degree of medical probability. Plaintiff's arguments to the contrary are unpersuasive. Dr. Rousseau provided a twenty-two (22) page expert report, and additionally, he was deposed for several hours. Considering the entirety of his report and deposition testimony, it is without question that Dr. Rousseau's opinions are based on valid grounds and analysis. Any purported failure to use "magic language" is unpersuasive. In taking his deposition testimony and expert report in their entirety, it is undisputed that Dr. Rousseau's opinions satisfy the requirements of Rule 702. Plaintiff has not, and cannot show, that any of his methodology was incorrect or that he incorrectly applied such methodology to the facts of this case.

### 4. Dr. Rousseau's Opinions in the *Cox v. Glanz* case.

Plaintiff spends a significant amount of time addressing a ruling by the Northern District Court in *Cox v. Glanz,* 2014 WL 940459 (N.D. Okla. March 11, 2014) for her contention that Dr. Rousseau's methodology is not reliable. The *Cox* case has no application here. First, in *Cox*, Dr. Rousseau was not provided medical records to review

and analyze for his assessment, as they were not available and the individual at issue was deceased.  As a result, Dr. Rousseau used recorded conversations with the deceased individual to make his assessments.  However, the court ultimately held that the recorded conversations were inadmissible at trial, and therefore, Dr. Rousseau's opinions as a result.

This is not the case presented here.  As an initial matter, Dr. Rousseau did not learn of the *Daubert* challenge until after it occurred, and he was not provided the opportunity to respond to the same. Rousseau has established a reliable methodology for the preparation of his assessment of and opinions regarding Kessee. As stated herein, he reviewed *thousands* of pages of medical records spanning more than ten years before Kessee's death. (Exh. 1 - Report of Rousseau, pp. 1-2; Exh. 2 - Depo of Rousseau, p. 21, line 12 through p. 22, line 17). Dr. Rousseau relied upon at least thirteen articles, studies and texts to support his findings. (Exhs. 5-16 - Dr. Rousseau Literature). He further reviewed the depositions of Kessee's grandmother, uncle, and father. (Exh. 1 - Report of Rousseau, pp. 2). While he did not specifically rely upon them, Dr. Rousseau also reviewed body camera video, hospital surveillance video, and the depositions of at least four medical providers who saw Kessee on January 16, 2018. (Exh. 2 - Depo of Rousseau, p. 24, line 9 through p. 25, line 22). The methodology used by Dr. Rousseau in arriving at his opinions is much more substantial than that in *Cox.* Defendants do not contend that Dr. Rousseau's work in *Cox* was not reliable; rather, they merely point out that Dr. Rousseau reviewed considerably more medical records, scientific articles, depositions, videos, etc. than noted in the *Cox* case. Additionally, as already discussed above, Dr. Rousseau's opinions were prepared in accord with the ethical requirements of the American Academy of Psychiatry and the Law

14

Ethics Guidelines for the Practice of Forensic Psychiatry and the American Psychiatric Association Publishing Textbook of Forensic Psychiatry. Finally, the medical records upon which Dr. Rousseau's opinions are based in this case are admissible, unlike the situation in *Cox*.  Because the *Cox* ruling is inapplicable to facts in this case, Plaintiff's reliance on the same is misplaced.

Plaintiff has not, and cannot show, that there is any lack of reliability or an insufficient factual foundation for Dr. Rousseau's opinion.  On a *Daubert* challenge, it is not the role of the Court to declare whether an expert's opinion is in fact correct. Rather, it is the role of the Court to determine whether Dr. Rousseau is qualified to offer the opinions and whether he utilized a reliable methodology in forming his opinions. Any dispute Plaintiff has with the outcome of Dr. Rousseau's methods is a matter for cross-examination, not exclusion under Rule 702. Accordingly, Plaintiff's *Motion* should be denied.

