IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) PATRICIA THOMPSON, as Personal Representative of the Estate of MARCONIA LYNN KESSEE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. CIV-19-113-SLP |
| (1) CITY OF NORMAN, et al., | ) ) | |
| Defendants. | ) | |

_____

**DEFENDANT BROWN'S REPLY IN SUPPORT OF
HIS MOTION FOR SUMMARY JUDGMENT**
_____


Ambre C. Gooch, OBA No. 16586
COLLINS, ZORN & WAGNER, P.C.
429 N.E. 50th Street, 2nd Floor
Oklahoma City, OK 73105-1815
Telephone:  (405) 524-2070
Facsimile:  (405) 524-2078
E-mail:  acg@czwlaw.com

ATTORNEY  FOR  DEFENDANT  DANIEL
BROWN


July 29, 2021

## <u>TABLE OF CONTENTS</u>

<u>**PAGE**</u>

TABLE OF CONTENTS .................................................................................................... i

TABLE OF AUTHORITIES ..................................................................................... ii - iv

LIST OF EXHIBITS ........................................................................................................ v

I.    DELIBERATE INDIFFERENCE ................................................................... 2

II.    NEGLIGENCE ................................................................................................. 11

III.   ASSAULT AND BATTERY .......................................................................... 13

## TABLE OF AUTHORITIES

**CASES**                                                                **PAGE**

*Al-Turki v. Robinson*, 762 F. 3d 1188 (10th Cir. 2014)........................................................6

*Barton v. Taber,* 820 F. 3d 958 (8th Cir. 2016)...................................................................7

*Blocker v. ConocoPhillips Company*, 380 F. Supp. 3d 1178 (W.D. Okla. 2019).............11

*Border v. Trumbull County Board of Commissioners*, 414 Fed. Appx. 831 (2011)..........8

*Boretti v. Wiscomb*, 930 F. 2d 1150 (6th Cir. 1991) ..........................................................6

*Brousseau v. Haugen*, 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed. 2d 583 (2004).................3

*City v. Escondido v. Emmons,* ___U.S. ___, 139 S. Ct. 500, 202 L. Ed. 455(2019) ..........4

*Cooper v. Millwood Independent School District No. 37*,
1994 OK CIV APP 114, 887 P. 2d 1370.....................................................................11, 12

*Cox v. Wilson,*  971 F. 3d 1159 (10th  Cir. 2020)............................................................3, 4

*Estate of Duke v. Gunnison County*, 752 Fed. Appx. 669 (10th Cir. 2018).................5, 10

*Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L.Ed. 2d 811 (1994) .................2

*Frasier v. Evans,* 992 F. 3d 1013 (10th Cir. 2021) ...............................................3, 4, 5, 10

*Garcia v. Salt Lake County*, 768 F. 2d 303 (1985).........................................................5, 10

*Gomes v. Woods*, 451 F. 3d 1122 (10th Cir. 2006) ............................................................5

*Gowens v. Barstow*, 2015 OK 85, 364 P. 3d 644 .............................................................12

*Hodge v. Keene*, 2013 WL 372460 at *8 (W.D. Okla. January 30, 2013) .......................15

*Hope v. Pelzer,* 536 U.S. 739, 122 S, Ct, 2508, 153 L.Ed. 2d 666 (2002).........................5

*Hutto v. Davis*, 972 F. Supp. 1372, (W.D. Okla. 1997) .............................................11, 12

*Jackson v. Mercy Health Center, Inc.,* 1993 OK 155, 864 P. 2d 839 ............................... 11

*Kisela v. Hughes,* 584 U.S. ___, 138 S. Ct. 1148, 200 L.Ed. 2d 449 (2018) ...................... 4

*Krout v. Goemmer*, 583 F. 3d 557 (8th Cir. 2009) .......................................... 9, 10

*Letterman v. Does*, 789 F. 3d 856 (8th Cir. 2015) ............................................. 9

*Lewis v. Wallenstein*, 769 F. 2d 1173 (7th Cir. 1985) ......................................... 7

*Martinez v. Beggs,* 563 F. 3d 1082 (10th Cir. 2009) ...................................... 3, 10

*Mata v. Saiz*, 427 F. 3d 745 (10th Cir. 2005) ................................................ 6

*Morales v. City of Oklahoma City,* 2010 OK 9; 230 P.3d 869.............................. 12, 13, 15

*Mullenix v. Luna*, 577 U.S. 7, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) ......................... 4

*Olsen v. Layton Hills Mall*, 312 F. 3d 1304 (10th Cir. 2002) ................................. 4

