Tim Tipton
6/4/2021                                                                    Page: 1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              FOR THE WESTERN DISTRICT OF OKLAHOMA

 3
    (1) PATRICIA THOMPSON, as      )
 4  Personal Representative of the )
    Estate of MARCONIA LYNN        )
 5  KESSEE,                        )
                                   )
 6       Plaintiff,                )
                                   )
 7  -vs-                           )    No. CIV-19-113-SLP
                                   )
 8  (1) NORMAN REGIONAL HOSPITAL   )
    AUTHORITY d/b/a NORMAN         )
 9  REGIONAL HOSPITAL, a public    )
    trust, et al.,                 )
10                                 )
         Defendants.                )
11

12

13                       * * * * *

14       VIDEOCONFERENCE DEPOSITION OF TIM TIPTON

15          TAKEN ON BEHALF OF THE PLAINTIFF

16              IN OKLAHOMA CITY, OKLAHOMA

17                  ON JUNE 4, 2021

18              COMMENCING AT 9:07 A.M.

19                       * * * * *

20

21

22               INSTASCRIPT, L.L.C.
              125 PARK AVENUE, SUITE LL
23         OKLAHOMA CITY, OKLAHOMA  73102
                   405.605.6880
24             schedule@instascript.net

25  REPORTED BY:  BETH A. McGINLEY, CSR, RPR, RMR
```

schedule@instascript.net
(405) 605-6880 instaScript

EXHIBIT 34
Page 1 of 7

```
 1                    TIM TIPTON,
 2   having been first duly sworn, deposes and says in reply
 3   to the questions propounded as follows:
 4                   *   *   *   *   *   *
 5                       EXAMINATION
 6   BY MR. HAMMONS:
 7        Q    All right.  Well, Mr. Tipton, I don't have to
 8   tell you, you can -- if you need to have me take -- if
 9   you need to take a break, just let me know.  If you need
10   me to rephrase a question, just let me know and we'll
11   knock this out.
12        A    Yes, sir.
13        Q    Okay.  Now, you have -- do you have a copy of
14   your expert report?
15        A    I did not print one off and bring it.
16        Q    Okay.  We'll be referencing it a little bit --
17        A    Okay.
18        Q    -- here and there, so not a big deal, but just
19   want to make sure of a couple of things.  As usual,
20   these cases kind of evolve.  I know you have -- at the
21   time of your report, you have a list of -- of, you know,
22   materials that you reviewed at the time, and I'm just
23   going to see if you have anything further that you've
24   looked at since writing the report, which, you know,
25   sometimes is some time.
```

1  in the position of the officers at the time and what
2  they believed to be true, then I don't know that the
3  verbalization that they used was -- was as
4  unprofessional as it would be now that we know, in fact,
5  the medical condition of Mr. Kessee.
6      Q    (By Mr. Hammons) Okay.  The next one on there,
7  it says, "Escorts."  What -- what are you talking about
8  there?
9      A    So moving a person, whether it's a compliant
10 escort, where an officer is, you know, just touching
11 someone and -- and guiding them to leave or move in a
12 direction, all the way up to physically trying to pick
13 someone up and move them, escort them.  So we're trying
14 to move them from one place to another in -- in a
15 physical manner.
16     Q    Have you ever seen -- oh, well, hold on.  I
17 fell off the chair here.
18          In your -- in your experience, have you ever
19 seen a citizen dragged across a parking lot like this?
20     A    I don't know if I've seen it in this exact
21 type of scenario.  I've definitely seen police officers
22 drag people.
23     Q    Who are actively resisting?
24     A    Passively resisting, even.  Just not complying
25 and not assisting in their movement and needing to be

