

EXPERT WITNESS REPORT OF LORI E. ROSCOE, DNP, APRN, ANP-C, CCHP-RN
REGARDING Marconia L. Kessee

I have been retained to render opinions regarding the care and treatment of Mr. Marconia L. Kessee during his incarceration at the Cleveland County Sheriff's Department/DeWayne Beggs Detention Center on January 16, 2018. My opinions are based upon my education, training and experience, and my specialized knowledge of Correctional Nursing and Correctional Healthcare. In addition, my opinions consider the health records, videos and testimony I reviewed regarding this case.

EXPERIENCE AND QUALIFICATIONS:

I am an Advanced Practice Registered Nurse, certified as an Adult Nurse Practitioner. I have a Bachelor's Degree in Education, a Bachelor's Degree in Nursing, a Master's Degree in Public Administration with a healthcare concentration, a Master's Degree in Nursing, a Doctorate Degree in Healthcare Administration, and a Doctor of Nursing Practice degree. I am a Certified Correctional Health Professional and a Certified Correctional Health Professional – Registered Nurse certified through the National Commission on Correctional Health Care. I am currently the principal of Correctional HealthCare Consultants LLC and The Correctional Nurse LLC, and I am a clinical nurse practitioner. I began in correctional healthcare in 1995, and have worked in various correctional healthcare roles, including as a correctional facility Health Services Administrator, a Regional Administrator, an Associate Program Director, an Executive Director of Clinical Services, a Nurse Practitioner, and a Registered Nurse. I have an active Registered Nurse license in the states of Florida, California, and Georgia. My Florida license is multi-state, which enables me to practice through the Enhanced Nurse Licensure Compact in 34 states, including Oklahoma. In addition, I am licensed as an Autonomous Advanced Practice Registered Nurse (nurse practitioner) in Florida, and an Advanced Practice Registered Nurse (nurse practitioner) in California, Georgia, Virginia, and Kentucky.

Exhibit 1

1

Kessee 002829

I have worked for private contractors, such as Correct Care Solutions and CorrectHealth, LLC, and state subcontractors, such as the Medical College of Georgia. In my administrative roles, I was responsible for policy and procedure development, staff supervision, staff education, Continuous Quality Improvement Programs, and fiscal management. I continue to provide these services to correctional health programs through Correctional HealthCare Consultants LLC.  I am a certified guest instructor for the Georgia Peace Officer Standards and Training Council in Inmate Medical, HIV Infection Control, Universal Precautions, and Excited Delirium. I am a member of the American Nurses Association's national expert workgroup that reviewed and revised the *Correctional Nursing: Scope and Standards of Practice*, most recently published in 2020. I am the Accredited Provider Program Director for the Multi-Disciplinary Education Committee of the National Commission on Correctional Health Care. I am a member of the Editorial Board of the Journal of Correctional Health Care, and also a peer reviewer for that publication.  I am a member of the Board of Directors of the American Correctional Nurses Association. A complete listing of my education, training, and experience is set forth in my Curriculum Vitae, a copy of which is attached to this report as Exhibit A.

COMPENSATION AND PRIOR TESTIMONY:

I have attached to this report as Exhibit B a list of all cases in which I have testified by deposition or at trial in the last four years.  I currently receive compensation of $350 per hour for case review and expert report production, with an initial retainer of $5000 for up to 12 hours of work.  I receive $500 per hour compensation for deposition and court testimony, with a four-hour daily minimum and travel time reimbursed at $250 per hour as applicable. Travel expenses are charged per actual cost.

DOCUMENTATION REVIEWED:

Wav. Files from 911 calls on January 16, 2018 – 1 at 1857 and 2 at 2154 hours;

Body cam video footage from hospital and jail, redacted;

Facility videos - Processing Corridor 1, 2, 4; Processing Counter 4, 2; Sallyport 1, 3; Intake and exit Intake;

Kessee 002830

Depositions of Rickert, Shifflett, Knapp, Andrews, Scott, Terry, Humphrey, Roberts, Holbrook, Canaan, Cooper and Brown;

Jail documents, Bates Stamped 002130 – 002149, 002179-002181, 002257-002263;

Articles Bates Stamped 002264-002279, 002284-002290;

Records from the Oklahoma Department of Health Investigation Report, Bates Stamped 002054-002058;

Records received from Cleveland County, Bates Stamped 002064-002127 (incident report);

Documents produced by OSBI, Bates Stamped 001886-002029;

Kessee medical records, Bates Stamped 000001-001886;

Medical Examiner's Report, Bates Stamped 002150-002163;

Policy and Procedure Manual, Bates Stamped 002291-002620; and

Turn Key Policies and Procedures, Bates Stamped 002570-002620.


CASE SUMMARY:

On January 16, 2018, Mr. Marconia Kessee arrived at the Emergency Department of the Norman Regional Hospital complaining of a two day history of unrelenting headache and requesting Norco. Mr. Kessee was evaluated by Justin Holbrook, Advanced Practice Registered Nurse (APRN) who documented that Mr. Kessee was drug-seeking as he requested Norco, an opiate. Mr. Kessee exhibited tachycardia (116), elevated blood pressure (155/93) and tangential thinking with flight of ideas. APRN Holbrook discharged Mr. Kessee at approximately 1907 hours, documenting that Mr. Kessee refused the alternative care offered to him. In deposition, APRN Holbrook stated the "alternative treatment" he offered included intravenous fluids, laboratory blood work and medication for headache/migraines, although they were not articulated in the health record entry. Documentation indicates that NP Holbrook escorted Mr. Kessee outside with security to await the arrival of officers from the Norman Police Department, who were called to help Mr. Kessee get to the Salvation Army. At 2252 hours, after Mr. Kessee returned from the DeWayne Beggs Detention Center pulseless and not breathing and was declared deceased (2237 hours), Dr. Steven Roberts co-signed the health record for this encounter.

