## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

PATRICIA THOMPSON, as Personal )
Representative of the Estate of )
MARCONIA LYNN KESSEE, )
  )
       Plaintiff, )
v. )        Case No. CIV-19-113-SLP
  )
NORMAN REGIONAL HOSPITAL )
AUTHORITY d/b/a NORMAN REGIONAL )
HOSPITAL, a public trust, et al., )
  )
       Defendants. )

### AFFIDAVIT OF ZACKERY ANDREWS

I, Zackery Andrews, of legal age and sound mind, do, under oath, hereby state the following:

1.    On January 16, 2018, I was the Sergeant on duty when Marconia Kessee was brought into the Cleveland County Detention Center at 7:46 pm.

2.    The below shows Kessee being entering the jail with the jail nurse present.



Clayton Rickert, Turn Key Nurse

Brown Body Worn Camera, 36:58

1

**EXHIBIT**
**40**

EXHIBIT 7

3.      At approximately 7:48 pm, I looked through the window into the intake area and saw NPD Officer Brown, CCDC Detention Officers Barr and Shifflett and the jail nurse, Clayton Rickert, standing around Mr. Kessee.



Brown Body Worn Camera, 37:20

Stacy Shifflett,
Detention Officer

Cody Barr,
Detention Officer

Clayton Rickert,
Turn Key Nurse



Brown Body Worn Camera, 38:40

Zackery Andrews,
Sergeant

EXHIBIT 7

4.      I heard Kessee screaming and saw Kessee hit his head on the wall. I entered the intake area and asked whether Kessee needed to go to the hospital to obtain a Fit for Incarceration slip.

5.      Detention Officer Shifflett advised me that Kessee already had a Fit Slip, which I knew meant Kessee had just been evaluated, medically cleared and deemed medically stable to be in the CCDC.

6.      Nurse Rickert instructed me to remove an inmate from the padded cell in the processing area of the jail so that they could place Kessee inside. I believed it was due to some self-harm or Kessee's level of intoxication.

7.      It was consistent with the CCDC's policies and procedures and my training that an inmate who enters the jail unable to or refusing to provide reliable information is placed in a holding cell until a medical screening can be conducted.

8.      It was consistent with the CCDC's policies and procedures and my training that an inmate who attempts to harm himself is placed in a padded cell for his own protection.

9.      I complied with Nurse Rickert's instructions and emptied the padded cell so Kessee could be placed inside.

10.      At no time when I was in the intake area did I see any sign or symptom that Kessee was experiencing a serious medical issue that needed any medical care or treatment beyond what Nurse Rickert could provide at the jail.

EXHIBIT 7

11.    I was not a medical professional and did not know how to diagnose someone with a drug overdose. I did not see any sign or symptom about Kessee's presentation that indicated to me he was experiencing or would have a drug overdose.

12.    I relied on Nurse Rickert's medical judgment that Kessee was stable and able to be placed into the padded cell.

13.    Prior to this day, I had no issue with Nurse Rickert where I believed he was unqualified or would be unable to perform his duties as the jail nurse. I had heard no complaint about Ricker and had no reason to believe he would ignore or fail to provide adequate care to inmates' medical needs.

14.    After Kessee was placed into the holding cell and all officers left the cell around 7:55 pm, I advised that Kessee was on 15-minute critical observation sight checks.

15.    I performed several sight checks of Kessee that night where I personally looked in the padded cell, observed that he was present, was not in any medical distress, and detected signs of breathing or other signs of life.

16.    Specifically, at approximately 8:37 pm, I conducted a sight check on Kessee. He appeared to be asleep and in no medical distress. I observed signs that indicated to me that he was breathing.  I noted he was asleep on the sight check log.

17.    At approximately 8:46 pm, I conducted another sight check on Kessee. He again appeared to be asleep and in no medical distress. I observed signs that indicated to me that he was breathing. I noted he was asleep on the sight check log.

4

EXHIBIT 7

18.     At approximately 9:17 pm, I conducted another sight check on Kessee. He again appeared to be asleep and in no medical distress. I observed signs that indicated to me that he was breathing. I noted he was asleep on the sight check log.

19.     At approximately 9:49 pm, I conducted another sight check on Kessee. He again appeared to be asleep and in no medical distress. I observed signs that indicated to me that he was breathing or otherwise alive. I noted he was asleep on the sight check log.

20.     During none of these sight checks did I observe anything concerning about Kessee's condition. I did not observe him bleeding, vomiting, crying out, clutching his chest, changing skin color, or requesting any help or attention. I believed that he was alive and asleep during each check.

21.     If I had any concern about his condition, I would have promptly notified Nurse Rickert or my supervisor.

22.     At about 9:50 pm, Nurse Rickert looked into the cell and asked that the door be opened. I opened the door and accompanied him inside. At this time, Kessee appeared non-responsive. Nurse Rickert performed what I believed to be a medical assessment or evaluation.

23.     I relied upon Nurse Rickert to perform his evaluation and tell me what I needed to do. Rickert told me to begin chest compressions and CPR, which I promptly did.

24.     At all times on January 16, 2018, I relied on the medical judgment of Nurse Rickert as it related to Kessee's condition and need for medical treatment, if any.

5

EXHIBIT 7

25.     At no time on January 16, 2018, prior to him being found unresponsive, did I believe Kessee had any serious medical condition or issue that required medical treatment beyond what the jail nurse could provide at the CCDC.

FURTHER AFFIANT SAYETH NOT this 23 day of June, 2021.

_____
Zackery Andrews

Subscribed and sworn to before me this 23rd day of June, 2021.

JEANNE GIROUARD
Notary Public
State of Oklahoma
Commission # 17010480 Expires 11/14/21

_____
Notary Public

My commission expires: 11/14/21
(Seal)

6

EXHIBIT 7