**5. Plaintiff cannot, and has not, shown that Dr. Rousseau's testimony is unreliable under Rule 702.**

As shown above, all of Dr. Rousseau's opinions are supported by appropriate methodology as reflected in Dr. Rousseau's expert report and deposition. Merely because Plaintiff, her counsel, or her experts disagree with his methodology or opinions does not render Dr. Rousseau's opinions or testimony unreliable. Rather, such criticisms would go to the weight of his testimony, not its admissibility.

To be reliable under Daubert, an expert's scientific testimony must be based on scientific knowledge, which implies a grounding in methods and procedures of science based on actual knowledge, not subjective belief or unsupported speculation. *Dodge v.*

*Cotter Corp.*, 328 F.3d 1212 (10th Cir. 2003). ***An inference or assertion*** must be derived by the scientific method and must be supported by appropriate validation, in other words, good grounds based on what is known, to be admissible. *Id*. The proponent of the testimony must show that the method employed by the expert in reaching his or her conclusion is scientifically sound and that the opinion is based on facts which satisfy the governing rule's reliability requirements. *Id*. Thus, the test under *Daubert* does not require that the opinion have "the best foundation" or be "demonstrably correct," but only that the "particular opinion is based on valid reasoning and reliable methodology." *Qeisi v. Patel*, 2007 WL 527445, *4 (E.D.Pa. Feb. 9, 2007).

Here, Dr. Rousseau's methodology is reliable and based on sufficient facts and data. Likewise, the methodology is widely and generally supported in the psychiatric community. In forming his opinions, Dr. Rousseau reviewed thousands of medical records depositions, portions of video footage, the autopsy report, and the Oklahoma Department of Corrections Reception Information for Mr. Kessee, among other things.  All of his opinions are based upon accepted and reliable methodology and applied the facts and data present in this case.   As such, Plaintiff is unable to establish that Dr. Rousseau's opinions are so fundamentally unsupported that thy can offer no assistance to the jury.  Other than Plaintiff's unsupported assertions, she fails to explain how reaching a different conclusion from that of her own experts amounts to an impermissible analytical gap with regard to the relevant opinion.

Plaintiff has not, and cannot show, that there is any lack of reliability or an insufficient factual foundation for Dr. Rousseau's opinion.  On a *Daubert* challenge, it is

16

not the role of the Court to declare whether an expert's opinion is in fact correct. Rather, it is the role of the Court to determine whether Dr. Rousseau is qualified to offer the opinions and whether he utilized a reliable methodology in forming his opinions. Any dispute Plaintiff has with the outcome of Dr. Rousseau's methods is a matter for cross-examination, not exclusion under Rule 702. Accordingly, Plaintiff's *Motion* should be denied.

## III.   DR. ROUSSEAU'S OPINIONS ARE RELEVANT AND WILL BE HELPFUL TO THE JURY

Dr. Rousseau's testimony and opinions will educate the jury and allow it to put into perspective the complexity of Kessee's psychiatric presentation on January 16, 2018. Based on Dr. Rousseau's review of the evidence, in conjunction with his training and experience, he can opine that Kessee's presentation to the Defendants on the night in question demonstrated symptoms of at least one, if not several, of his diagnosed psychiatric disorders. (Exh. 2 - Depo of Rousseau, p. 69, line 23 through p. 70, line 19; p. 73, lines 15-18; p. 75, lines 8-14; p. 76, lines 18-21). This is extremely relevant to the Plaintiff's claims of deliberate indifference against the individual defendants. It is her burden to establish that the individuals were subjectively aware that Kessee was displaying obvious signs of a serious health condition, such as an overdose. However, Dr. Rousseau's expert opinion supports the arguments by Defendants Brown, Canaan, Andrews, Barr, and Shifflett that what they actually saw and recognized was someone having psychological issues. (See Doc. 198, 201, 250, 251, 253).

For instance, Kessee's speech pattern on the night of January 16, 2018, which was mumbled and garbled at times, would be consistent with his schizoaffective disorder. (Exh.