*Perry v. City of Norman*, 2014 OK 119, 341 P. 3d 689 ..................................... 13

*Phillips v. Roane City, Tenn.*, 534 F. 3d 551 (6th Cir. 2008).......................................... 7, 8

*Quintana v. Santa Fe County Board of Commissioners,*
973 F. 3d 1022 (10th Cir. 2020) ......................................................... 2, 3, 5, 7, 10

*Salazar v. City of Oklahoma City,*
2016 WL 4150936 (W.D. Okla. August 4, 2016) ...................................... 11, 12

*Samuel v. City of Broken Arrow,* 506 Fed. Appx. 751 (10th Cir. 2012) ............................ 12

*Sealock v. Colorado,* 218 F. 3d 1205 (10th Cir. 2000) ....................................... 6

*Strain v. Regalado*, 977 F. 3d 984, (10th Cir. 2020) .......................................... 3

*Taylor v. Riojos,* ___ U.S.___, 141 S. Ct. 52, 208 L.Ed. 2d 164 (2020)............................ 5

*Trinity Baptist Church v. Brotherhood Mutual Insurance Services*,
2014 OK 106, 341 P. 3d 75 ............................................................. 11

*Tuffy's, Inc. v. City of Oklahoma City,* 2009 OK 4, 212 P. 3d 1158 ........................... 13, 15

*Varner v. City of El Reno,* 2011 WL 13113324 (W.D. Okla. March 17, 2011) ............... 15

## <u>STATUTES</u>

51 O.S. § 163(C) ...................................................................................... 11, 15

51 O.S. §155(6) ............................................................................................ 12

## <u>LIST OF EXHIBITS</u>

Exhibit 32    Excerpts of the deposition of Jeff Reames taken on June 1, 2021

Exhibit 33    Excerpts of the deposition of Keith Humphrey taken on December 21, 2020

Exhibit 34    Excerpts of the deposition of Tim Tipton taken on June 4, 2021

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) PATRICIA THOMPSON, as Personal | ) | |
| Representative of the Estate of | ) | |
| MARCONIA LYNN KESSEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. CIV-19-113-SLP |
| | ) | |
| (1) CLEVELAND COUNTY SHERIFF, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT BROWN'S REPLY IN SUPPORT OF
HIS MOTION FOR SUMMARY JUDGMENT**

Plaintiff admits Brown's Material Facts 7, 8, 10, 11, 12, 13, 14, 17, 21, 22, 23, 24, 25, 26, 28, 29, 30 and 31.  Thus, she has admitted: Kessee was "wigging out,"  "acting up," and exhibiting symptoms of neurological decline and partial seizures while still in the NRH ED waiting room before Brown arrived (Facts 7, 8, 13). Plaintiff "denies" Facts 19 and 32, but does not cite any evidence to controvert the expert medical testimony that tremors, loss of balance, shaking and sweating are common symptoms of someone under the influence of illegal substances, and that it would have been impossible for non-clinically trained law enforcement personnel to recognize that Kessee's condition indicated multiple drug toxicities. *See* Doc. 305, pp. 2-3.

As to Facts 1, 2, 5 and 6, Plaintiff does not dispute that triage nurse Kerry Hartman triaged Kessee before he was seen in the ER, watched Kessee fall while in the ER, and observed Kessee in the ER waiting room after he was discharged.  Plaintiff also does not dispute that Kessee was causing a disturbance in the waiting room, including mumbling

and acting as if he was hearing voices, that Hartman went over to check out this disturbance, and that she then told security guard Terry that Kessee had already been seen and discharged. *See* Doc. 305, pp. 1-2, admitting or partially admitting Facts 1, 2, 5 and 6. Instead of presenting evidence to affirmatively deny these critical facts, Plaintiff merely asserts they are irrelevant because there is no evidence Hartman's observations were conveyed to Brown. Plaintiff is incorrect.  The fact that a medical professional observed neurological decline, partial seizures, mumbling, and behavior that suggested Kessee was hearing voices, after Kessee had been discharged, yet did not conclude that these symptoms indicated Kessee needed to be sent back into the ER for further evaluation, is relevant because it demonstrates that these symptoms are not the type of symptoms which would have made it obvious to a layperson Kessee needed immediate medical attention.

As to Facts 18, 27, and 34, Plaintiff does not dispute that, based on the fact that Kessee had recently been treated and discharged from the hospital,  Brown did not believe Kessee was in need of medical treatment.  *See* Doc. 305, pp. 2-3.  Instead Plaintiff "denies" these facts based on the assertion that "the subjective prong of the deliberate indifference inquiry must be decided by a jury."  This too is incorrect, as is discussed below.