```
 1   moved.
 2        Q    Have you ever -- have you ever seen a citizen
 3   dragged that wasn't under arrest, wasn't detained, and
 4   wasn't -- wasn't investigated for a crime?
 5        A    Well, you asked me three different questions.
 6        Q    Well, yeah, I'll break it down.
 7             Have you ever seen a citizen dragged, that
 8   wasn't under arrest?
 9        A    Yes.
10        Q    Have you ever seen a citizen dragged, that
11   wasn't being detained in any way?
12        A    I would say most of the time that -- that I'm
13   talking about, when they're not under arrest and they
14   are trying to be moved, if they would have gotten up and
15   left, then they wouldn't have been detained.  The
16   detention happened because of their noncompliance.
17        Q    Well, yeah, I -- but my point -- I guess my
18   point would be:  Have you ever seen an officer walk up
19   to a citizen, who's sitting on the sidewalk, and say,
20   "Get up and move," the citizen wouldn't get up and move,
21   and then they just started dragging them across the
22   sidewalk?
23             MS. GOOCH:  Object to the form.
24        A    I can't recall a situation that -- the one
25   like you just said.
```

```
 1              THE MONITOR:  We are back on the record.  The
 2   time is 10:19 a.m.
 3        Q     (By Mr. Hammons) Back on Exhibit 3, if we go
 4   to Page 13, kind of fast-forward a little ways.  Oh,
 5   let's see, one, two -- third full paragraph that begins,
 6   "MPO Canaan stated, for the majority of the contact" --
 7   do you see that --
 8        A     Yes, sir.
 9        Q     -- paragraph?
10              Okay.  About halfway down, it says, "MPO
11   Canaan was very clear that Mr. Kessee was not detained
12   or under arrest at the time of the dragging event.  MPO
13   Canaan stated that during the dragging incident, if
14   Mr. Kessee had stood up and left or even have passively
15   or defensively resisted the officers' actions, he would
16   have been allowed to leave the property without
17   incident."
18              I've got some questions about that, but I want
19   to ask you this last -- this last part -- the last full
20   paragraph, it says, the last sentence, "MPO Canaan
21   stated he has never used this technique before, has
22   never been trained to do it, and has not seen any other
23   officers perform this action under similar
24   circumstances."
25              So I guess my question would be -- is:  Can an
```

```
 1   officer, when a person is not under arrest, not being
 2   detained and not resisting, drag a person like MPO
 3   Canaan did in this situation?
 4           MS. GOOCH:  Object to the form.
 5       A   Well, I -- I believe it occurs on a regular
 6   basis, that police officers use escorts to move -- move
 7   someone, who is passively resisting, and then doesn't
 8   arrest them.
 9           MR. HAMMONS:  Sorry, I'm going to redo my
10   parking here real fast.  Sorry.  Maybe not.
11           Okay, sorry about that.
12       Q   (By Mr. Hammons) Would you agree that -- with
13   Officer Canaan, that he's never trained on this
14   technique of dragging somebody and never seen an officer
15   do it?
16           (Phone interruption.)
17           MS. GOOCH:  Sorry.  Sorry.
18       A   Yes.
19       Q   (By Mr. Hammons) Go to Page 15, the first
20   paragraph.  It's about halfway down.  It says, "Officer
21   Brown was clear, at the time of the dragging, Mr. Kessee
22   was not under arrest.  When asked if he felt his actions
23   in dragging Mr. Kessee, while not under arrest, not in
24   need of medical assistance, not detained, not a danger
25   to anyone, including himself, or within the legal or
```

 1   to the jury, dragging -- for dragging Marconia Kessee
 2   across the pavement on January 16, 2018?"
 3            His answer was, "No."
 4            Is there some lawful reason you can point
 5   to -- the jury to?
 6       A    For moving him?
 7       Q    Yeah, for dragging him across the pavement.
 8            MS. GOOCH:  Object to the form.
 9       A    Well, I -- I believe that there's a -- a
10   lawful violation that -- that -- that Mr. Kessee would
11   not leave the property.  I believe that the officers
12   believed, at the time, that he had the ability to leave
13   and -- and comply with that lawful order.  He refused
14   to.  And an empty-hand dragging, escort, however you
15   want to call it, was a reasonable use of force at that
16   time.
17       Q    (By Mr. Hammons) I asked Officer Canaan, "The
18   force you used against Marconia Kessee was not lawful
19   force; true?"  And he agreed with that.
20            You disagree with that; you believe it is
21   lawful?
22       A    Yes, I believe it's reasonable and
23   justifiable.
24       Q    Would you agree with me that the dragging of a
25   person, that would be offensive to the individual being