3

When Norman Police officers Canaan and Brown arrived at the Norman Regional Hospital, their interaction with Mr. Kessee was recorded on their body cameras. Mr. Kessee is heard saying he needed to see the doctor and that something was happening. The officers informed Mr. Kessee that he had been seen and discharged, and would not be going back into the emergency department to be seen again. Mr. Kessee is seen on the body camera video with uncontrolled body movements which caused him, at times, to fall to the ground. The officers are heard belittling and badgering Mr. Kessee, and treating him as if he was feigning his condition. Ultimately the officers dragged Mr. Kessee across the sidewalk, arrested him for trespassing, and got him into their vehicle for transport to the DeWayne Beggs Detention Center. On the ride to the Detention Center, the Officer Canaan's body camera continued to record. Mr. Kessee is heard on that video speaking with garbled speech and screaming, then quieting intermittently. At the Detention Center, Mr. Kessee screamed and tried to get out of the vehicle. He was dragged out, then carried by two officers into the Intake area. At that time, he was diaphoretic and breathing very heavily.

In the Intake area, Mr. Kessee exhibited uncontrolled, seizure-like movements. During these movements, he significantly struck the back of his head on the wall behind him. Mr. Kessee slid to the floor and the officers told Mr. Kessee to "quit acting like an idiot." Licensed Practical Nurse (LPN) Clayton Rickert was in the Intake area with the officers and witnessed the uncontrolled body movements and the treatment of Mr. Kessee by the officers. He did not intercede, except to put an ammonia inhalant to Mr. Kessee's nose to prove he was not having a seizure. Initially unresponsive to the ammonia inhalant, after nine to ten seconds, Mr. Kessee reportedly became responsive.

After Mr. Kessee's death, various officers described Mr. Kessee's presentation and actions during this time. Officer Barr stated Mr. Kessee was incoherent upon arrival; refused to walk; and had a "fake" seizure. Officer Brown stated that Mr. Kessee had been doing that since the hospital and he continued with the shaking episodes, so he was placed in the padded cell. Sergeant Shifflett stated that Mr. Kessee was responding with "primal" sounds; was twitching and did not follow commands. Sergeant Shifflett also made note of the fact that Mr. Kessee barely flinched when LPN Rickert used the ammonia inhalant. Officer Knapp noted that Mr. Kessee's body was "twitching and behaving

4

erratically" and he was not coherent.  Officer Andrews concurred that Mr. Kessee was incoherent and unable to answer any questions.  Officer Knapp and Officer Andrews also stated that LPN Rickert ordered medical observation for Mr. Kessee's safety.

The videos (video time noted to be one hour later than actual time – hereon adjusted to local time) from the Sallyport and Intake area indicate that Mr. Kessee was struggling and the officers did pick him up and carry him into the Intake area, and placed him in a chair.  Mr. Kessee was sitting still, then had seizure-like activity and struck his head. Mr. Kessee slid to the floor, where the view on the video was somewhat obstructed, but his legs look to be flailing and then they go quiet. The officers began to undress Mr. Kessee while he was on the floor.  LPN Rickert made no attempt to do an evaluation of Mr. Kessee at this time.

At approximately 1949 hours Mr. Kessee got up with the assistance of the officers, and had difficulty walking with them; he was then dragged by them until he fell to the floor. He sat/kneeled on the floor, and the officers and LPN Rickert took him by the feet and arms and carried him out of the area.  Officer Brown then came into the Intake area with a bag of medications and Mr. Kessee's shoes, and he completed paperwork.  LPN Rickert returned to the Intake area at approximately 1954 hours, spoke with Officer Brown, became aware of the medications and left. There is no indication that LPN Rickert contacted a provider about Mr. Kessee at this time.

Mr. Kessee was brought to the "padded cell" under Critical Observation per the health record documentation by LPN Rickert, where his remaining clothing was removed and he was given a green safety blanket.  In a late note written after Mr. Kessee died, LPN Rickert documented that he was unable to obtain vital signs or complete the Intake questionnaire due to Mr. Kessee's behavior. LPN Rickert also documented that Mr. Kessee's medications included melatonin, lorazepam, amlodipine and bupropion, and his plan stated that "Norvasc and B/P (blood pressure) checks ordered – put on list to be seen by C/C and M/H provider."  There is no indication that LPN Rickert contacted a provider about Mr. Kessee's physical presentation, or his medications and plan of care.

5

Kessee 002833

The cell in which Mr. Kessee was placed (B-130) was monitored by camera, and Mr. Kessee's actions and those of the staff in the cell were recorded. At approximately 1951 hours Mr. Kessee was carried into the cell with LPN Rickert in attendance. Mr. Kessee was unclothed and a blanket was placed over his torso, but his legs were visible to the camera and his head was out of camera sight. His legs are noted moving until 1958 hours, after which there was no movement visible. The corridor videos show that Mr. Kessee was observed by officers at 2015 hours, 2046 hours and 2148 hours; the log documented eight checks.

At 2151 hours LPN Rickert and officers entered Mr. Kessee's cell because he did not respond when LPN Rickert tapped on his window. There was no urgency seen in the response of LPN Rickert, who took approximately 2 minutes and 54 seconds to make the determination that the unresponsive Mr. Kessee was not breathing and had no pulse. His evaluation included duplicative tests like listening to the chest with the stethoscope and then checking Mr. Kessee's pulse manually at the carotid artery, and tests that are not accepted tests for determining whether someone needs cardiopulmonary resuscitation, like a Babinski reflex test. When it was determined that Mr. Kessee was pulseless and not breathing, officers initiated cardiopulmonary resuscitation. In addition, LPN Rickert took excess time to assemble and initiate the use of the bag-valve-mask (Ambu bag) apparatus and no supplemental oxygen was initiated.