2 - Depo of Rousseau, p. 71, lines 3-8). It would have been difficult for even a medically-trained psychiatrist to determine whether Kessee was exhibiting symptoms of his polysubstance abuse versus his schizoaffective disorder or anxiety. (Exh. 2 - Depo of Rousseau, p. 72, lines 18-25). Nevertheless, Dr. Rousseau's opinion is that the behaviors exhibited by Kessee were consistent with his psychiatric diagnoses. (Exh. 2 - Depo of Rousseau, p. 80, line 25 through p. 81, line 8).  There were times in his past, just as on January 16, 2018, when Kessee's cognitive functioning and thought processes vacillated between normal and abnormal and where his ability to communicate varied. (Exh. 2 - Depo of Rousseau, p. 74, lines 12-23).

Dr. Rousseau has further opined that Kessee's intentional abuse of substances oftentimes exacerbated his underlying psychiatric conditions. (Exh. 2 - Depo of Rousseau, p. 73, lines 18-20). Kessee's use of illicit drugs and poor compliance with his medication regimen showed poor judgment. (Exh. 2 - Depo of Rousseau, p. 106, lines 4-24). This destructive behavior is important for the jury to understand and consider when determining whether Defendants, or Kessee himself, were the proximate cause of his death and damages. In fact, Dr. Rousseau opines that for an individual like Kessee, with severe psychiatric disorders coupled with poor health, there is a likelihood, moreso a certainty, that he will have a decreased life expectancy. (Exh. 2 - Depo of Rousseau, p. 108, lines 5-22; p. 110, lines 8-11; p. 112, line 21 through p. 113, line 2). All of these factors are completely out of the hands of the Defendants and a jury would benefit from a medical doctor like Dr. Rousseau explaining the highly technical and specialized medical aspects of Kessee's condition on January 16, 2018.

18

Finally, Plaintiff asserts that Kessee's past medical records and psychiatric diagnoses are not relevant because (1) they occurred prior to the care at issue and (2) because no Defendant relied upon them. This is an illogical argument. Without question, Kessee's prior medical history is relevant. It was Kessee's previously diagnosed psychiatric disorders that and the accompanying behaviors that impacted how the Defendants interacted with him that day. Dr. Rousseau testified that he reviewed the medical records from January 16, 2018, but did not focus solely on these events. Kessee's behavior the night of the accident verified the diagnoses of Dr. Rousseau. All of these facts and Dr. Rousseau's opinions are relevant to this lawsuit, and Plaintiff's *Motion* should be denied accordingly.

A review of the case law after *Daubert* shows that the rejection of expert testimony is the *exception rather than the rule. Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). As the Court in *Daubert* stated: "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 595 (1993). Likewise, Rule 702 was not intended to provide an excuse for an automatic challenge to the testimony of every expert. *See Kumho Tire Co. v. Carmichael,* 119 S.Ct. 1167, 1176 (1999) (noting that the trial judge has the discretion "both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability

of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises.").

Plaintiff may disagree with Dr. Rousseau's medical opinions, and is free to explore the perceived flaws in the factual basis for those opinions on cross-examination, but she has not established that Dr. Rousseau's opinions should be excluded under the standard espoused in *Daubert.*

## IV.   **DEFENDANTS AND DR. ROUSSEAU REQUEST AN EVIDENTIARY HEARING ON PLAINTIFF'S DAUBERT MOTION**

In the event the Court does not summarily deny Plaintiff's *Motion*, Defendants and Dr. Rousseau respectfully request that the Court hold an evidentiary hearing so that Dr. Rousseau has the opportunity to present his opinions and the bases upon which he relies to the Court for its consideration.

WHEREFORE, premises considered, Defendants Amason, Andrews, Barr, Gibson, Shifflett, Brown, Canaan, Humphrey, and the City of Norman request that Plaintiff's Motion to Exclude Testimony of Dr. Rousseau be denied in its entirety.