## I.    DELIBERATE INDIFFERENCE.

Under *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L.Ed. 2d 811 (1994), and official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must draw the inference. Quintana v. Santa Fe County Board of Commissioners,* 973 F. 3d 1022, 1029 (10th Cir. 2020), citing *Farmer* at 837.  While it is true that a plaintiff may rely on circumstantial evidence to establish the

defendant knew of a substantial risk, knowledge of the risk cannot be imputed based on speculation. *Quintana* at 1031, n.3. Thus, Plaintiff cannot create a material question of fact simply by speculating that the jury might reject Brown's explanation of why he did not realize Kessee needed medical treatment. Moreover, while a factfinder may conclude a defendant knew of a substantial risk from the very fact that the risk was obvious, this does not mean that the subjective element of the deliberate indifference test may never be decided on summary judgment. Instead, Tenth Circuit precedent effectively limits this exception by requiring that such risks present themselves as "obvious" to the so-called "reasonable man." *Quintana* at 1029.

The subjective prong of the deliberate indifference inquiry is routinely decided on summary judgment when the defense of qualified immunity is raised. It was in *Quintana,* at pp. 1029-1031. It was in *Strain v. Regalado*, 977 F. 3d 984, 994, n.7 (10th Cir. 2020). It was in *Martinez v. Beggs,* 563 F. 3d 1082, 1089-1090 (10th Cir. 2009), and it has been in numerous other cases. Qualified immunity is designed to spare a defendant not only unwarranted liability but also the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit. *Quintana* at 1028. See also, *Brousseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed. 2d 583 (2004) (If the law at the time of the incident did not clearly establish the officer's conduct would violate the Constitution, the officer should not be subject to liability or even the burdens of litigation.)

Qualified immunity applies when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Frasier v. Evans,* 992 F. 3d 1013, 1014 (10th Cir. 2021), citing *Cox v. Wilson,* 971

F. 3d 1159, 1171 (10th Cir. 2020), *City v. Escondido v. Emmons,* ___U.S. ___, 139 S. Ct.
500, 503, 202 L. Ed. 455(2019) and *Kisela v. Hughes,* 584 U.S. ___, 138 S. Ct. 1148, 1152,
200 L.Ed. 2d 449 (2018). Reasonableness is judged solely against the backdrop of the law
at the time of the incident. *Frasier* at 1015. Neither specific training received by an officer,
nor some general sense that most people would consider the officers' actions improper, are
relevant to the clearly-established law inquiry. *Id; Cox* at 1173. Typically, the precedent
must have clearly established the right "in light of the specific context of the case, not as a
broad general proposition." *Frasier* at 1014, citing *Mullenix v. Luna*, 577 U.S. 7, 136 S.
Ct. 305, 308, 193 L. Ed. 2d 255 (2015).

In *Frasier,* the plaintiff could not identify any on-point Tenth Circuit authority
which clearly established his right to record the police performing official duties in a public
place. *Id.* at 1020. Therefore, he relied on general constitutional rules protecting the
creation of speech and the gathering of news. *Id.* at 1021. Similarly, in the instant case,
Plaintiff argues that, despite the absence of factually similar cases, Brown should have
known his actions violated established law based on the general proposition that "the right
to custodial medical care was clearly established." *See* Doc. 305, at p. 24, citing *Olsen v.
Layton Hills Mall*, 312 F. 3d 1304, 1315 (10th Cir. 2002).[1] *Frasier* specifically rejected
this argument, stating:

> Mr. Frasier's attempt to distill a clearly established right applicable here
> from the general First Amendment principles protecting the creation of
> speech and the gathering of news runs headfirst into the Supreme Court's
> prohibition against defining clearly established rights at a high level of

---

[1] The medical condition at issue in *Olsen* was an OCD-induced panic attack. *Olsen* at 1316.

generality.  Mr. Fraiser fails to demonstrate how the alleged unlawfulness of the officers' conduct in retaliating against him for recording them follows immediately from the abstract right to create and gather news.  Furthermore, to the extent that Mr. Frasier relatedly asserts—referencing *Hope v. Pelzer* [536 U.S. 739, 741 122 S, Ct, 2508, 153 L.Ed. 2d 666 (2002) and its progeny[2]—that these general constitutional principles apply to these facts with obvious clarity, such that reasonable officers in the defendants' position would have known that their conduct was unlawful, his suggestion falls far from the mark.  That is because *Hope's* holding historically has been applied to only the rare obvious case involving extreme circumstances or particularly egregious misconduct.  Even a cursory consideration of these facts--in the light of cases like *Taylor* [*v. Riojos,* ___ U.S.___, 141 S. Ct. 52, 53, 208 L.Ed. 2d 164 (2020)] and *Hope*—makes clear that this is not such a rare case. (internal quotations and citations omitted) *Frasier* at 1021-1022.