At approximately 2155 hours the Automated External Defibrillator (AED) was applied, and no shock was advised. At 2156 hours LPN Rickert rubbed his left knee; was seen having difficulty getting up, and went down to the floor. For a moment, LPN Rickert was laying down on the floor next to Mr. Kessee, who was dead or dying with resuscitation efforts ongoing. Officers assisted Mr. Rickert up and to the door, where he observed the officers doing compressions and the med tech using the ambu bag without the supplemental oxygen for the remainder of the effort.

At 2202 hours the Fire Department arrived, and cardiopulmonary resuscitation continued. Mr. Kessee was transported back to Norman Regional Hospital where he was pronounced dead at 2237 hours. The autopsy indicated that Mr. Kessee died from acute Bupropion, Methamphetamine and

6

Atomoxetine toxicity.

DISCUSSION

On January 16, 2018, when Mr. Kessee was brought to the DeWayne Beggs Detention Center, the officers dragged him out of the vehicle and carried him into the Intake area. LPN Rickert was aware that Mr. Kessee had come from the Norman Regional Hospital after being evaluated for a headache and was exhibiting incoherent speech; screaming; heavy/labored breathing; and diaphoresis. In the Intake area, Mr. Kessee exhibited uncontrolled movements and seizure-like activity during which he significantly struck his head against the wall and slid out of the chair. There were no signs that Mr. Kessee was uncooperative.   When this occurred, LPN Rickert should have immediately evaluated Mr. Kessee, including the measuring of vital signs, auscultation of his heart, lungs and abdomen; and an evaluation of his neurological status. He was then required to contact a provider to report Mr. Kessee's history, current presentation and the results of his post-head trauma evaluation.  Instead, LPN Rickert attempted to prove that Mr. Kessee was faking a seizure by using an ammonia inhalant to his nose.  He believed that Mr. Kessee's response did show that he was faking because Mr. Kessee stopped "shaking," but because the reaction was delayed and Mr. Kessee reportedly did not immediately respond to the presence of the ammonia inhalant, it could also be that the seizure was over.  While what I see on the video appears to be seizure-like activity, even if Mr. Kessee was experiencing uncontrolled body movements, LPN Rickert was required to evaluate Mr. Kessee and report his findings to a provider, both because of these unusual movements and because of the head trauma Mr. Kessee experienced as a result.  If LPN Rickert was unable to complete the necessary physical evaluation, including the measuring of vital signs, then he was still required to contact a provider.  The failure of LPN Rickert to  contact a provider for his patient who had been seen for a chronic headache immediately before his arrest and who had significantly struck his head on the wall behind him, and who was exhibiting abnormal behaviors, including garbled, incoherent speech; diaphoresis; heavy, labored breathing and uncontrolled body movements was contrary to standards and accepted practices for correctional nurses to follow.

As LPN Rickert testified in deposition, licensed practical nurses cannot diagnose, nor can they make

Kessee 002835

an assessment of their patients. It is notable that LPN Rickert documented that he ordered Mr. Kessee's amlodipine and blood pressure checks, but did not document that he contacted a provider for this prescription medication. The independent ordering of medication by a licensed practical nurse significantly deviated from the standard of nursing care. It is significantly outside of the scope of practice of a licensed practical nurse and is illegal.

LPN Rickert documented that Mr. Kessee was prescribed lorazepam, a benzodiazepine, but he failed to place him on a monitoring regimen for his risk of withdrawal. This failure deviated from the standards and accepted practices for correctional nurses to follow.

LPN Rickert testified that he placed Mr. Kessee on critical observation due to his head injury and also because Mr. Kessee tried to harm himself. Critical observation requires every 15 minute checks by officers, but the policy does not indicate when medical staff must do their checks. However, prudent nursing care for the patient with a head injury dictates frequent reassessment to ensure there are no changes to the patient's condition that require action. Especially in this case, when LPN Rickert made no attempt to screen Mr. Kessee and complete the required physical evaluation, LPN Rickert should have monitored his patient with a significant head injury, incoherent speech, the inability to walk on his own and diaphoresis at least every 15 minutes for the first hour (conducting an evaluation that included measuring vital signs; auscultation of his lungs heart and an abdominal evaluation; and a neurological exam) and then at regular intervals after that, depending upon the findings. If Mr. Kessee's evaluation indicated abnormalities, then a provider should have been contacted. The failure of LPN Rickert to monitor his patient who had been seen for a chronic headache immediately before his arrest and who had significantly struck his head on the wall behind him soon after arrival, and who was exhibiting abnormal behaviors, including garbled, incoherent speech; diaphoresis; heavy, labored breathing and uncontrolled body movements significantly deviated from the standard of nursing care.

LPN Rickert testified in deposition that he waited for the officers to tell him that a patient was ready to be screened, but determining if a patient is ready to be medically evaluated is a healthcare

Kessee 002836

decision that should not be made by an untrained, nonmedical person.  Mr. Rickert, as a licensed practical nurse, had the education and training to determine when his patient could be screened, and he should have been checking Mr. Kessee and informing the custody staff when he was ready. Leaving medical decisions to be made by unlicensed, untrained custody staff deviated from the standard of nursing care.