Respectfully Submitted,

s/Jessica L. Dark
Robert S. Lafferrandre, OBA #11897
Randall J. Wood, OBA #10531
Jessica L. Dark, OBA #31236
PIERCE COUCH HENDRICKSON
   BAYSINGER & GREEN, LLP
Post Office Box 26350
Oklahoma City, Oklahoma 73126
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
Email: jdark@piercecouch.com
***Attorneys for Defendants Amason, Gibson, Andrews, Barr, and Shifflett***

s/ Ambre C. Gooch
(signed with permission)
Ambre C. Gooch, OBA No. 16586
COLLINS, ZORN  & WAGNER, P.C.
429 N.E. 50th Street, 2nd Floor
Oklahoma City, OK 73105-1815
Telephone:  (405) 524-2070
Facsimile:  (405) 524-2078
E-mail:   acg@czwlaw.com
***Attorney for Defendants Brown and Canaan***

s/ Rickey J. Knighton
(signed with permission)
Rickey J. Knighton II, OBA No. 17257
P.O. Box 370
201 West Gray
Norman, Oklahoma 73070
Telephone: (405) 217-7700
Facsimile:  (405) 366-5425
Email:  rick.knighton@normanOK.gov
***Attorney for City of Norman and Keith Humphrey***

21

## CERTIFICATE OF SERVICE

I hereby certify that on July 22 , 2021, I electronically transmitted this filing to the Clerk of Court using the ECF System for filing and transcmittal of a Notice of Electronic Filing to the following ECF registrants:

Chris J. Hammons
Jason M. Hicks
Jonathan R. Ortwein
LAIRD, HAMMONS, LAIRD, P.L.L.C.
1332 SW 89th Street
Oklahoma City, Oklahoma 73159
Telephone: (405) 703-4567
Facsimile:  (405) 703-4061
chris@lhllaw.com
jason@lhllaw.com
jonathan@lhllaw.com
*Attorneys for Plaintiff*

Sean P. Snider
Austin J. Young
Anthony C. Winter
JOHNSON, HANAN VOSLER
HAWTHORNE & SNIDER
9801 North Broadway Extension
Oklahoma City, Oklahoma 73114
Telephone: (405) 232-6100
Facsimile:  (405) 232-6105
ssnider@johnsonhanan.com
ayoung@johnsonhanan.com
awinter@johnsonhanan.com
*Attorney for Defendants,*
*Turn Key Health Clinics, LLC*
*and Rickert*

Brandon Whitworth
Emily Jones Ludiker
David A. Russell
RODOLF & TODD
15 E. 5th Street, Sixth Floor
Tulsa, Oklahoma 74103
Telephone: (918) 295-2100
Facsimile:  (918) 295-7800

Glen D. Huff
Robert D. Hoisington
Kaitlyn Dunn
FOLIART, HUFF, OTTAWAY & BOTTOM
201 Robert S. Kerr Avenue, 12th Floor
Oklahoma City, Oklahoma 73102
Telephone: (405) 232-4633
Facsimile:  (405) 232-3462
foliartfirm@oklahomacounsel.com
roberthoisington@oklahomacounsel.com
kaitlyndunn@oklahomacounsel.com
*Attorneys for Defendant,*
*Norman Regional Hospital Authority*

Rickey J. Knighton, II
Jeanne Snider
City Attorneys' Office
P.O. Box 370
201 West Gray
Norman, Oklahoma 73070
Telephone: (405) 217-7700
Facsimile:  (405) 366-5425
rick.knighton@ci.norman.ok.us
jeanne.snider@ci.norman.ok.us
*Attorneys for Defendants,*
*City of Norman, Humphrey, Canaan*
*and Brown*

Ambre C. Gooch
COLLINS, ZORN & WAGNER, P.C.
429 N.E. 50th Street, 2nd Floor
Oklahoma City, Oklahoma 73105
Telephone: (405) 524-2070
Facsimile:  (405) 524-2078
acg@czwlaw.com
*Attorney for Defendants*
*Kyle Canaan and Daniel Brown*

22

brandonw@rodolftodd.com
emily@rodolftodd.com
david@rodolftodd.com

*Attorneys for Defendants,*
*Emergency Services of*
*Oklahoma, P.C., Dr. Steven Roberts*
*and Justin Holbrook*

s/Jessica L. Dark
Jessica L. Dark