The instant case is also "not such a rare case."  The Tenth Circuit has addressed four cases, and has granted qualified immunity in three of those cases, in which officers encountered individuals with symptoms similar to or more severe than those exhibited by Kessee.[3]  The conclusion the Tenth Circuit has reached is that unconsciousness presents an "obvious" risk, but characteristics common to intoxicated individuals do not.  *Quintana* at 1029; *Estate of Duke* at 673-674.  This is true even when post-mortem medical evidence establishes that the decedent died of medical issues other than intoxication. *Estate of Duke* at 674. All of the symptoms identified in Plaintiff's complaint, individually or taken

---

[2] Such as *Gomes v. Woods,* 451 F. 3d 1122, 1134 (10th Cir. 2006), which Plaintiff cites. *Gomes* relies on *Hope* for the proposition that clearly established law should not be treated as a "scavenger hunt" for factually similar cases.

[3] *Garcia v. Salt Lake County*, 768 F. 2d 303, 308 (1985), *Martinez v. Beggs,* 563 F. 3d 1082 (10th Cir. 2009), *Quintana v. Santa Fe County Board of Commissioners,* 973 F. 3d 1022 (10th Cir. 2020) and *Estate of Duke v. Gunnison County*, 752 Fed. Appx. 669 (10th Cir. 2018).  These cases were discussed in Brown's Motion for Summary Judgment (Doc. 198, pp. 17-19).

together, are consistent with intoxication.  Ex. 32, Depo. of Dr. Reames, pp. 126-128. Moreover, they are not the type of symptoms which a layperson would recognizing as indicating a need for immediate medical re-evaluation.  Ex. 32, Depo. of Dr. Reames, pp. 80, 105-106, 120-121, 131, 133.

The cases cited by Plaintiff do not support her position that Brown's failure to seek additional medical treatment for Kessee violated clearly established law. While some of Plaintiff's selective quotes, standing alone, may initially appear to support her argument, the facts of the cases demonstrate that Brown's actions do not rise to the level of deliberate indifference and that he is entitled to summary judgment.

The only defendant denied qualified immunity in *Al-Turki v. Robinson*, 762 F. 3d 1188 (10th Cir. 2014) was prison nurse who ignored the plaintiff's complaints of severe pain and vomiting over a period of several hours.  *Id.* at 1191-1192.  The district court granted qualified immunity to the non-medical defendants, finding they did not violate clearly established law by relying on the prison nurse's decision not to provide the plaintiff with a medical evaluation or treatment. *Id.* at 1190, n.1.  The defendants in *Mata v. Saiz*, 427 F. 3d 745 (10th Cir. 2005) were also medical professionals, and the denial of medical care in that case unfolded over several days. *Id.* at 750.[4]  The defendant in *Boretti v. Wiscomb*, 930 F. 2d 1150 (6th Cir. 1991) was a surgical nurse who refused to treat an inmate's surgical wound for five days. *Id.* at 1151-1152.  The only case cited by Plaintiff

---

[4] The Tenth Circuit stated in dicta that "Even a brief delay may be unconstitutional," citing *Sealock v. Colorado,* 218 F. 3d 1205 (10th Cir. 2000) as an example. However, *Sealock* also involved a delay of several hours (in taking an inmate with chest pains to the hospital). *See Mata* at 755, citing *Sealock* at 1210.

with a delay of less than several hours is *Lewis v. Wallenstein*, 769 F. 2d 1173 (7th Cir. 1985), in which the defendant was a doctor who ignored multiple calls to report to the emergency room for a period of 10 to 15 minutes after being notified of an emergency. *Id.* at 1178, 1173.  Brown is not a medical professional.

   *Barton v. Taber,* 820 F. 3d 958 (8th Cir. 2016), which Plaintiff describes as a "nearly factually identical case," is actually consistent with *Quintana*.  *Barton* held that a reasonable officer "would have recognized that failing to seek medical care for an intoxicated arrestee who exhibits symptoms substantially more severe than ordinary intoxication" violates the arrestee's constitutional rights, particularly when "the surrounding circumstances indicate a medical emergency exists." *Id.* at 967.[5] Plaintiff identifies several symptoms exhibited by both the decedent in *Barton* and Kessee in the instant case, such as "slurred speech" and falling to the ground, as evidence of symptoms more severe than ordinary intoxication.  However, she ignores the most severe symptom at issue in *Barton;* the individual became "unresponsive such that an officer was obliged to check for a pulse." *Id.* at 962, 966.  In other words, the Eighth Circuit agrees with the Tenth Circuit that a period of unconsciousness presents an obvious risk that other symptoms common to intoxication do not.