LPN Rickert was checking on Mr. Kessee at approximately 2151 hours, his first check, and when Mr. Kessee failed to respond to LPN Rickert's tapping on the window, LPN Rickert and an officer entered the cell.  From the time he entered the cell, it took LPN Rickert approximately 2 minutes and 54 seconds to determine that Mr. Kessee was pulseless and not breathing.  This is an extraordinarily long time to conduct such an evaluation.  There was no sense of urgency seen in the cell video of the response, and LPN Rickert did duplicative evaluations (auscultating the chest with a stethoscope; palpating the carotid artery) and irrelevant evaluations, like checking for a Babinski reflex.  In deposition, LPN Rickert testified that it was possible Mr. Kessee was faking the unresponsiveness.  The failure of LPN Rickert, an individual with cardiopulmonary resuscitation certification and nursing training, to complete his cardiopulmonary evaluation quickly and appropriately significantly deviated from the standard of nursing care.  In addition, LPN Rickert took an extended period of time to assemble the bag-valve-mask apparatus (Ambu bag), which delayed breathing support for Mr. Kessee.  LPN Rickert also failed to use supplemental oxygen with the Ambu bag.

During the resuscitation efforts, LPN Rickert had difficulty arising from the floor. He stated in deposition that he felt faint, and was trying to get up to get some air, although this was never documented in any report he completed contemporaneous to the incident.  On the video, LPN Rickert is seen rubbing his left knee, then falling back to the floor and ended up next to Mr. Kessee, on whom cardiopulmonary resuscitation was being performed.  An officer assisted LPN Rickert up, and he went to the doorway, where he observed, but did not participate in, the resuscitation efforts for Mr. Kessee.  As a nurse, LPN Rickert's responsibility to his patients included ensuring that he was physically fit to provide the care required. In addition, TurnKey Health Clinics LLC, the

Kessee 002837

contractor for health services at the Detention Center and LPN Rickert's employer, and Cleveland County also had a responsibility to the individuals incarcerated there to ensure that healthcare staff were able to physically do their jobs.

Lead Detention Officer Brandi Garner documented in her report of the incident that when she discussed Mr. Kessee with LPN Rickert, he reported that he had done the intake screening on Mr. Kessee, and, other than a slightly elevated blood pressure, there were no other medical concerns. LPN Rickert stated in deposition that he did not recall the conversation, but he did not complete the intake screening and did not measure Mr. Kessee's blood pressure.  LPN Rickert also documented the same information in a late entry (2331 hours) in Mr. Kessee's health record, citing Mr. Kessee's behavior as the reason he could not complete those duties. If LPN Rickert did tell Lead Detention Officer that he had completed the intake screening and Mr. Kessee was fine except for a slightly elevated blood pressure, then he lied.  Lying significantly deviates from the standard of nursing care.

At all times during Mr. Kessee's incarceration at the DeWayne Beggs Detention Center, TurnKey Health Clinics LLC was the contractor for healthcare services, and LPN Rickert was its employee. The testimony by LPN Rickert included disclosures that he did not need to know the policies and procedures to do his job; that completing the form he was asked to complete was not "rocket science;" that he received no training about the TurnKey policies and procedures or the Detention Center policies and procedures; and that there were no differences in jails – "they give me medicines and I pass medicines."  This callous attitude towards patient care and its inherent responsibilities was demeaning and egregious.

LPN Rickert testified that he had not been trained in the identification of the signs and symptoms of someone needing detoxification or having a drug overdose.  He further testified that he was not qualified to determine if someone was having a drug overdose and he could not assess a medical condition.  Officers in this case also testified that they were not qualified to determine if someone was having a drug overdose, which meant that there was no one on-site at the DeWayne Beggs

Kessee 002838

Detention Center who could evaluate Mr. Kessee and identify that he was experiencing abnormal signs that required immediate medical attention. This constituted a very unsafe environment, not only for Mr. Kessee, but for all persons incarcerated at the Detention Center.

Both Cleveland County and TurnKey Health Clinics LLC had extensive policies and procedures designed to ensure that the healthcare at the DeWayne Beggs Detention Center was being provided safely, appropriately and based upon accepted standards. Included were policies and procedures written to ensure that Mr. Kessee and all incarcerated persons at the DeWayne Beggs Detention Center had proper screenings, evaluations, monitoring, and in general, the access to healthcare that their conditions required.  The failure of LPN Rickert to know and follow those policies and procedures significantly deviated from the standard of nursing care.  The failure of LPN Rickert to acknowledge the value and importance of these policies and procedures to his practice at the DeWayne Beggs Detention Center, and to follow them, deviated significantly from the standard of nursing care.

The failure of TurnKey Health Clinics LLC to ensure that its employee, LPN Rickert, was oriented in, and adhered to, its policies and procedures and those applicable from the Cleveland County Sheriff's Office was contrary to standards and accepted practices for correctional healthcare.  In addition, the failure of TurnKey Health Clinics LLC to monitor the care being rendered by LPN Rickert and all its staff at the DeWayne Beggs Detention Center and provide remediation/retraining as required significantly deviated from the standards and accepted practices for correctional healthcare.

While the aforementioned actions of LPN Rickert individually deviated substantially from the standard of nursing care, when considered overall, and in their totality, and considering the fact that LPN Rickert's entire care and treatment of Mr. Kessee was predicated on his attempt to prove that Mr. Kessee was faking his abnormal signs and symptoms, they were egregious, reckless, and were more than negligent.  LPN Rickert's prejudicial care and treatment of  Mr. Kessee was appalling, and was the reason that Mr. Kessee was not immediately send back to the Norman

11

Regional Hospital when he first presented to the Detention Center with incoherence, inability to walk, heavy/labored breathing and diaphoresis.  It was also the reason that a provider was never contacted about Mr. Kessee and his abnormal signs, and why there was a delay in determining that Mr. Kessee was pulseless and not breathing, and a delay in the initiation of the needed cardiopulmonary resuscitation.