   In *Phillips v. Roane City, Tenn.*, 534 F. 3d 551 (6th Cir. 2008), Phillips was found

---

   [5] *Barton* noted that, in addition to the severity of symptoms, courts should consider the context in which the symptoms presented and found it significant that the officer knew the arrestee had recently been in an automobile accident. *Id.* at 967.  The context in the instant case, in contrast, is that Brown knew Kessee had just been evaluated by a medical provider and *discharged* from the hospital.

unconscious by fellow inmates on November 24, 2000, more than two weeks before her death on December 8, 2000, and was placed in a holding cell intended for inmates with serious conditions so that officers could closely monitor the inmate's health status. *Id.* at 540. Over that two-week period, Phillips continued to exhibit signs of a serious medical condition, including nausea, vomiting of blood, swelling, lethargy, and chest pains, and she complained repeatedly of shortness of breath and chest pains. *Id.* at 540-541. Under these circumstances, the Court held the absence of specific testimony regarding the inferences the defendants in fact drew did not automatically preclude summary judgment, stating:

> Given the substantial evidence before the district court that Phillips exhibited life-threatening symptoms over a two-week period, and the correctional officers' failure to transport her to a hospital for diagnosis, we conclude that there is sufficient evidence to demonstrate the subjective component of deliberate indifference. The correctional officers may not escape liability if the evidence showed that they merely refused to verify underlying facts that they strongly suspected to be true, or declined to confirm inferences of risk that they strongly suspected to exist. In most cases in which the defendant is alleged to have failed to provide treatment, there is no testimony about what inferences the defendant in fact drew. Nonetheless, in those cases, a genuine issue of material fact as to deliberate indifference can be based on a strong showing on the objective component. (internal citations and quotations omitted) *Phillips* at 541.

In *Border v. Trumbull County Board of Commissioners*, 414 Fed. Appx. 831 (2011), at the time the decedent was booked into jail, the defendant officer stated on the medical evaluation form that the decedent "does not appear to be under the influence of barbituates, heroin, or other drugs" and had not "fainted or suffered a head injury recently." *Id.* at 833. Fifteen months later, he altered the form to state the decedent did appear to be under the influence of barbituates, heroin, or other drugs and had recently suffered a head injury. *Id.* The court recognized that a plaintiff's assertion officers should have known that a pretrial

detainee had ingested drugs does not suffice to establish a claim of deliberate indifference. *Id.* at 837. However, the court held the defendant's alteration to the medical records created a question or fact whether he was aware that the decedent had taken prescription medicine and withheld knowledge he knew should have communicated to the nurse.  *Id.* at 839.

Finally, *Letterman v. Does*, 789 F. 3d 856 (8th Cir. 2015) does not help Plaintiff and does not render *Krout v. Goemmer*, 583 F. 3d 557, 569 (8th Cir. 2009)  "inapplicable to this case."  In *Letterman*, the defendant jailer was asked to open a padded cell to allow medical personnel to check on the inmate.  *Id.* at 863.  The defendant knew that only the most at-risk inmates were placed in that cell, that requests from medical personnel to open the padded cell were unusual, and that a request to open the padded cell generally meant there was an emergency or potential emergency. *Id.*  However, he did not open the cell.  He later claimed he was absolved of liability because the nurse on the wing stated she was not concerned, but there was no evidence he knew this at the time he failed to open the door. *Id.* at 863.

As Plaintiff notes, *Letterman* and *Krout* both recognize that, in considering a deliberate indifference claim, the focus should be on the defendant's knowledge of the severity of the risk. *Letterman* at 863, citing *Krout* at 568-569. The difference between the cases is that in *Letterman* the defendant's knowledge of the severity of the risk was based on his historical understanding of when the padded cells should be opened rather than his ability (or inability) to understand and interpret particular symptoms exhibited by the current occupant of that cell.  In *Krout,* like the instant case but unlike *Letterman*, the defendants were relying on medical assessments made by medical professionals. The

9

plaintiff argued the defendant should have recognized certain symptoms as indicative of a medical emergency notwithstanding the fact that the plaintiff had recently been examined by a medical professional.  The court rejected this argument, finding there was no evidence the defendants "subjectively questioned [the paramedic's] conclusion or otherwise had reason not to rely on it." *Krout* at 569.    In the instant case, as in *Krout,* the failure "to summon medical personnel for another visit when [the decedent's] condition appeared to deteriorate" shows "at most" negligence but is insufficient to demonstrate deliberate indifference. See, *Krout* at 570.