My opinions and findings are made to a reasonable degree of nursing, provider and administrative certainty and are based upon the records reviewed. I hereby reserve the right to amend, supplement, or withdraw my opinion based upon future discovery and depositions of the relative parties that may be provided to me.

Respectfully Submitted on March 31, 2021.

*Lori E. Roscoe*

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN

Kessee 002840

# Curriculum Vitae

## Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN

404-805-9502

---

### PROFILE

---

An innovative Healthcare Manager, certified as an Advanced Practice Registered Nurse, a Correctional Health Professional, and a Correctional Registered Nurse, with 25 years of experience in Correctional Health Care and 31 years of Registered Nursing experience. An expert on National Commission on Correctional Health Care and American Correctional Association standards, and policy and procedure development and compliance.  An educator of both nurses and correctional officers.  A seasoned Continuous Quality Improvement professional.  An experienced correctional health expert legal witness, including case review, expert report authoring, and deposition/trial testimony.

---

### EDUCATION

---

**Doctor of Nursing Practice**
University of Alabama, 2017

**Master of Science in Nursing, Adult Nurse Practitioner**
South University, 2014

**Doctor of Health Care Administration**
Madison University, 2006

**Master of Public Administration, Health Care concentration**
University of Hartford, 1994

**Bachelor of Science in Nursing**
University of Connecticut, 1989

**Bachelor of Science in Education, Secondary Education and Sociology majors**
Southern Connecticut State University, 1978

---

### AWARDS

---

High Honors - South University - 2014

Award for Academic Excellence – University of Hartford 1994

Woodruff Fellow 1992 – 1994 – University of Hartford

Kessee 002841

---

## EXPERIENCE

---

**Correctional HealthCare Consultants LLC**

January 2007 – present – Managing Member

**Marion County, KY – Jailer J. Barry Brady** – (2018-present) Healthcare program transitional and ongoing consultation services

**Boone County, KY – Jailer Jason Maydak** – (2018-present) Healthcare program development, transition services and consultation services

**Laurel County, KY – Jailer Jamie Mosley –** (2017-present) Healthcare Program Evaluation, ongoing program development, and consultation services

**Preceptor for MSN Nurse Practitioner students from Georgia State University – (**2016 – 2017) Semester of Nurse Practitioner experience in a correctional setting

**CorHealth Solutions, LLC – Dr. D. Brent Cherry** – (2016) - Correctional Health Program Development and contract initiation consultation- Somerset, KY

**National Commission on Correctional Health Care Multi-Disciplinary Education Committee** (2019 – present) – Accredited Provider Program Director  and **Nurse Advisory Council** (2016 – present) **-**  Lead Nurse Planner

**Journal of Correctional Health Care,** Editorial Board member and peer reviewer (2019 – present)

**University of Connecticut School of Nursing** (2014 - 2016) – Expert Nurse panelist for a research study regarding the Correctional nurse and stress being conducted by Dr. Denise Panosky.

**American Nurses Association** (2012-present) **–** Member of the Correctional Nursing workgroup responsible for reviewing and editing the *Correctional Nursing*: *Scope and Standards of Practice* – latest version published November 2020.

**The Correctional Nurse Educator** (2010-present) – Developed and maintain an online educational site where nurses can earn continuing education credits in topics specifically related to correctional nursing. Accredited as a Provider by the California, Florida, Georgia, South Carolina and other Boards of Nursing.

**Medical Association of Georgia** (2007-2017) – Accreditation auditor for the Corrections Division.

**Legal casework** (2007-present) - Multiple cases for both Defendants and Plaintiffs.

**American Correctional Health Services Association –** Executive Director – 2011-2012

**Correct Health, LLC –** DeKalb County Jail (2008-2009) - Operational review, Management staff mentoring, CQI Program expansion and Annual Review, Procedures and Post Order development, nursing staff mentoring and education.

**Comprehensive Nursing Care, Inc.** (2007 - 2009) **–** Development of successful bid proposal for Medical Nursing Services at Hall County Jail – continued association to develop and execute a complete Nursing orientation program, written procedures for staff, Nursing Assessment Protocols, corresponding Nursing Treatment Notes and Blood Borne Pathogen Exposure Plan, CQI Program and ongoing Staff and Management mentoring.


**The Community Health Center, West Palm Beach, FL**

July 2018 – present – Nurse Practitioner

Nurse Practitioner volunteer provider at this Free Clinic – evaluate, diagnose and treat patients presenting to the clinic with a wide range of illnesses and injuries, including chronic illnesses

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN

Kessee 002842

such as diabetes, hypertension, seizure disorder and hyperthyroidism; women's health issues; mental illness; and acute conditions like infections; sprains and minor injuries. Preceptor for Nurse Practitioner, Physician Assistant, Medical and RN students.

**Correct Care Solutions, Nashville, TN**

September 2014 – January 2018 – Nurse Practitioner, Georgia

In collaboration with the Medical Director, provision of the full range of medical services for the patients at the facility, including sick call, urgent/emergent and chronic care.  Interpretation of lab results and diagnostic studies ordered through the facility.

**CorrectHealth LLC, Atlanta, Georgia**

January 2013 – June 2013 – Director of Clinical Support

Responsible for Clinical Services Education, Infection Control, Continuous Quality Improvement, and Accreditation.   Daily clinical practice and staff contact. Exclusively responsible for the clinical education of staff at 33 sites, which included working side-by-side with staff, conducting needs assessments and evaluations, and the research of evidence based practices and guidelines to ensure staff were adhering to nationally approved standards of care.

January 2012- January 2013 – Executive Director of Clinical Services

Responsible for all aspects of Clinical Services, including Education, Infection Control, Continuous Quality Improvement, Health Information and Accreditation.  Policy and Procedure review and development.  Responsible for nursing and ancillary staff.  Visited sites and interacted with clients on a regular basis.