The controlling Tenth Circuit precedents with respect to Plaintiff's deliberate indifference claim against Brown are *Garcia* and *Martinez*, which establish that unconsciousness presents an "obvious" risk, but characteristics common to intoxicated individuals do not.  *Quintana* at 1029; *Estate of Duke* at 673-674.  The general rule cited in *Olsen* that "the right to custodial medical care is clearly established" may have been sufficient to defeat qualified immunity at the motion to dismiss stage, where "as alleged by Plaintiff, Officers Canaan and Brown had "no knowledge of whether medical professionals had made an affirmative decision that treatment was not needed," see Doc. 83, p. 20, and when *Quintana had not yet been decided*.  However, as *Frasier* and the Supreme Court cases it cites  demonstrate, such a general rule is not enough to provide a reasonable officer with fair notice that the symptoms observed by Brown, in the circumstances in which he observed those symptoms, i.e. minutes after Kessee was discharged and with knowledge the treating medical provider believed Kessee was seeking drugs, demonstrated a need for immediate medical re-evaluation.  Therefore, Brown is entitled to qualified immunity on

Plaintiff's claim for deliberate indifference.

## II.    NEGLIGENCE.

The threshold question for a negligence claim—whether the defendant owed a duty to the plaintiff—is a question of law for the court. *Blocker v. ConocoPhillips Company*, 380 F. Supp. 3d 1178, 1188 (W.D. Okla. 2019); *Trinity Baptist Church v. Brotherhood Mutual Insurance Services*, 2014 OK 106, 341 P. 3d 75, 82.  Where the defendant did not owe a duty of care to the plaintiff, there can be no liability for negligence as a matter of law. *Id.* At common law, no duty is imposed to rescue a person who is in peril, absent some relationship between the parties that creates a special responsibility not owed to the general public. *Jackson v. Mercy Health Center, Inc.,* 1993 OK 155, 864 P. 2d 839, 842.  While the moral law might impose an obligation to rescue a person in a perilous position-such as a drowning child—the law of the land does not require it. *Id.* at 842, n. 8.

As *Jackson* makes clear, a private individual who encountered Kessee in either the hospital waiting room or the hospital driveway would have no legal duty to seek medical assistance.  Thus, as was true of the school bus driver in *Cooper v. Millwood Independent School District No. 37*, 1994 OK CIV APP 114, 887 P. 2d 1370, the police officer in *Salazar v. City of Oklahoma City*, 2016 WL 4150936 (W.D. Okla. August 4, 2016), and the jailers in *Hutto v. Davis*, 972 F. Supp. 1372, 1379 (W.D. Okla. 1997), any duty that Brown owed to provide assistance to Kessee would derive solely from Brown's  duties as a police officer, and would bring Brown within the exception of 51 O.S. § 163(C).  *See*

*Cooper* at 1375; *Salazar* at *2; *Hutto* at 1379.[6]

Plaintiff's citation to *Morales v. City of Oklahoma City,* 2010 OK 9; 230 P.3d 869, 879 is incomplete and misleading. The language quoted by Plaintiff is taken from the Oklahoma Supreme Court's discussion of what type of special duty should be imposed on police officers. Immediately following the sentence quoted by Plaintiff, *Morales* stated: "This basic formulation of the standard of care is not directly applicable to a police officer making an arrest where exposure of the suspect to injury is an inherent part of the activity. *Id.* at 880. To the extent Plaintiff is arguing Brown acted in a negligent manner prior to or apart from arresting Kessee, liability would be precluded by 51 O.S. §155(6), as the Tenth Circuit recognized in *Samuel v. City of Broken Arrow,* 506 Fed. Appx. 751, 756 (10th Cir. 2012) (Relationship of police officer [who shot and killed decedent while responding to a domestic violence call] to the decedent, his wife and neighbors was as a municipality carrying out a police protection function.)