July 2009 – December 2011 – Director of Special Projects

Participated in projects with the Georgia Department of Corrections; Project Coordinator and Lead Surveyor for an audit of all healthcare services for the Maricopa County Jail, Phoenix, Arizona; Developed projects and procured funding for the CorrectHealth Community Development Center (non-profit); Project Manager for a Special Study for the Wyoming Department of Corrections regarding healthcare access, medical cost and potential efficiencies; internal operations auditing and staff development.  Within CorrectHealth, major responsibility for the clinical education of staff, including nurses, providers and ancillary staff. This included working side-by-side with staff, conducting needs assessments and evaluations, and evidence based practices and guidelines research to ensure staff adherence to nationally approved standards of care.

**Correctional Medical Services, St. Louis, Missouri**

2004 - 2006 - Health Service Administrator - DeKalb County Jail (GA)

2004 - Utilization Management Nurse (interim) - New Jersey Department of Corrections contract

2000 - 2002 - Associate Program Director – New Jersey Department of Corrections contract

1996 - 1998 - Associate Program Director – Massachusetts Department of Corrections contract

1995 - 1996 - Health Services Administrator - Framingham Women's Prison (MA)

**Georgia Correctional Health Care, Georgia Department of Corrections**

2006 - 2007 – Staff Nurse/PRN - Georgia Diagnostic and Classification Prison

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN

Kessee 002843

---

PRESENTATIONS/LECTURES

---

**"Patient Advocacy for the Correctional Nurse"** and **"Skin Assessment for the Correctional Nurse"** presented at the National Conference of the National Commission on Correctional Health Care in Ft. Lauderdale, FL.  October 2019.

**"Clinical Decision Making in Correctional Nursing"; "Advanced Practice Registered Nurses in Corrections:  Roundtable"** presented at the National Conference of the National Commission on Correctional Health Care in Nashville, TN.  April 2019.

**"Clinical Judgment for the Correctional Nurse"** presented at the National Conference of the National Commission on Correctional Health Care in Las Vegas, NV, October 2018.

**"Clinical Judgment for the Correctional Nurse"** presented at the National Conference of the National Commission on Correctional Health Care in Atlanta, GA, May 2017.

**"A Seizure Disorder Primer for the Correctional Nurse"** presented at the National Conference of the National Commission on Correctional Health Care in Nashville, TN, April 2016.

**"A Hypertension Primer for the Correctional Nurse"** and **"The Nurse's Role in Chronic Care Management"** presented at the National Conference of the National Commission on Correctional Health Care in Dallas, TX, October 2015.

**"A Diabetic Primer for the Correctional Nurse"** presented at the National Conference of the National Commission on Correctional Health Care in New Orleans, LA, April 2015.

Guest Expert Panelist, American Association of Legal Nurse Consultants webinar **"Civil Rights Litigation"** held nation-wide on October 30, 2014.

**"The Nurse's Role in Chronic Care Management"** presented at the National Conference of the National Commission on Correctional Health Care in Atlanta, GA, April 2014.

Guest Expert panelist, Omnisure webinar **"The Unscheduled Encounter: Reducing Liability and Risk",** held nation-wide on December 4, 2013**.**

**"The New ANA Scope and Standards of Practice for Correctional Nurses: Implementation Standard", "The New ANA Scope and Standards of Practice for Correctional Nurses: Communication Standard"** and **"The Essentials of Nursing Leadership: Capstone Presentation"** presented at the National Conference of the National Commission on Correctional Health Care in Nashville, TN, October 2013.

**"Unscheduled Encounters:  Managing the Nursing Curbside Consult"** and **"The New ANA Scope and Standards of Practice for Correctional Nurses: Implementation Standard"** presented at the National Conference of the National Commission on Correctional Health Care in Denver, CO, April 2013.

**"Unscheduled Encounters:  Managing the Nursing Curbside Consult"** presented at the National Conference of the National Commission on Correctional Health Care in Las Vegas, NV, October 2012.

**"Children and Prescription Drug Abuse"** – CHAMPS Instructor School, Georgia Sheriff's Association, June 2012.

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN

4

Kessee 002844

**"Con Games: Inmate Manipulation"** presented at the Nursing Forum, American Correctional Health Services Association's National Conference in San Antonio, TX, April 2012.

**"HIV Awareness", "Universal Precautions"** and **"Inmate Medical Services"** at the DeKalb County Sheriff's Office 111th Jail Academy, February 2011 through the 124th Jail Academy, August 2014.

**"Crisis Intervention Training"** co-presenter at the American Correctional Health Services Association Georgia Conference, Savannah, Georgia, November 2009.

**"Nursing Forum: Legal Parameters and Best Practice"** at the American Correctional Health Services Association National Conference, Orlando, Florida, March 2009.

**"Dilemmas in Correctional Nursing"** at the American Correctional Health Services Association National Conference, Reno, NV, June 2007.

---

## LICENSES AND CERTIFICATIONS

---

Advanced Practice Registered Nurse/Nurse Practitioner – Florida (Autonomous Practice APRN9485060), California (95006810), Georgia (RN179490), Kentucky (3012955) and Virginia (0024178346).