*Gowens v. Barstow*, 2015 OK 85, 364 P. 3d 644, which Plaintiff cites, actually supports summary judgment for Brown. In *Gowens*, the plaintiff was injured when her vehicle was hit by an ambulance. *Id.* at 647. The ambulance driver was initially named as a defendant but was dismissed from the lawsuit prior to trial. *Id.* at 646. As in *Morales,* the Oklahoma Supreme Court's analysis related to the liability of the municipal employer, which was Norman Regional Hospital. *Id.* at 650-652. Under *Gowens*, acts performed with reckless disregard for an individual's rights, but without bad faith or malice, are within

---

[6] These cases are discussed in greater detail in Brown's Motion for Summary Judgment (Doc. 198, pp. 25-26), and *Salazar* was attached at Doc. 198-25.

the scope of employment; therefore, the party liable for the reckless conduct would be the governmental entity, which here is the City of Norman. As the above cases demonstrate, Brown is entitled to summary judgment on Plaintiff's claim for negligence.

## III.   ASSAULT AND BATTERY.

Brown is not arguing that "a police officer may use excessive force, regardless of its reasonableness, so long as the municipality has policies in place related to the use of force." Instead, based on *Tuffy's, Inc. v. City of Oklahoma City,* 2009 OK 4, 212 P. 3d 1158, *Perry v. City of Norman*, 2014 OK 119, 341 P. 3d 689, and *Morales,* Brown is arguing that when a municipality has policies in place related to use of force *and* when the final policy maker for the police department of that municipality testifies that the officer *did not violate* the municipal policy on unreasonable force, the officer cannot be personally liable for assault and battery. In *Perry*, citing *Tuffy's, Inc.* and *Morales*, the Oklahoma Supreme Court recognized that a police officer may commit an assault yet still be acting within the scope of employment, stating:

> For most occupations, committing an assault of excessive force on a third person would not be within a scope of an employee's employment, but there are certain occupations in which an employee's act is within the scope of employment if it is incidental to some service being performed for the employer or if it arises out of an emotional response to actions being taken for the employer. Some examples of such occupations are police officers (whether on or off duty), daycare givers, nursing home caregivers, repossessors, and jailers, among others. *Perry* at 691-692.

Former NPD Chief Humphrey was the final policy maker for the NPD at the time of this incident. *See* Ex. 33, Depo. of Humphrey, pp. 104-105. Humphrey testified that Canaan's and Brown's actions did not violate NPD Policy 320.5.9(b), which addresses

unreasonable and unwarranted force to a person encountered or a person under arrest, that "there was no intentional excessive force." *See* Ex. 33, Depo. of Humphrey, pp. 45, 49-50, 150-151.  The force used by Canaan and Brown may have been "inappropriate" under the circumstances, but was not "malicious." *See* Ex. 33, Depo. of Humphrey, pp. 159-160. Humphrey also testified that while the force used, which was dragging Kessee, was not "the first option" or "best way" to get Kessee to leave hospital property, escorting a person who is not able to move from a location is part of the use of force continuum. *See* Ex. 33, Depo. of Humphrey, pp. 108-110.  This is consistent with the testimony of Defendants' Use of Force expert, Capt. Tim Tipton, that it is not uncommon for police officers to use an empty-hand escort or dragging in an attempt to move individuals who are not under arrest. *See* Ex. 34, Depo. of Tipton, pp. 16-17, 53-54, 83.  Finally, Chief Humphrey testified that he did not find that dragging Mr. Kessee was in violation of NPD policies:

> Q:  [By Jason Hicks]:  Okay.  Very specifically, you did not find that dragging was in violation of Norman police policy and training?
>
> A:  [By Keith Humphrey]: No.

*See* Ex. 33, Depo. of Humphrey, p. 55. ll. 13-16.

The testimony cited above discusses the actions of Defendants Canaan and Brown collectively.  However, it is undisputed that Brown was not a participant when Kessee was dragged the second time by Canaan and that Brown advised Canaan that Kessee's skin was touching the contract, which caused Canaan to stop dragging Kessee.  *See* Doc. 198, Facts 20-21; Doc. 305, p. 2, admitting Fact 20 and failing to respond to Fact 21.

Whether a police officer's actions were taken within the scope of employment is a

14

jury question *unless only one reasonable conclusion can be drawn from the facts alleged.*
*Tuffy's Inc.* at 1167.  Based on Chief Humphrey's testimony that Brown did not violate the
NPD policy regarding unreasonable force, it is clear this is a case where only one
reasonable conclusion can be drawn regarding scope of employment.   Plaintiff's only
argument regarding scope of employment is that "the City acknowledges there is a question
on this issue." *See* Doc. 302, p. 34, citing Doc. 210, p. 14. Plaintiff fails to cite to any
evidence in the factual record which would support a finding that Brown was acting outside
the scope of employment and thus, as in *Varner v. City of El Reno,* 2011 WL 13113324
(W.D. Okla. March 17, 2011),[7] has failed to "adequately articulate or demonstrate that the
police officers were acting outside the scope of employment." *See Varner* at *9.[8] Therefore,
as in *Varner,* Defendant Brown is "immune from liability under the GTCA" and "entitled
to summary judgment" on the assault and battery claim. *Id.*

For the reasons stated in Brown's Motion for Summary Judgment and herein,
summary judgment should be entered in Brown's favor as to all claims alleged against him.