Certified Adult Nurse Practitioner – American Academy of Nurse Practitioners National Certification Board (A0614010 – expiration June 2024)

Registered Nurse licensure  - Multi-state and individual licenses below

    Active – Florida, California, Georgia, Virginia

Certified Correctional Health Provider – Certified Correctional Registered Nurse –

    National Commission on Correctional Health Care

Certified Provider of Continuing Education – California Board of Registered Nursing

Certified Guest Instructor - Georgia Peace Officer Standards and Training Council

BLS Healthcare Provider

---

## MEMBERSHIPS

---

Founding Member and Member-at-Large Board Member - American Correctional Nurses Association

Member – American Association of Nurse Practitioners

Member – American Nurses Association

Member – American College of Correctional Physicians

Member – South East American Correctional Health Services Association

Member – Academy of Correctional Health Professionals

Member – American Correctional Association

Member- American Jail Association

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN

5

Kessee 002845

# Legal Cases-Depositions/Trial

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN
**2017 - 2021**

**Ryan McGraw, Esquire,  and Konrad Kircher, Esquire,** Rittgers & Rittgers
**Cincinnati, OH**
*Karla Howell, as Administratrix of the Estate of Cornelius Pierre Howell v. NaphCare, Inc and Christina Jordan and Pierette Arthur and Jim Neil, Matthew Collini and Daniel Erwin.*
*Plaintiff -* ***ongoing litigation***

**C. Scott Johnson, Esquire,**  Spears, Moore, Rebman & Williams, P.C.
**Chattanooga, TN**
*Eden, et al vs. Bradley County, TN, et al.*
*Plaintiff -* ***ongoing litigation***

**Matthew Garmon, Esquire,**  Morris Haynes, Attorneys at Law
**Birmingham, AL**
*Hunter vs.  Advance Correctional Healthcare, et al.*
*Plaintiff -* ***ongoing litigation***

**Paul Dunphy, Esquire,  and Michael Cerjak, Esquire,** Canon & Dunphy, S.C.
**Brookfield, WI**
*Madden vs.  Milwaukee County, et al.*
*Plaintiff -* ***ongoing litigation***

**Vincent Colianni II, Esquire,**  Colianni & Colianni LLC
**Christiansted, VI**
*William James, Jr., et al., vs.  St. Francois County Sheriff's Department, et al.*
*Plaintiff -* ***settled 2021***

**Charles Tatum, Esquire and Seth Diamond,  Esquire**
**Jasper, AL**
*Lashunna Wilson, as Administrator and personal representative of the Estate of William Henry Harris, Jr., deceased*
*Plaintiff -* ***ongoing litigation***

**Laura Landenwich,**  Adams, Landenwich, Walton, PLLC
**Louisville, KY**
*Janice Sweet, As Personal Representative and Administrator of the Estate of Christopher R. Sweet, et al, Plaintiffs, vs. Sheriff  Jamey Noel, Clark County Sheriff's Dept., Charlestown Primary Care, LLC, William Hoke, M.D., et al.*
*Plaintiff -* ***settled 2020***

# Legal Cases-Depositions/Trial

## Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN
## 2017 - 2021

**William Bird,** Bird Law Firm and **Michelle Carpenter,** Kranitz, Sadoun & Carpenter, PC
**St. Joseph, MO**
*Ashten Haylee Surritte, et al. vs. Advanced Correctional Healthcare Inc, et al.*
*Plaintiff - **settled 2020***

**William Bird,** Bird Law Firm and **Michelle Carpenter,** Kranitz, Sadoun & Carpenter, PC
**St. Joseph, MO**
*Amanda Thomas, et al. vs. Advanced Correctional Healthcare,Inc, et al.*
*Plaintiff - **settled 2020***

**S. Luke Largess,** Tin, Fulton, Walker & Owen, PLLC
**Charlotte, NC**
Mary McNeilly, Administrator of the estate of Archie K. McNeilly, Jr., Plaintiff v. Southern
Health Partners, Inc., et. al, Defendants
*Plaintiff - **settled 2020***

**Derek Franseen,** Walsh and Franseen
**Edmond, OK**
Craig Shipp, Plaintiff vs CorrectCare Solutions, LLC, Dr. Lorene Lomax, Dr. Mimo
Lemdja, Kimberly Hoffman, Lenora Philson, Kindall Smith, Diane Cunningham, Melissa
Stoner, Steve Arnold, Defendents
*Plaintiff - **closed 2020***

**Hank Balson and Edwin Budge,** Budge & Heipt, PLLC
**Seattle, WA**
THE ESTATE OF MARC A. MORENO, by and through its personal representative,
Miguel Angel Moreno; MIGUEL  ANGEL MORENO, individually;   and ALICIA MAGA—A
MENDEZ  individually, Plaintiffs,  vs. CORRECTIONAL HEALTHCARE  COMPANIES,
INC.; CORRECT CARE SOLUTIONS, LLC.; OUR  LADY OF LOURDES HOSPITAL AT
PASCO, INC., a Washington  Non-Profit Corporation d/b/a  OUR LADY OF LOURDES
HOSPITAL  and LOURDES COUNSELING CENTER; ASHLEY CASTANEDA,
individually; and ANITA VALLEE, individually  Defendants.
*Plaintiff - **settled 2020***

**Michael Fairhurst,** Killmer, Lane & Newman, LLP
**Denver, CO**
Estate of Marciano Briones;  Marc Briones, et al, Plaintiffs, vs. Adams County;
Correct Care Solutions, Correctional Healthcare Companies, et. al, Defendants
*Plaintiff - **settled 2020***

# Legal Cases-Depositions/Trial

## Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN
## 2017 - 2021

Daniel R. Shaffer, Matthew S. Martin
    **Grand Junction and Glendale, CO**
    *Estate of Daniel Allard, Aanda Slocum, as Personal Representative of the Estate of Daniel Allard, deceased, vs Corizon Health, Inc., Sarah Richardson, LPN, in her individual capacity; and Deborah Kinder, in her individual capacity, Defendants.*
    *Plaintiff -* ***ongoing litigation***