---

[7] *Varner* was discussed in Defendant Brown's Motion for Summary Judgment (Doc.
198, pp. 29-30) and was attached at Doc. 198-30.

[8] Brown is not "ignoring," or asking the Court to ignore, the seven factors set out in
*Morales.* However, the question of whether Brown used excessive force is not the same
question as whether he was acting in the scope of employment.  *See Varner* at *9 (use of
excessive force may be proved without regard to whether police officer was acting in good
faith). The *Morales* factors are relevant, as they were in *Varner* and *Morales,* for the jury
to determine whether the City is liable on the assault and battery claim.  *See also Hodge v.
Keene*, 2013 WL 372460 at *8 (W.D. Okla. January 30, 2013) (Doc. 201-31) (Granting
summary judgment to officer on claims for negligence, assault and battery under 51
O.S.§163 (C), and then analyzing the liability of the City under *Morales.*)

Respectfully submitted,

s/ Ambre C. Gooch

Ambre C. Gooch, OBA No. 16586
COLLINS, ZORN  & WAGNER, P.C.
429 N.E. 50th Street, 2nd Floor
Oklahoma City, OK 73105-1815
Telephone:  (405) 524-2070
E-mail:   acg@czwlaw.com

ATTORNEY FOR DEFENDANTS
KYLE CANAAN AND DANIEL BROWN

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2021, I electronically transmitted this filing to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Chris Hammons, email at: chris@lhllaw.com
Jason M. Hicks, email at: jason@lhllaw.com
Jonathan Ortwein, email at: jonathan@lhllaw.com
LAIRD HAMMONS LAIRD, PLLC
1332 S.W. 89th Street
Oklahoma City, OK 73159
*Attorneys for Plaintiff*

Sean P. Snider, email at: ssnider@johnsonhanan.com
Austin J. Young, email at: ayoung@johnsonhanan.com
Anthony C. Winter, email at: awinter@johnsonhanan.com
JOHNSON HANAN VOSLER
HAWTHORNE & SNIDER
9801 N. Broadway Extension
Oklahoma City, OK 73114
*Attorneys for Defendants Turn Key Health Clinics, LLC*
*  and Clayton Rickert*

16

Robert S. Lafferrandre, email at rlafferrandre@piercecouch.com
Jessica L. Dark, email at: jdark@piercecouch.com
Randall J. Wood, email at: rwood@piercecouch.com
Pierce Couch Hendrickson
 Baysinger & Green, L.L.P.
1109 North Francis Avenue
Oklahoma City, OK 73106
***Attorneys for Defendants Todd R. Gibson, in his individual***
 ***capacity, Chris Amason, in his official capacity,***
 ***Zachary Andrews, Cody Barr, and  Stacy Shifflett***

Jeanne M. Snider, email at: Jeanne.snider@ci.norman.ok.us
Rickey J. Knighton, email at: rick.knighton@ci.norman.ok.us
City of Attorney
City of Norman
P.O. Box 370
Norman, OK 73070
***Attorneys for Defendants City of Norman and Keith Humphrey***

Glen D. Huff, email at: foliartfirm@oklahomacounsel.com
Robert E. Hoisington, email at: roberthoisington@oklahomacounsel.com
FOLIART HUFF OTTAWAY & BOTTOM
201 Robert S. Kerr Avenue, 12th Floor
Oklahoma City, OK 73102
***Attorneys for Defendant Norman Regional Hospital Authority***
 ***d/b/a Norman Regional Hospital***

Brandon C. Whitworth, email at: brandonw@rodolftodd.com
Emily J. Ludiker, email at: emily@rodolftodd.com
David A. Russell, email at: drussell@rodolftodd.com
RODOLF & TODD
15 E. 5th Street, Sixth Floor
Tulsa, OK 74103-4346
***Attorneys for Defendants Emergency Services of Oklahoma, PC.,***
 ***Steven M. Roberts and Justin L. Holbrook***


                              s/  Ambre C. Gooch
                              Ambre C. Gooch