J. Timothy Smith, Elliott and Smith
    **Fayetteville, AK**
    *Kathy Jordan, as guardian of the Person and the Estate of Lindsey B. Jordan, an incapacitated person* Plaintiff vs. Southern Health Partners, Inc.; Leah Branyan, RN; Tyranny D. Ray, LPN; Benton County, Arkansas, et al., Defendants.
    *Plaintiff -* ***settled 2020***

Andrew McNulty, Killmer, Lane & Newman, LLP
    **Denver, CO**
    *Estate of Tomas Beauford, Tiffany Marsh, personally and as a representative of the Estate of Tomas Beauford, Deceased, Plaintiffs, vs. Mesa County, Colorado, a Government Entity; et al., Defendants.*
    *Plaintiff -* ***ongoing litigation***

William Bird, Bird Law Firm and Michelle Carpenter, Kranitz, Sadoun & Carpenter, PC
    **St. Joseph, MO**
    *Brenda Davis, et al. vs. Buchanan County, et al.*
    *Plaintiff -* ***ongoing litigation***

Anna Holland-Edwards, Erica Grossman, Holland, Holland-Edwards & Grossman
    **Denver, CO**
    *Estate of Jeffrey Scott Lillis, et al. vs. CorrectCare Solutions, LLC, et al.*
    *Plaintiff -* ***settled 2019***

Erik Heipt and Edwin Budge, Budge & Heipt, PLLC
    **Seattle, WA**
    TERESA SABBIE, individually, as personal representative of the ESTATE OF MICHAEL SABBIE, et al, Plaintiffs v. SOUTHWESTERN CORRECTIONAL, LLC d/b/a LASALLE CORRECTIONS, LLC and LASALLE SOUTHWEST CORRECTIONS, et al. Defendants
    *Plaintiff -* **settled 2019**

# Legal Cases-Depositions/Trial

## Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN
### 2017 - 2021

**Francis "Brink" Hinson IV,** FINKEL LAW FIRM LLC
    **Columbia, SC**
    *Robert Kenneth Hilliard, Plaintiff v. Southern Health Partners, Inc, Charles A. Bush,*
    *M.D., and Marlboro County, Defendants*
    *Plaintiff - **trial June 2019***

**Reid Allison, Darold Killmer,** Killmer, Lane & Newman, LLP
    **Denver, CO**
**Roy A. Jacobson,** Jacobson Law Offices
    **Jackson, WY**
    *Steven M. Mlllward and Riley J. Millward v. Teton County Board of Commissioners, et al.*
    *Plaintiff -* ***settled 2020***

**Anthony Marchetti, Jr.,** Marchetti Law, PC
    **Cherry Hill, NJ**
    *Webster v. State of New Jersey, et al.*
    *Plaintiff -* ***settled 2019***

**Cherie Wade, ADA; Tony Lawrence, DA,** State of Mississippi
    **19th District Court**
    *State of Mississippi v. Carmon Sue Brannan*
    State of Mississippi - ***trial 2018***

**Alan Lassetter**, Shuttlesworth Lassetter, LLC
    **Birmingham, AL**
    *TIMOTHY HAYS, as the personal representative of the Estate of BRANDON*
    *LEE HAYS, Plaintiff, vs. SHELBY COUNTY, Alabama, et al.,*
    *Plaintiff -* ***settled 2018***

**Vincent DeSalvo,** The Law Offices of Vincent DeSalvo
    **Baton Rouge, LA**
    Brandie Melton, et al v. East Baton Rouge Sheriff's Office.
    *Plaintiff -* ***settled 2020***

**David Damick,** Law Offices of David N. Damick
    **St. Louis, MO**
    Jacob Benoit and Zachary Benoit, Plaintiffs v. Lindell Riffle, et al.
    Plaintiff - ***settled 2018***

# Legal Cases-Depositions/Trial

## Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN
**2017 - 2021**

Trent Lowry, **Griffith, Lowry & Meherg, LLC**
   **Cullman, AL**
   Steven C. Smith, as conservator for Brandon Jeffries v. Travis Turner, et al,
   Plaintiff - *settled 2018*

S. Layne Lee, **Lee Law Firm.**
   **Baton Rouge, LA**
   *O'Quin v. Sid J. Gautreaux, III, et al.*
   Plaintiff - *settled 2018*

Cameron Kuhlman, **The Claiborne Firm, PC**
Troy Rafferty and William Cash III, **Levin, Papantonio Thomas, Mitchell Rafferty and Proctor, P. A.**
Mark O'Mara, **O'Mara Law Group**
   *SOLOMAN OLUDAMISI AJIBADE and ADENIKE HANNAH AJIBADE, as natural parents of Mathew Ajibade, and THE ESTATE OF MATHEW AJIBADE and CHRIS OLADAPO, its Executor, Plaintiffs, vs. JOHN WILCHER, in his official capacity as Chatham County Sheriff, et al., Defendants*
   Plaintiff - *settled 2019*

Anne Findling, **Robbins & Curtin, PLLC**
   **Phoenix, AZ**
   *Price v. State of AZ, AZ Department of Corrections, and Corizon, INC*
   Plaintiff - *settled 2018*

Dan Haltiwanger, **Richardson, Patrick, Westbrook & Brickman, LLC**
   **Barnwell, SC**
   *Massey vs. Orangeberg County Detention Center, SC Department of Public Safety et al -*
   Plaintiff Massey - *settled 2017*

Katherine L. McArthur, **McArthur Law Firm**
   **Macon, GA**
   *Donna Kay Stubbs Ward v. Mousa Alwawi, MD, Comprehensive Care Medical, LLC, Southern Health Partners, Inc. and Elbert H. Brown, MD -*
   Plaintiff - *settled 2017*

Exhibit B